UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 25-cv-22162-BLOOM/Louis

DEMOREE HADLEY,

      Plaintiff,

v.

DESIREE PEREZ, ROC NATION, ICONIC CREATIVE, LLC,
DANIEL BOBER, NATALIE ANDERSON, SIG 9, LLC, JAMES FONDO,
STEVEN CADY, JESSICA CADY, SOUTH BROWARD HOSPITAL DISTRICT,
ODYSSEY BEHAVIORAL HEALTHCARE, LIFE SKILLS SOUTH FLORIDA
OUTPATIENT, LLC, BROWARD COUNTY SHERIFF'S OFFICE, JOHN DOE, #1,
JOHN DOE, #2, and RACHEL BERNSTEIN,

      Defendants.

_____/

## OMNIBUS ORDER ON MOTIONS TO DISMISS

**THIS CAUSE** is before the Court upon Defendant CTS Research, Inc.'s ("CTS") Motion to Dismiss, ECF No. [86], Defendant Rachel Bernstein's ("Bernstein") Motion to Dismiss, ECF No. [87], Defendant Desiree Perez's ("Perez") Motion to Dismiss and to Strike, ECF No. [88], Defendant Iconic Creative, LLC's ("Iconic") Motion to Dismiss and to Strike, ECF No. [89], Defendant Natalie Anderson's Motion to Dismiss, ECF No. [91], Defendant ROC Nation's Motion to Dismiss, ECF No. [93], Defendants Sig 9, LLC ("Sig 9"), James Fondo, Steven Cady, and Jessica Cady's Motion to Dismiss, ECF No. [128], Defendant South Broward Hospital District's ("the District") Motion to Dismiss, ECF No. [149], Defendant Life Skills South Florida Outpatient, LLC's ("Lifeskills") Motion to Dismiss, ECF No. [160], and Defendant Daniel Bober's ("Bober") Motion to Dismiss and to Strike, ECF No. [187].[1] Plaintiff Demoree Hadley ("Plaintiff") filed

---

[1] This Order does not extend to Defendants Broward County Sheriff's Office ("BSO"), Jordan Denis, or Joseph Reyes, as their Motion to Dismiss, ECF No. [241], is not yet ripe.

Responses to the Motions to Dismiss, *see* ECF Nos. [152], [153], [154], [155], [156], [157], [175], [176], [201], [222], to which Defendants filed separate Replies, *see* ECF Nos. [165], [166], [167], [168], [169], [171], [199], [203], [213], [231].

Plaintiff also filed a Motion for Leave to Conventionally File Body-Worn Camera ("BWC") Footage, ECF No. [200]. Perez and Lifeskills filed Responses in Opposition. ECF Nos. [202], [214]. Plaintiff did not file a Reply.[2] The Court has carefully reviewed the Motions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons discussed below, the Motions are granted in part and denied in part.

## I.   BACKGROUND

### A.  Factual Background

Perez is the CEO of ROC Nation in New York City and Plaintiff's mother. ECF No. [49] at ¶ 22. Plaintiff alleges that for the past two years, Perez has used her money, power, and influence to tear apart Plaintiff and her husband, Javon Hadley ("Javon") (collectively, "the Hadleys"). *Id.* at ¶ 27. Perez created an enterprise of individuals to effectuate her plot and used unlawful means to have Javon arrested on three different occasions and Plaintiff detained under Florida's Baker Act and Marchman Act statutes. *Id.* at ¶ 28.

Prior to July 18, 2022, Perez conspired with others to plant a camera in the Hadleys' bedroom without their knowledge or authorization. *Id.* at ¶ 61. Perez intentionally intercepted video recordings from the camera and tried to use the recordings against Javon. *Id.* at ¶ 62. Perez

---

[2] "Under the incorporation-by-reference doctrine, a court may consider evidence attached to a motion to dismiss without converting the motion into one for summary judgment if (1) 'the plaintiff refers to certain documents in the complaint,' (2) those documents are 'central to the plaintiff's claim,' and (3) the documents' contents are undisputed." *Baker v. City of Madison, Ala.*, 67 F.4th 1268, 1276 (11th Cir. 2023) (quoting *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002)). The Eleventh Circuit has extended this doctrine to allow the Court to consider BWC. *Id.* at 1277. However, Plaintiff concedes that the BWC is not attached to any Motion to Dismiss. *See* ECF No. [202] at 2. Therefore, the incorporation-by-reference doctrine is inapplicable, and Plaintiff's Motion is denied.

also planted a listening device inside their bedroom. *Id.* at ¶ 65. Perez used a listening device to intentionally intercept Plaintiff's private conversations with Javon and others. *Id.* at ¶ 66. Perez kept both recording devices in the Hadleys' bedroom for years. *Id.* at ¶ 69.

Plaintiff also claims that Perez hacked, or directed her technical staff at ROC Nation to hack, Plaintiff's iCloud account, giving Perez unfettered access to Plaintiff's digital data, including text messages, photographs, and videos. *Id.* at ¶ 71. Plaintiff first realized that her mother had hacked her iPhone on March 1, 2024. *Id.* at ¶ 77. On that day, Javon and one of Plaintiff's best friends called Plaintiff after noticing that Plaintiff's cell phone and Apple watch showed Plaintiff's location in New York. *Id.* at ¶¶ 78-79. When Plaintiff checked her iCloud account on her phone, it displayed that "iPhone(2)" on her account was at ROC Nation's headquarters in New York. *Id.* at ¶¶ 80, 82, 83. However, Plaintiff only had one iPhone device attached to her iCloud account; Plaintiff believes the "iPhone(2)" device was one cloned by her mother's team to access and manipulate the data stored in Plaintiff's account. *Id.* at ¶¶ 81, 84. Perez and/or her staff or contractors at ROC Nation used high-tech software to access and manipulate text messages, photographs, and videos. *Id.* at ¶ 88. Perez used the manipulated data during her conspiracy to fraudulently convince people that Plaintiff needed to be unlawfully committed to a mental health institution and drug rehab facility. *Id.* at ¶ 89.

Thereafter, on September 14, 2023, Perez confronted Plaintiff and hired a counselor, Victoria Hunter, for an intervention. *Id.* at ¶¶ 90-93. Perez prevented Plaintiff from leaving by confiscating her dog. *Id.* at ¶ 96. Plaintiff attempted to climb over her mother's security fence, but Perez pulled her off and stated, "I am going to Baker Act you . . . . I will have you committed." *Id.* at ¶¶ 97-98. Plaintiff called the police, but the police never pressed charges against Perez. *Id.* at ¶

102. The same day, Perez went to Plaintiff's grandfather's home, where the Hadleys were residing, and confronted Javon. *Id.* at ¶ 103.

Because of Perez's threats, the Hadleys moved out of Plaintiff's grandfather's home on October 1, 2023. *Id.* at ¶ 105. In response, Perez rented the house directly across the street, pointed a camera toward their home, and hired private investigators to stalk and harass the Hadleys. *Id.* at ¶ 106. The investigators were employed by CTS and hired to live in the home across the street. *Id.* at ¶¶ 107-12. Plaintiff alleges that the CTS investigators followed the Hadleys at unsafe distances, and at all times of the day, causing the Hadleys to fear for their safety. *Id.* at ¶¶ 110, 113. On one occasion, the Hadleys called the police on the CTS investigators. *Id.* at ¶¶ 116-30. During a separate interaction, one of the CTS investigators admitted that CTS knowingly employed licensed and unlicensed investigators to live across the street from the Hadleys and conduct 24-hours-a-day surveillance. *Id.* at ¶ 136. Both interactions involved unlicensed investigators employed by CTS. *Id.* at ¶¶ 122, 128, 132, 134, 138. Further, the investigators and CTS's owner acknowledged that unlicensed investigators were employed by CTS. *Id.* at ¶¶ 136, 139.

### B. Employment at Iconic

Since January 2021 until January 2024, Plaintiff worked at Iconic, a company that often collaborated with ROC Nation. *Id.* at ¶¶ 149-50. Plaintiff alleges, upon information and belief, that in October 2023, Perez stepped in and helped resolve financial problems for Iconic to control Plaintiff. *Id.* at ¶¶ 152-53. On December 12, 2023, the owners of Iconic informed Plaintiff of a virtual meeting with Nike Academy that she was to attend the next day. *Id.* at ¶ 158. When Plaintiff logged onto the meeting, only one person was online – Rachel "Thomas," who identified herself as a representative for Nike Academy. *Id.* at ¶ 160. Plaintiff alleges that the online meeting was a quasi-psychological evaluation conducted without Plaintiff's approval or consent. *Id.* at ¶ 167. The owners of Iconic required Plaintiff to attend two other "training sessions" with Rachel "Thomas."

*Id.* at ¶ 173. Plaintiff later learned that Rachel "Thomas" was really a woman named Rachel Bernstein, who is a licensed marriage and family therapist from California who specializes in sexual cults and has a podcast on sex-cult recovery. *Id.* at ¶¶ 174-75. Plaintiff claims that the training sessions were a ploy by Perez to have Plaintiff improperly evaluated. *Id.* at ¶ 178.

Iconic fired Plaintiff at the beginning of January 2024 without any explanation and refused to pay her for the weeks she had already worked that month. *Id.* at ¶¶ 191, 195. Plaintiff alleges that Perez demanded that Iconic fire Plaintiff. *Id.* at ¶ 193.

### C. Javon's Arrest

On December 26, 2023, Perez reported to Miami-Dade police that Javon had battered Plaintiff on January 16, 2022. *Id.* at ¶ 181. Thereafter, on December 30, 2023, Perez reported to the police that Javon had kidnapped Plaintiff and was holding her hostage. *Id.* at ¶ 184. Plaintiff alleges that these claims were false, and that the Hadleys were enjoying quality time with Javon's nephews at Pinto Farms in Homestead. *Id.* at ¶ 185. Javon was arrested at Pinto Farms. *Id.*

Perez hired an attorney to file a notice of appearance on Plaintiff's behalf, but Plaintiff never spoke with, nor hired, this attorney. *Id.* at ¶¶ 198-201. The attorney tried to convince prosecutors to charge Javon with human trafficking, and after the prosecutor said that she could not charge Javon, Perez asked the prosecutors to extend the case. *Id.* at ¶¶ 203-04, 208-09. The charges were ultimately dropped against Javon. *Id.* at ¶ 189. Plaintiff cut off communication with Perez, or any other family member, since at least December 2023. *Id.* at ¶ 247.[3]

---

[3] On April 5, 2024, Perez conspired with "others and government officials" to get Javon arrested for an alleged battery that occurred on September 11, 2023. *Id.* at ¶ 322. Javon was ordered to stay away from Plaintiff. *Id.* at ¶ 325. Thereafter, on April 8, 2024, Perez conspired with others to get Javon arrested for violating the stay-away order. *Id.* at ¶ 329. Eventually, the State dropped all charges against Javon. *Id.* at ¶ 359.

### D.  March 27, 2024, Baker Act

On March 6, 2024, Perez directed Anderson, a ROC Nation employee, to confront Plaintiff's therapist. *Id.* at ¶ 212. Anderson presented the therapist with a fabricated audio recording of a woman screaming, "Don't rape me," and falsely claimed the recording was Javon raping Plaintiff. *Id.* at ¶¶ 213-14. Perez wanted Plaintiff's therapist to believe that Plaintiff had some type of mental health issue to capitalize on her threat to Baker Act Plaintiff. *Id.* at ¶ 215. Plaintiff's therapist, however, wrote a letter disputing Plaintiff's supposed need for treatment or hospitalization. *Id.* at ¶ 218.

Nevertheless, on March 27, 2024, Perez conspired with Bober to wrongfully commit Plaintiff to a mental health facility. *Id.* at ¶ 220. Bober was employed as the Chief of Psychiatry at Memorial Regional Hospital, a state-run facility. *Id.* at ¶ 221. Perez hired private investigators – Sig 9 – to lure Plaintiff to a marina in Dania Beach. *Id.* at ¶ 223. One of the Sig 9 investigators called Plaintiff, pretending to be a property owner who wanted to hire the Hadleys' landscaping company. *Id.* at ¶ 224. When Plaintiff got close to the marina, Fondo, one of the Sig 9 investigators and a former police officer, conspired with a sergeant from the Broward County Sheriff's Office ("BSO") to have police officers respond to the side of the road near the marina to Baker Act Plaintiff. *Id.* at ¶ 226. Fondo told Officers Denis and Reyes from BSO that Bober, who was waiting at the meeting spot in the marina, was going to Baker Act Plaintiff. *Id.* at ¶ 228.

When Plaintiff arrived at the marina, Fondo, Steven and Jessica Cady, Bober, and the BSO Officers confronted her. *Id.* at ¶ 234. Steven Cady and Bober told Plaintiff that the officers were present to make sure that she did not leave, and that they "just want to evaluate her." *Id.* at ¶¶ 235-36. When Plaintiff asked if she was being detained, Bober responded in the affirmative. *Id.* at ¶ 238. The Sig 9 investigators told Plaintiff that they were part of a mobile crisis unit from Memorial Hospital that worked with Bober. *Id.* at ¶ 239. Plaintiff repeatedly told the BSO Officers that she

never met Bober, and repeatedly asked to leave. *Id.* at ¶¶ 240, 251, 255. The BSO Officers forced Plaintiff to go with Sig 9, without verifying the identity of any of the individuals on the scene to confirm that they belonged to a "mobile crisis unit." *Id.* at ¶¶ 269-75, 293-94.

Bober wrote on Plaintiff's intake form that he personally examined Plaintiff on March 27, 2024, at 5:56 p.m., but footage shows Bober leaning against a truck parked in the marina and talking to the police at that time. *Id.* at ¶¶ 279-80. When Plaintiff arrived at Memorial Hospital, the first doctor to examine her noted that she was alert, oriented to person, place and time, and that her behavior was normal. *Id.* at ¶ 295. Nevertheless, Bober reported that Plaintiff required intensive, comprehensive, multimodal treatment, including twenty-four-hour medical supervision. *Id.* at ¶ 298. Further, Bober directed staff to medicate Plaintiff with Benadryl, haloperidol, and lorazepam. *Id.* at ¶ 299.

On the same day that she was admitted, Plaintiff's drug test came back negative. *Id.* at ¶ 302. Regardless of the negative drug test, Bober conspired with Perez to commit Plaintiff to Lifeskills, which is a drug treatment facility where Bober is the medical director. *Id.* at ¶ 303. On March 29, 2024, Perez filed an emergency *ex parte* petition under the Marchman Act in the Seventeenth Judicial Circuit in and for Broward County, Florida. *Id.* at ¶ 304. Perez requested that Plaintiff be transferred from Memorial Hospital to Lifeskills and moved for guardianship over Plaintiff. *Id.* at ¶¶ 305-06. Perez falsely claimed in the guardianship petition that Plaintiff was asking friends and family to share prescription pain pills. *Id.* at ¶ 307.

Plaintiff was transported to Lifeskills on March 30, 2024. *Id.* at ¶ 314. While at Lifeskills, Plaintiff repeatedly asked to be examined by someone other than Bober. *Id.* at ¶ 315. Eventually, a worker at Lifeskills conducted a hair follicle test on Plaintiff, which showed that Plaintiff had no drugs in her system. *Id.* at ¶¶ 319-20.

### E.  Procedural History

Plaintiff asserts twenty-five claims against Defendants: Count I – Violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") against Perez; Count II – Civil Conspiracy against Perez, ROC Nation, and Anderson; Count III – Civil Conspiracy against Perez, Sig 9, Bober, Fondo, Steven Cady, and Jessica Cady; Count IV – Fourth Amendment Violation against Perez; Count V – Fourth Amendment Violation Against Bober; Count VI – Fourth Amendment Violation against Fondo, Steven Cady, and Jessica Cady; Count VII – Fourth Amendment Violation against Denis and Reyes; Count VIII – False Arrest/Imprisonment against Perez; Count IX – False Arrest/Imprisonment against Sig 9; Count X – False Arrest/Imprisonment against Fondo, Steven Cady, and/or Jessica Cady; Count XI – False Arrest/Imprisonment against BSO; Count XII – False Arrest/Imprisonment against the District; Count XIII – Negligence against the District; Count XIV – Violation of Florida's Marchman Act against Bober, Odyssey Behavioral Healthcare ("Odyssey"),[4] and Lifeskills; Count XV – Negligence against Odyssey and Lifeskills; Count XVI – Violation of the Stored Communications Act ("Stored Communications Act") against Perez and ROC Nation; Count XVII – Violation of the Federal Wiretap Act, 18 U.S.C. § 2511, against Perez; Count XVIII – Violation of Florida Security of Communications Act, Fla. Stat. § 934.10, against Perez; Count XIX – Intentional Infliction of Emotional Distress ("IIED") against Perez, Bober, Fondo, Steven Cady, and Jessica Cady; Count XX – Fraudulent Misrepresentation/Inducement against Iconic; Count XXI – Fraudulent Misrepresentation/Inducement against Bernstein; Count XXII – IIED against Iconic and Bernstein; Count XXIII – Negligence against CTS; Count XXIV – IIED against CTS; Count XXV – Malicious Prosecution against Perez.

---

[4] The Court dismissed Odyssey as a Defendant in this case on August 26, 2025, for failure to timely serve. *See* ECF No. [228].

In its Motion, CTS argues that Plaintiff fails to state a claim for negligent hiring or for IIED. ECF No. [86]. Plaintiff concedes that Count XXIII fails to state a claim for negligent hiring, and instead asserts that the allegations support a claim for negligent retention and negligent supervision. ECF No. [157]. Further, Plaintiff asserts that CTS's conduct was outrageous. *Id.* CTS replies that Plaintiff cannot amend her Amended Complaint in a responsive pleading, and in any event, the "impact rule" bars Plaintiff's negligence claim. ECF No. [168].

Bernstein moves to dismiss for lack of personal jurisdiction. ECF No. [87]. She contends, however, that the Amended Complaint fails to adequately plead fraudulent misrepresentation or IIED and asks that Plaintiff's request for attorney's fees be stricken. *Id.* Plaintiff responds that the Court has personal jurisdiction over Bernstein because she committed a tortious act in Florida. ECF No. [155]. Further, Plaintiff asserts that the Amended Complaint states a claim for fraudulent misrepresentation, as Bernstein's intent is clear from the context of the pleadings. *Id.* Plaintiff also asserts that Bernstein's conduct was egregiously wrongful, illegal, and caused serious emotional trauma to Plaintiff. *Id.* Bernstein replies that the Amended Complaint does not allege that the conduct occurred in Florida, but rather, that it was a Zoom call. ECF No. [169]. Further, Bernstein asserts that Plaintiff failed to allege any physical injury to support her IIED claim. *Id.*

Perez argues that the Amended Complaint fails to state a claim against her. ECF No. [88]. Specifically, she contends that Count II is barred by the intra-corporate conspiracy doctrine, and the Section 1983 claim fails because Perez is not a state actor. *Id.* Further, Plaintiff's false imprisonment and malicious prosecution claims are legally deficient. *Id.* Perez also seeks to strike certain allegations in the Amended Complaint that are immaterial and solely alleged to cause her harm. *Id.* Plaintiff responds that Perez's Motion should be denied because she continues to assert facts that are not alleged in the Amended Complaint. ECF No. [152]. Plaintiff also disputes Perez's

arguments and asserts that the Amended Complaint states viable claims against Perez. *Id.* Perez replies that Plaintiff's claims should be dismissed with prejudice and cannot be cured by repleading. ECF No. [165].

Iconic contends that dismissal is warranted because Plaintiff fails to plead her claims for fraudulent misrepresentation and IIED. ECF No. [89]. Further, Iconic requests that the Court strike Plaintiff's request for attorney's fees. *Id.* Plaintiff responds that just because Plaintiff became suspicious of her sessions with Bernstein does not mean that she did not rely on Iconic's fraudulent representations, and that Iconic's knowledge that the training sessions were fraudulent can be inferred from the Amended Complaint. ECF No. [156]. Further, Plaintiff asserts that she did not need to plead a physical injury, as her injuries were a direct result of Iconic's fraudulent inducement. *Id.* Iconic replies that the caselaw relied upon by Plaintiff is inapplicable and that Plaintiff fails to allege Iconic's knowledge. ECF No. [166].

Anderson moves to dismiss for lack of diversity, as both Anderson and Plaintiff are citizens of Florida. ECF No. [91]. Further, Anderson contends that there is no cause of action for civil conspiracy as Plaintiff's claim is barred by the intra-corporate conspiracy doctrine. *Id.* Plaintiff responds that the Court should exercise supplemental jurisdiction over her claim against Anderson. ECF No. [91]. Moreover, Plaintiff argues that her claim adequately pleads a conspiracy. *Id.* Anderson responds that Plaintiff has not satisfied her burden to establish the Court's jurisdiction over Anderson and that the Court should decline to exercise supplemental jurisdiction. ECF No. [171].

ROC Nation moves to dismiss for lack of personal jurisdiction and argues that Plaintiff's civil conspiracy claim is barred by the intra-corporate conspiracy doctrine. ECF No. [93]. Further, ROC Nation contends that Plaintiff's claim under the SCA fails because any allegations pertaining

to ROC Nation are merely speculative. *Id.* Plaintiff responds that the Court has personal jurisdiction over ROC Nation because its CEO, Perez, committed tortious acts in Florida. ECF No. [153]. Further, Plaintiff contends that the intra-corporate conspiracy doctrine is inapplicable because Perez and Anderson were not acting in the scope of their employment, but that ROC Nation is still vicariously liable. *Id.* ROC Nation replies that Plaintiff's personal jurisdiction argument fails because Plaintiff does not state a viable claim against it. ECF No. [167].

Sig 9, Fondo, Steven Cady, and Jessica Cady contend that the Amended Complaint should be dismissed for failure to state a claim. ECF No. [128]. Specifically, they argue that the conspiracy claim fails to allege an underlying tort and that Counts IX and X fail because they were acting as a transportation service. *Id.* Further, Plaintiff's IIED claim fails to satisfy the outrageousness standard. *Id.* Plaintiff responds that Sig 9's argument that there is no underlying tort is "the most egregious" claim made by any of Defendants, and that circumstantial evidence illustrates Sig 9's involvement in the conspiracy. ECF No. [175]. Additionally, Plaintiff contends that Sig 9 and its officers represented that they were part of Memorial Hospital's crisis unit, which constitutes state action. Sig 9, Fondo, Steven Cady, and Jessica Cady, reply that the Amended Complaint does not contain factual support for its claims and that they were acting as an alternative to law enforcement. ECF No. [199].

The District contends that Plaintiff's claims should be dismissed for failure to comply with the pre-suit notice requirements in medical malpractice actions. ECF No. [149]. Plaintiff responds that because Plaintiff alleges conduct not related to medical care, she need not comply with the pre-suit requirements. ECF No. [176]. The District replies that all of Plaintiff's claims against it occurred while Plaintiff was committed at Memorial Hospital, which all relate to Plaintiff's medical care. ECF No. [203].

Similarly, Lifeskills seeks dismissal for failure to comply with the pre-suit notice requirements. ECF No. [160]. Plaintiff responds that her claims are grounded in Lifeskills' failure to comply with the Marchman Act statute and general negligence, not medical malpractice. ECF No. [201]. Lifeskills replies that Plaintiff's conclusory argument that her claims are based on general negligence is insufficient to establish that the pre-suit notice requirements are inapplicable. ECF No. [231].

Bober argues that dismissal is likewise warranted because Plaintiff failed to comply with the pre-suit notice requirements. ECF No. [187]. Further, Bober contends that he is not a state actor, as he is an independent contractor with Memorial Hospital, and therefore, Count V fails. Bober also asserts that the Amended Complaint fails to state a claim because there are insufficient allegations to allege a conspiracy, he is not a provider under the Marchman Act, and his conduct was not outrageous to support an IIED claim. *Id.* Bober also moves to strike certain allegations in the Amended Complaint. *Id.* Plaintiff responds that Bober's actions at the marina and involuntarily committing Plaintiff do not relate to medical services and therefore, Plaintiff did not need to comply with the pre-suit requirements. ECF No. [222]. Further, Plaintiff contends that the Amended Complaint states viable claims against Bober. Bober replies that the allegations, at least in part, directly relate to medical care or services. ECF No. [231]. Bober also highlights that Plaintiff failed to respond to his Motion to Strike. *Id.*

## II.   LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To meet this "plausibility standard," a plaintiff must plead factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged. *Id.* "A facially plausible claim must allege facts that are more than merely possible. . . . But if allegations are indeed more conclusory than factual, then the court does not have to assume their truth." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. If the allegations satisfy the elements of the claims asserted, a defendant's motion to dismiss must be denied. *See id.* at 556.

Further, "[o]n a Rule 12(b)(6) motion to dismiss, '[t]he moving party bears the burden to show that the complaint should be dismissed.'" *Sprint Sols., Inc. v. Fils-Amie*, 44 F. Supp. 3d 1224, 1228 (S.D. Fla. 2014) (quoting *Mendez-Arriola v. White Wilson Med. Ctr. PA*, 2010 WL 3385356, at *3 (N.D. Fla. Aug. 25, 2010)); *see also Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1199 (11th Cir. 2007) ("We are required to accept the facts as set forth in the plaintiff's complaint as true, and our consideration is limited to those facts contained in the pleadings and attached exhibits.").

## III.   DISCUSSION

### A.  Personal Jurisdiction

Defendants Bernstein and ROC Nation both contend that the Court lacks personal jurisdiction over them. *See* ECF Nos. [87], [93]. Bernstein argues that the Amended Complaint contains no allegations pertaining to general or specific jurisdiction.[5] ECF No. [87]. As to specific jurisdiction, Bernstein argues that the Amended Complaint fails to allege that Bernstein or Plaintiff were in Florida when their Zoom call was conducted, nor does the Amended Complaint sufficiently allege that Bernstein had sufficient minimum contacts in Florida. Plaintiff responds that the Court has specific jurisdiction over Bernstein because the Amended Complaint alleges that Bernstein committed a tortious act, was engaged in a business venture, and/or caused injury

---

[5] Plaintiff concedes that the Amended Complaint does not allege general jurisdiction. ECF No. [155] at 2 n.1.

to Plaintiff. ECF No. [155] at 2. ROC Nation argues that the Amended Complaint does not allege any contacts that ROC Nation has with Florida, and because Plaintiff fails to state a claim against it, the Court lacks personal jurisdiction. ECF No. [93] at 6-7. Plaintiff responds that ROC Nation, through its CEO, Perez, committed tortious acts in Florida and that ROC Nation regularly does business in Florida. ECF No. [153] at 3.

In assessing whether a nonresident defendant is subject to the Court's exercise of personal jurisdiction, federal courts apply a two-step test to determine "whether the exercise of jurisdiction (1) comports with the long-arm statute of the forum; and (2) does not violate the Due Process Clause of the Fourteenth Amendment." *Virgin Health Corp. v. Virgin Enters. Ltd*., 393 F. App'x 623, 626 (11th Cir. 2010); Fed. R. Civ. P. 4(k)(1)(A). A court "[need] not reach the second question of the personal jurisdiction analysis" upon failure to establish that the long-arm statute permits the district court to assert personal jurisdiction over the defendant. *Id*.

Under Federal Rule of Civil Procedure 4(k)(1)(A), federal courts apply the long-arm statute of the forum state — in this case, Florida. "The 'reach of the Florida long-arm statute is a question of Florida law.'" *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd*., 288 F.3d 1264, 1271 (11th Cir. 2002) (quoting *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 257 (11th Cir. 1996)). "[F]ederal courts are required to construe [such law] as would the Florida Supreme Court." *Id*. (quoting *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990)). "Florida's long-arm statute provides for both general and specific personal jurisdiction." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1352 (11th Cir. 2013) (citing Fla. Stat. § 48.193(1)-(2)). The Eleventh Circuit has explained that a "defendant can be subject to personal jurisdiction under Florida's long-arm statute in two ways: first, section 48.193(1)(a) lists acts that subject a defendant to *specific* personal jurisdiction — that is, jurisdiction over suits that arise out of or relate to a defendant's contacts with Florida, Fla. Stat.

§ 48.193(1)(a); and second, section 48.193(2) provides that Florida courts may exercise *general* personal jurisdiction — that is, jurisdiction over any claims against a defendant, whether or not they involve the defendant's activities in Florida — if the defendant engages in 'substantial and not isolated activity' in Florida, § 48.193(2)." *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F. 3d 1201, 1203-04 (11th Cir. 2015). Courts strictly construe Florida's long-arm statute in favor of the nonresident defendant. *Stonepeak Partners, LP v. Tall Tower Cap., LLC*, 231 So. 3d 548, 552 (Fla. 2d DCA 2017).

As Plaintiff raises, one way to establish personal jurisdiction over a nonresident defendant is if the nonresident defendant committed a tortious act in Florida. *See* Fla. Stat. § 48.193(1)(a)2. ("A person . . . who personally or through an agent . . . submits himself or herself . . . to the jurisdiction of the courts of this state for any cause of action arising from . . . . Committing a tortious act within this state."). "[W]here the threshold question of personal jurisdiction turns on whether a tort is committed in Florida, the court necessarily must review the allegations of the complaint to determine if a cause of action is stated." *Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002). For the reasons set forth below, the Court finds that Plaintiff has failed to allege viable claims against Bernstein or ROC Nation, and therefore, the Court lacks personal jurisdiction.[6]

### B.  Medical Malpractice Act

The District, Lifeskills, and Bober argue that dismissal is warranted because Plaintiff failed to comply with the pre-suit notice requirements set forth in Chapter 766 of the Florida Statutes. ECF Nos. [149], [160], [187]. Plaintiff responds that the pre-suit notice requirements are

---

[6] Based on this finding, the Court need not examine whether Plaintiff has alleged that sufficient minimum contacts exist to satisfy the Due Process Clause of the Fourteenth Amendment and whether maintenance of the suit offends "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 502 (Fla. 1989).

inapplicable because her claims do not involve the rendering of medical care or services. ECF Nos. [176], [201], [222].

Under Florida Law, a "'claim for medical malpractice' means a claim, arising out of the rendering of, or the failure to render, medical care or services." Fla. Stat. § 766.106(1)(a). Medical malpractice claims are subject to pre-suit screening requirements. *J.B. v. Sacred Heart Hosp. of Pensacola*, 635 So. 2d 945, 948 (Fla. 1994). Therefore, before filing a lawsuit, an attorney must perform a pre-suit investigation, consult and obtain an opinion from a medical expert, and provide proper notice to the prospective defendant. *Pierrot v. Osceola Mental Health, Inc.*, 106 So. 3d 491, 492 (Fla. 5th DCA 2013); *Largie v. Gregorian*, 913 So. 2d 635, 638–39 (Fla. 3d DCA 2005); Fla. Stat. § 766.106. However, pre-suit notice requirements apply only to medical malpractice claims. *Pierrot*, 106 So. 3d at 492; *see also J.B. v. Sacred Heart Hosp. of Pensacola*, 635 So. 2d 945, 948-49 (Fla. 1994); *Joseph v. Univ. Behavioral LLC*, 71 So. 3d 913, 917 (Fla. 5th DCA 2011); *Blom v. Adventist Health Sys./Sunbelt, Inc.*, 911 So. 2d 211, 213-14 (Fla. 5th DCA 2005). The test to determine whether a claim is for medical malpractice is "whether the claim relies on the application of the medical malpractice standard of care." *Joseph*, 71 So. 3d at 917. When a claim relies on a different standard provided by another statute, the claim is not one of medical malpractice for purposes of the pre-suit requirements. *Pierrot*, 106 So. 3d at 492.

Two cases are instructive. First, in *King v. Lee County*, Case No: 2:24-cv-375-JLB-KCD, 2025 WL 676224, at *5 (M.D. Fla. Mar. 3, 2025), the court considered whether the pre-suit notice requirements were applicable where the plaintiff alleged that a physician group illegally used the Baker Act to commit Plaintiff, had one of its doctors falsify the intake form, and wrongfully and intentionally prevented her from leaving the doctor's office. The court concluded that the facts did not involve the rendering of medical services because the plaintiff challenged the process by which

she was committed, and alleged that she was never actually evaluated. *Id.* at \*5-\*6. In contrast, in *Blom v. Adventist Health System/Sunbelt, Inc.*, the plaintiff alleged that after an emergency room physician involuntarily committed the plaintiff, the hospital held her there against her will for three days, and hospital employees mistreated her in a variety of ways. 911 So. 2d at 212-13. The court concluded that the facts, as alleged, "arose out of the purportedly improper mental health commitment that was based on the physician's medical diagnosis that [the plaintiff] met the criteria set forth in the Baker Act." *Id.* at 214.

Here, the Court finds that the allegations against Bober are comparable to those alleged in *King*, whereas the facts alleged against the District and Lifeskills resemble those alleged in *Blom*. The facts alleged here are similar to the plaintiff's allegations in *King* where the doctor falsified the intake form to commit the plaintiff, and wrongfully committed her, 2025 WL 676224, at \*5. Here, the Amended Complaint asserts that Bober "institutionalized [Plaintiff] under the Baker Act – without any prior evaluation or explanation whatsoever," wrote false information in the intake form to keep Plaintiff detained, and conspired with Perez to have Plaintiff admitted to Lifeskills, ECF No. [49] at ¶¶ 284, 301, 303.

In contrast, the allegations pertaining to the District and Lifeskills arise out of the *rendition* of medical care. Indeed, Counts XII, XIII, and XV, all involve Plaintiff's detention at Memorial Hospital and Lifeskills' facilities. The Amended Complaint does not challenge any actions of the staff while committed at the District or Lifeskills, other than the fact that she was wrongfully detained. For example, Plaintiff does not allege that Bober or other hospital employees falsified her drug tests or forms. Rather, Plaintiff alleges that "the hospital staff was clearly concerned about [] Bober's decision to detain [Plaintiff] for an involuntary examination," and "unbiased professionals began to realize Demoree did not belong there." *Id.* at ¶¶ 297, 316. There are no facts

alleged in the Amended Complaint as to either the District or Lifeskills that exceed the scope of a typical medical malpractice claim. Therefore, the Court finds that Plaintiff was required to comply with the pre-suit notice requirements to assert claims against the District and Lifeskills, which she failed to do. Accordingly, the Court dismisses Counts XXII, XXIII, XV, and XIV as to Lifeskills, with prejudice. As to Bober, however, Plaintiff was not required to provide pre-suit notice, and the Court considers the merits of his Motion.

### C.  Count I – RICO Claim

Pursuant to 18 U.S.C. § 1962(c), it is "unlawful for any person employed by or associated with any enterprise in, or the activities of such affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). "To recover [under § 1962(c),] a civil plaintiff must establish that a defendant (1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two racketeering acts." *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1348 (11th Cir. 2016) (quoting *Ray v. Spirit Airlines, Inc.*, 767 F.3d 1220, 1124 (11th Cir. 2014)); *see also Super Vision Int'l., Inc. v. Mega Int'l. Com. Bank Co., Ltd.*, 534 F. Supp. 2d 1326, 1337 (S.D. Fla. 2008). Additionally, "[t]o establish liability under 18 U.S.C. § 1962(c), a plaintiff must plead a defendant 'committed a pattern of RICO predicate acts'" amounting to "racketeering activity." *Viridis Corp. v. TCA Glob. Credit Master Fund, LP*, 155 F. Supp. 3d 1344, 1361 (S.D. Fla. 2015) (quoting *Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 705 (11th Cir. 2014)). "A civil plaintiff must also show '(1) the requisite injury to 'business or property,' and (2) that such injury was 'by reason of' the substantive RICO violation.'" *Id.* (quoting *Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1282-83 (11th Cir. 2006), *abrogated on other grounds as recognized in Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 714-15 (11th Cir. 2014)).

Perez argues that Plaintiff's RICO claim fails to meet the elements – specifically, "enterprise" and "pattern of racketeering" – necessary to allege a RICO claim. ECF No. [88] at 2-3. Plaintiff responds that the Amended Complaint contains sufficient allegations to assert a RICO claim to show how Perez used her money, power, and influence to tear apart the Hadleys. ECF No. [165] at 4. Plaintiff contends that the following predicate acts support her RICO claim: (1) kidnapping, (2) bribery, and (3) wire fraud.

The Court need not address whether the Amended Complaint alleges an "enterprise," because Plaintiff has failed to sufficiently allege predicate acts required to establish racketeering activity under § 1962(c). *See Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1068 (11th Cir. 2007) ("[A]bsent any valid predicate acts, [the plaintiff] cannot state a claim for RICO violations."). A "'pattern of racketeering activity' requires at least two acts of racketeering activity[.]" 18 U.S.C. § 1962(5). To show a pattern of racketeering activity, Plaintiff must first plead that Perez engaged in two or more predicate acts. *See H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 237 (1989). Second, the predicate acts must be related, or have "similar purposes, results, participants, victims, or methods of commission," and the pattern must reflect a threat of continuing racketeering activity. *Id.* at 240. "The phrase 'racketeering activity' is defined as including any act which is indictable under a lengthy list of criminal offenses" enumerated in 18 U.S.C. § 1961(1). *Fla. Evergreen Foliage v. E.I. Du Pont De Nemours, Co.*, 135 F. Supp. 2d 1271, 1284 (S.D. Fla. 2001) (citing 18 U.S.C. § 1961(1)), *aff'd sub nom. Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*, 341 F.3d 1292 (11th Cir. 2003).

Here, Plaintiff's conclusory allegations fail to assert predicate acts. The Amended Complaint asserts that Perez "unlawfully committed wire fraud, by using electronic communications to defraud, or executed a scheme to defraud, bribery, witness tampering,

kidnapping and/or false imprisonment (forcing Demoree into a truck), and other criminal acts effecting interstate or foreign commerce." ECF No. [49] at ¶ 376. The mere identification of the predicate acts Plaintiff seeks to assert is insufficient to state a cause of action. Indeed, courts have long recognized that "[w]hile legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). The facts alleged in Count I are that Perez forced Plaintiff into a truck, had a plan to cheat Plaintiff out of job opportunities and cause her to be totally dependent on Perez, offered, gave, or promised something to Bober, intentionally tampered with Plaintiff and Javon as witnesses to legal proceedings, and caused Plaintiff to be detained. *See* ECF No. [49] at ¶¶ 376, 382, 383, 385, 386.

Plaintiff fails to connect how the few factual allegations mentioned constitute "wire fraud, bribery, witness tampering, kidnapping[7] and/or false imprisonment." *Id.* at ¶ 376. Accordingly, Count I is dismissed with prejudice.

### D.  Counts II and III – Civil Conspiracy

Under Florida law, a claim of civil conspiracy requires: "(1) an agreement between two or more parties; (2) to do an unlawful act or to do a lawful act by unlawful means; (3) the doing of some overt act in pursuance of the conspiracy; and (4) damage to plaintiff as a result of the acts done under the conspiracy." *Honig v. Kornfeld*, 339 F. Supp. 3d 1323, 1345 (S.D. Fla. 2018) (quoting *Philip Morris USA, Inc. v. Russo*, 175 So. 3d 681, 686 n.9 (Fla. 2015)). "Parties are acting in concert when they act in accordance with an agreement to cooperate in a particular line of conduct or to accomplish a particular result." *In re Chira*, 353 B.R. 693, 732 (Bankr. S.D. Fla.

---

[7] The federal kidnapping statute criminalizes the conduct of "[w]hoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward . . . when . . . the offender . . . uses . . . any means, facility, or instrumentality of interstate or foreign commerce in committing or in furtherance of the commission of the offense[.]" 18 U.S.C. § 1201(a)(1).

2006) (quoting Restatement of Torts (Second) § 876(a)). "The agreement need not be expressed in words and may be implied and understood to exist from the conduct itself." *Id.*

### i. Count II – Civil Conspiracy Against Perez, ROC Nation, and Anderson

Perez, ROC Nation, and Anderson argue that Plaintiff's civil conspiracy claim is barred by the intra-corporate conspiracy doctrine. ECF No. [93] at 8; ECF No. [91] at 3; ECF No. [88] at 5. Plaintiff responds that the personal stake exception applies because Perez, Anderson, and ROC Nation were not acting within the scope of their employment when they conspired. ECF No. [152] at 7; ECF No. [154] at 7-8; ECF No. [153] at 7-8.

The intra-corporate doctrine states that "a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves because a corporation and its employees are considered to be a single legal actor." *Albra v. City of Fort Lauderdale*, 232 F. App'x 885, 891 (11th Cir. 2007); *see Dickerson v. Alachua Cnty. Com'n*, 200 F.3d 761, 767 (11th Cir. 2000) ("The reasoning behind the intracorporate conspiracy doctrine is that it is not possible for a single legal entity consisting of the corporation and its agents to conspire with itself, just as it is not possible for an individual person to conspire with himself."). Nevertheless, under the "personal stake" exception, "where an agent has a 'personal stake in the activities separate from the principal's interest,'" the agent can be liable for civil conspiracy. *Mancinelli v. Davis*, 217 So. 3d 1034, 1037 (Fla. 4th DCA 2017) (quoting *Richard Bertram, Inc. v. Sterling Bank & Tr.*, 820 So. 2d 963, 966 (Fla. 4th DCA 2002)). A "personal stake" must be more than personal animosity on the part of the employee, the employee "must have acted in their personal interests, wholly and separately from the corporation." *Id.* (internal quotation marks omitted).

Here, Plaintiff contends that while the Amended Complaint alleges that Perez and Anderson were employees of ROC Nation, it does not allege that Perez and Anderson were acting

in the scope of their employment, and thus, the intra-corporate doctrine does not apply. ECF No. [152] at 7-8; ECF No. [154] at 8. However, even drawing all inferences in favor of Plaintiff, the Amended Complaint fails to allege that Perez and Anderson acted in their personal capacities. The Amended Complaint asserts that Perez "directed Natalie Anderson, a ROC Nation employee, to confront [Plaintiff's] therapist, . . . . [Perez] wanted to Dr. Berrio to believe that [Plaintiff] had some type of mental health issue to capitalize on her threat to Baker Act [Plaintiff]," ECF No. [49] at ¶¶ 212, 215, and that Perez and Anderson, "both employees of ROC Nation, entered into an agreement to achieve the common goal of trying to convince a health care provider to commit [Plaintiff] to a mental health facility," *id.* at ¶ 394. The Amended Complaint also pleads in the alternative that Perez and Anderson, "both employees of ROC Nation, entered into an agreement to achieve the common goal of trying to cause intentional infliction of emotional distress upon [Plaintiff]." *Id.* at ¶ 397. Most significant, the Amended Complaint asserts that "Anderson was acting in her capacity as [Perez's] assistant at ROC Nation when the incident occurred." *Id.* at ¶ 400.

"There was no allegation that [Perez, Anderson, and ROC Nation] acted in a personal capacity apart from [their] employee status. A corporation cannot conspire with its own directors, officers or employees." *Garrido v. Burger King Corp.*, 558 So. 2d 79, 81 (Fla. 3d DCA 1990). Plaintiff's respective Responses to the Motions seemingly attempt to add in new facts to explain how Perez and Anderson were not acting in their official capacities. *See* ECF No. [152] at 7-8 ("Anderson may have been working for [Plaintiff] when she visited Dr. Berrio's office, but that was not within the scope of her authority, i.e., she was not implementing the corporation's managerial policy."); ECF No. [154] at 8 ("Anderson's job description did [not][8] permit her to

---

[8] The Court assumes this was a typo, and that Plaintiff did not intend to concede that "Anderson's job description did permit her to behave in such a fashion." ECF No. [154] at 8.

behave in such a fashion."); ECF No. [153] at 8 ("Anderson may have been working for [Perez] when she went to Dr. Berrio's office, but that was not within her authority, meaning she was not executing the corporation's managerial policy."). Such conclusory allegations are not only impermissible but are also unpersuasive. On a motion to dismiss, the Court is bound by the four corners of the complaint, which, here, allege that Perez and Anderson were acting as employees of ROC Nation.

Therefore, Plaintiff's conspiracy claim is barred by the intra-corporate doctrine. As ROC Nation points out, it raised this exact argument in its initial Motion to Dismiss. *See* ECF No. [27] at 7-8. "A district court may dismiss a case with prejudice after a plaintiff has been afforded the opportunity to amend their initial complaint." *Comparelli v. Boliviarian Rep. of Venezuela*, 655 F. Supp. 3d 1169, 1194 (11th Cir. 2023) (citing *Eiber Radiology, Inc. v. Toshiba Am. Med. Sys., Inc.*, 673 F. App'x 925, 930 (11th Cir. 2016)).

### ii.  Count III – Perez, Sig 9, Fondo, Steven and Jessica Cady, and Bober

"Conspiracy is not a separate or independent tort but is a vehicle for imputing the tortious acts of one coconspirator to another to establish joint and several liability." *Lorillard Tobacco Co. v. Alexander*, 123 So. 3d 67, 80 (Fla. 3d DCA 2013) (quoting *Ford v. Rowland*, 562 So. 2d 731, 735 n.2 (Fla. 5th DCA 1990)); *Tejera v. Lincoln Lending Servs., LLC*, 271 So. 3d 97, 103 (Fla. 3d DCA 2019) ("There is no freestanding cause of action in Florida for 'civil conspiracy.' In order to state a claim for civil conspiracy, a plaintiff must allege an underlying independent tort."). Further, "'[g]eneral allegations of conspiracy are inadequate. . . . A complaint must 'set forth clear, positive, and specific allegations of civil conspiracy.'" *Eagletech Comms, Inc. v. Bryan Mawr Inv. Grp., Inc.*, 79 So. 3d 855, 863 (Fla. 4th DCA 2012) (quoting *World Class Yachts, Inc. v. Murphy*, 731 So. 2d 798, 799 (Fla. 4th DCA 1999)).

Here, Perez, Sig 9, Fondo, Steven and Jessica Cady, and Bober all argue that Count III should be dismissed because Plaintiff fails to allege an underlying tort. ECF No. [88] at 6-7; ECF No. [128] at 2-3; ECF No. [187] at 6-7. Further, Defendants assert that the Amended Complaint fails to allege that they were working in concert, and merely reflects parallel independent conduct. ECF No. [88] at 7; ECF No. [199] at 3; ECF No. [187] at 7-8. Plaintiff responds that Counts IV, V, VI, VIII, IX, and X form the basis for her conspiracy claim. ECF No. [152] at 8; ECF No. [175] at 9; ECF No. [222] at 11. Further, Plaintiff contends that the Court may consider circumstantial evidence to find that a conspiracy exists and that she has adequately alleged a conspiracy. ECF No. [152] at 9; ECF No. [175] at 10-11; ECF No. [222] at 12-13.

At the outset, the Court finds that Plaintiff identifies the underlying tort and incorporates the same in Count III. *See* ECF No. [49] at ¶¶ 405-06 (alleging that the parties entered into a conspiracy to falsely imprison Plaintiff). Further, for the reasons set forth below, the Court finds that the Amended Complaint adequately alleges an underlying claim for false imprisonment against Perez and Sig 9, and a conspiracy. Accordingly, the Motions are denied as to Count III.

### E. Counts IV, V, and VI – Fourth Amendment Violation Under 42 U.S.C. § 1983

"A successful section 1983 action requires a showing that the conduct complained of (1) was committed by a person acting under color of state law and (2) deprived the complainant of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992); 42 U.S.C. § 1983. There are rare circumstances where a private person can be viewed as a "state actor." *Id.* The Eleventh Circuit has enumerated three tests to establish state action: "the public function test, the state compulsion test, and the nexus/joint action test." *Id.* (citing *NBC v. Commc'n Workers of Am., AFL-CIO*, 860 F.2d 1022, 1026 (11th Cir. 1988)).

### i. Count IV – Bober

Bober contends that dismissal is warranted because the Amended Complaint fails to allege that he is a state actor, i.e., that he was employed by Memorial Hospital as a "true employee," and not as an independent contractor. ECF No. [187] at 9-10. Further, Bober contends that none of Plaintiff's allegations implicates the nexus/joint action test, and that, regardless, he is entitled to immunity under Fla. Stat. § 394.459(1). *Id.* at 11. Plaintiff responds that the proper test is whether the infringing conduct is "fairly attributable to the State." ECF No. [222] at 14. Plaintiff contends that Bober and Sig 9 represented to BSO that they were part of "Memorial's mobile crisis unit," which caused Plaintiff to believe that Bober was the apparent agent of the hospital. *Id.* at 15.

Taking the facts alleged in the Amended Complaint as true, the Court finds that Bober is a state actor. The Amended Complaint alleges that Bober "was employed as the Chief of Psychiatry at Memorial Regional Hospital, a state-run facility," and ran the psychiatric unit at Memorial Hospital. ECF No. [49] at ¶¶ 221, 264. Bober's proffer that he is an independent contractor and not a "true employee" holds no weight at this juncture, as the Court is bound by the four corners of the complaint. *Fed. Trade Comm. v. Student Aid Ctr., Inc.*, 281 F. Supp. 3d 1324, 1331 (11th Cir. 2016) ("In deciding a motion to dismiss, the Court's analysis is limited to the four corners of the plaintiff's complaint and the attached exhibits." (citing *Grossman v. Nationsbank*, 225 F.3d 1228, 1231 (11th Cir. 2000))). Moreover, Bober fails to identify a single case that would allow the Court to consider this fact or require Plaintiff to allege the specifics of Bober's contract with Memorial Hospital. Accordingly, Bober's Motion is denied as to Count IV.[9]

---

[9] The Court also rejects Bober's argument that he is entitled to immunity under section 394.459(10), which provides that, "[a]ny person who acts in *good faith* in compliance with the provisions of this part is immune from civil or criminal liability for his or her actions in connection with the admission, diagnosis, treatment, or discharge of a patient to or from a facility." Fla. Stat. § 394.459(10) (emphasis added). The Amended Complaint alleges that Bober "institutionalized [Plaintiff] under the Baker Act – without any prior evaluation or explanation whatsoever," wrote false information in the intake form to keep Plaintiff detained

### ii.   Counts III and VI – Perez and Sig 9

Perez argues that the Amended Complaint fails to allege that Perez acted "under color of" state law, because all actions that Perez undertook – making reports to the police, participating in medical/psychological evaluations, and filing or supporting petitions in court – are all acts that any private individual might undertake. ECF No. [88] at 8. Sig 9 contends that no state action is alleged, as they were merely fulfilling their role as Plaintiff's transportation to the facility. Plaintiff responds that the Amended Complaint sufficiently alleges that Perez conspired with Bober, as Perez did much more than follow standard procedures. ECF No. [152] at 11. As to Sig 9, Plaintiff responds that Sig 9 colluded with Perez and Bober to lure Plaintiff to the marina to have her involuntarily committed, and Steven Cady represented to the BSO and Plaintiff that they were part of Memorial Hospital's crisis unit. ECF No. [175] at 15, 17-18. Perez replies that the Amended Complaint fails to plead with any particularity that a conspiracy existed between Perez and Bober to violate Plaintiff's rights. ECF No. [165] at 4-5. Sig 9 replies that the Amended Complaint acknowledges they were not employed by Memorial Hospital and were an alternative to the police. ECF No. [199] at 6-7.

"A plaintiff may state a § 1983 claim for conspiracy to violate constitutional rights by showing a conspiracy existed that resulted in the actual denial of some underlying constitutional right." *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1260 (11th Cir. 2010) (citing *GJR Invs., Inc. v. County of Escambia*, 132 F.3d 1359, 1370 (11th Cir. 1998)). "The plaintiff attempting to prove such a conspiracy must show that the parties 'reached an understanding' to deny the plaintiff his or her rights. The conspiratorial acts must impinge upon the federal right; the plaintiff must prove

---

and conspired with Perez to have Plaintiff admitted to Lifeskills, ECF No. [49] at ¶¶ 284, 301, 303. Therefore, at this juncture and taking the facts alleged as true, the Court finds that Bober's conduct is not immune.

an actionable wrong to support the conspiracy." *Bendiburg v. Dempsey*, 909 F.2d 463, 468 (11th Cir. 1990) (citations omitted). This requires that the plaintiff "plead in detail, through reference to material facts, the relationship or nature of the conspiracy between the state actor(s) and the private persons." *Harvey v. Harvey*, 949 F.2d 1127, 1133 (11th Cir. 1992); *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984) ("[A] defendant must be informed of the nature of the conspiracy which is alleged. It is not enough to simply aver in the complaint that a conspiracy existed. . . . A complaint may [] be dismissed because of the conclusory, vague and general nature of the allegations of conspiracy." (internal citations omitted)).

Perez asserts that *Harvey* is controlling. There, the court considered whether a husband and two doctors conspired to have his wife involuntarily committed to a mental hospital. 949 F.2d at 1129. The court concluded that, as to the husband, "private persons . . . who act pursuant to state statutes to commit the mentally ill cannot be held liable under section 1983." *Id.* at 1133. The complaint strung together "the discrete steps of the commitment process, without showing contact between the appellees that could prove private and alleged state actors had 'reached an understanding' to violate her rights." *Id.* Therefore, even if one of the appellees was a state actor, the complaint's conclusory allegations failed to sufficiently plead a conspiracy to transform the other appellees into state actors. *Id.*

In contrast, the Amended Complaint outlines an agreement between Bober, Perez, and Sig 9 to violate Plaintiff's rights. The Amended Complaint asserts that Perez "conspired with (and likely provided compensation to) [Bober] to wrongfully commit [Plaintiff] to a mental health facility," and hired Sig 9 to lure Plaintiff to a marina. ECF No. [49] at ¶¶ 220, 223. One of the Sig 9 investigators called Plaintiff, pretending to be a property owner who wanted to hire the Hadleys' landscaping company. *Id.* at ¶ 224. Sig 9 placed a tracker on Plaintiff's car to follow her

movements, and prior to her arrival and Bober's evaluation, Fondo told two BSO officers that Bober was going to Baker Act Plaintiff. *Id.* at ¶¶ 225, 228. Thereafter, when Plaintiff arrived at the marina, Sig 9, Bober, and the BSO officers confronted her. *Id.* at ¶ 234. Sig 9 told Plaintiff they were part of a mobile crisis unit with Memorial Hospital that worked with Bober. *Id.* at ¶ 239. Plaintiff alleges that no reason existed to Baker Act her and that she did not show any signs of psychosis. *Id.* at ¶¶ 249-50. Despite this, Plaintiff alleges that Steven Cady coached the officers to force Plaintiff to be transported by Sig 9 to guarantee that Plaintiff went to Memorial Hospital. *Id.* at ¶¶ 260-66. Further, Bober claimed on the intake form that he "personally examined" Plaintiff at 5:56 p.m., but at that time, Bober was leaning against a truck in the marina and talking to the police, and that Bober admitted that he had not conducted an evaluation. *Id.* at ¶¶ 279-83. Plaintiff alleges that Bober admitted speaking with Perez, and that he wrote false information in the report to keep Plaintiff detained and Perez happy. *Id.* at ¶ 301. These allegations go beyond the "commitment process" alleged in *Harvey*, as Plaintiff alleges that Perez, Bober, and Sig 9 worked together to involuntarily commit Plaintiff.

The Court notes that neither Bober, Perez, nor Sig 9 disputes that they worked together to have Plaintiff committed. Rather, Defendants allege that each acted in good faith. The Court is not weighing the evidence or considering motivation at this stage, and such arguments may be raised at the appropriate time. While the evidence may later confirm that Defendants were acting in good faith, at this stage, Plaintiff adequately alleges that Perez and Sig 9 conspired with Bober, a state actor, to Baker Act Plaintiff.

### F.  Count XIV – South Florida Marchman Act

Bober argues the Court should dismiss Count XIV because the Amended Complaint alleges that Perez, not Bober, filed the petition to have Plaintiff transferred to Lifeskills, and does not allege that Bober had any involvement in her transfer, nor with her care. ECF No. [187] at 13.

Plaintiff responds that Bober violated various sections of the Marchman Act by admitting Plaintiff for services, requiring her to remain in the facility, violating her dignity, violating her right to communicate with the outside world, and failing to act in good faith. ECF No. [222] at 17-18. Plaintiff claims that the Amended Complaint supports these assertions, as it reflects that Bober allowed Plaintiff to be treated as a mental health patient and drug addict without any evidentiary support, denied her access to an independent evaluation, and refused to discharge her from Lifeskills even though there was no legitimate reason to keep her there. *Id.* at 18.

Section 397.501 of the Florida Statutes, otherwise known as the Marchman Act, states that "[i]ndividuals receiving substance abuse services from any service provider are guaranteed protection of the rights specified in this section," and creates a private cause of action against "[s]ervice provider personnel who violate or abuse any right or privilege of an individual under this chapter are liable for damages[.]" Fla. Stat. § 397.501(10)(a). As Bober raises, though, Perez filed an emergency *ex parte* petition to have Plaintiff transferred to Lifeskills, not Bober. ECF No. [49] at ¶¶ 304-05. Further, the Amended Complaint does not allege that Bober signed the petition, oversaw her care at Lifeskills, or had any involvement in her treatment at Lifeskills. The allegation that Bober is the medical director of the facility, or the threadbare allegation that Perez and Bober conspired to have Plaintiff transferred, are insufficient to state a claim. Plaintiff does not address or explain how Bober can be liable under the Marchman Act, despite these flaws raised by Bober. Accordingly, Bober's Motion is granted and Count XIV is dismissed with prejudice. *See Comparelli*, 655 F. Supp. 3d at 1194 ("A district court may dismiss a case with prejudice after a plaintiff has been afforded the opportunity to amend their initial complaint." (citing *Eiber Radiology, Inc. v. Toshiba Am. Med. Sys., Inc.*, 673 F. App'x 925, 930 (11th Cir. 2016))).

### G.  Count XVI – Stored Communications Act

The SCA creates a cause of action against anyone who, "'(1) intentionally accesses without authorization a facility through which an electronic communication service is provided; or (2) intentionally exceeds an authorization to access that facility' if through that access the person 'thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system.'" *TEC Serv, LLC v. Crabb*, CASE NO. 11-62040-CIV-DIMITROULEAS/SNOW, 2013 WL 12177342, at *3 (S.D. Fla. Jan. 14, 2013) (quoting 18 U.S.C. § 2701).

#### i.  Perez

Perez contends that Plaintiff fails to allege that Perez accessed a "facility," because the Amended Complaint does not identify any specific iCloud file that was accessed on Plaintiff's phone, or how Perez accessed it. ECF No. [88] at 9. Perez asserts that without additional proof, accessing a cell phone alone is insufficient to state a claim under the SCA. *Id.* Plaintiff responds that the Amended Complaint clearly alleges that Perez hacked her iCloud account, not her cell phone. ECF No. [152] at 11-12.

The SCA does not define "facility," but the Eleventh Circuit has recognized that "facility" includes "the physical means or equipment for doing something[.]" *Brown Jordan Int'l v. Carmicle*, 846 F.3d 1167, 1177 n.4 (11th Cir. 2017) (concluding that the "Microsoft Office 365 program, [is] a cloud-based service[, which] provides the ability to send and receive emails. Thus, Microsoft Office 365 is a facility through which an electronic communication service is provided."). In *Rocket Real Estate, LLC v. Maestres*, CASE NO. 15-62488-CIV-COHN/SELTZER, 2017 WL 4303783, at *6 (S.D. Fla. Apr. 10, 2017), the court concluded that although "a cell phone itself is not a 'facility,' accessing emails that are stored on a web-based system such as Gmail or Yahoo does violate the SCA." *Id.* (citing *Lazette v. Kulmatycki*, 949 F.

30

Supp. 2d 748 (N.D. Ohio 2013); *Theofel v. Farey-Jones*, 359 F.3d 1066, 1072 (9th Cir. 2004)). Thus, the court found that allegations that the defendant had accessed the plaintiff's iCloud account were sufficient. *Id.*; *see Schwartz v. ADP, Inc.*, Case No: 2:21-cv-283, 2021 WL 3172029, at *2 (M.D. Fla. July 26, 2021) (concluding that Apple accounts, ID, and iCloud accounts were "either cloud– or Apple-based systems used for storing electronic communications. Those are the types of facilities the SCA generally protects.").

Here, the Amended Complaint alleges that Perez hacked Plaintiff's iCloud account, giving her "unfettered access to [Plaintiff's] digital data, including text messages, photographs, and videos." ECF No. [49] at ¶ 71. The Court finds that the Amended Complaint adequately alleges that Perez accessed a facility, i.e., Plaintiff's iCloud account. Accordingly, Perez's Motion is denied.

### ii. ROC Nation

ROC Nation argues that because the SCA does not permit secondary liability, Plaintiff was required to allege that Perez, or the unnamed technical staff at ROC Nation, was acting within the scope of her employment, which she failed to do. ECF No. [93] at 17. Plaintiff responds that a CEO, such as Perez, could be liable for the acts of its agent which were outside the scope of the agent's authority if the principal ratified the actions. ECF No. [153] at 16. ROC Nation replies that Plaintiff nevertheless fails to allege that Perez ratified the conduct of any employee at ROC Nation, or that ROC Nation authorized or was aware of the hacking. ECF No. [167] at 10-11.

The Court agrees with ROC Nation. The Amended Complaint makes bare and speculative references to ROC Nation and its potential involvement with the hacking of Plaintiff's iCloud account. For example, Plaintiff alleges that Perez "hacked, or directed her highly trained technical staff at ROC Nation to hack, [Plaintiff's] iCloud account[.]" ECF No. [49] at ¶ 71. Plaintiff further alleges that ROC Nation may be implicated because ROC Nation "employs or contracts with

advanced tech gurus to advance their goals in the music and entertainment business, including using questionable technological means. . . . ROC Nation has employees and/or contracts whose job is to frequently manipulate digital data to control the narrative in any given situation." *Id.* at ¶ 75. The Amended Complaint fails to connect these past actions to ROC Nation's involvement in the hacking of her iCloud account. Further, as argued by ROC Nation, Plaintiff does not allege that Perez, as CEO, ratified the actions of anyone at ROC Nation. Even taking the facts alleged in the Amended Complaint as true, Plaintiff's allegations of mere speculation are insufficient to state a claim as to ROC Nation. Accordingly, Count XVI is dismissed with prejudice as to ROC Nation.

### H.  Counts XVII and XVIII – Federal Wiretap Act and the Florida Security of Communications Act

Counts XVII and XVIII allege that Perez planted a camera and a listening device in the Hadleys' bedroom, intercepted recordings from these devices, and submitted those recordings to the prosecutor in Javon's misdemeanor battery case. ECF No. [49] at ¶¶ 61-67. Perez contends that Plaintiff's claims are entirely premised on allegations from the prosecutor's close-out memo, which does not refer to any video or audio recording devices planted in the Hadleys' bedroom and is riddled with inaccuracies. ECF No. [88] at 10. Perez also argues Plaintiff's claims are contradicted by clear evidence and barred by the statute of limitations. *Id.* at 10-11. Plaintiff responds that Perez relies on facts outside of the pleadings, and the Court should therefore not consider any of Perez's arguments. ECF No. [152] at 12-13. Further, Plaintiff contends her claims are timely. *Id.* at 11.[10] Perez replies that Plaintiff's claims rest on speculative inferences and unsupported accusations. ECF No. [169] at 8.

---

[10] The Amended Complaint alleges that Plaintiff "did not discover the recording devices until after the prosecutor wrote their closeout memorandum in late 2024." ECF No. [49] at ¶ 70. Therefore, Plaintiff's claims are well within the statute of limitations.

The Wiretap Act creates a private cause of action against a person who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." 18 U.S.C. §§ 2511(1)(a); 18 U.S.C. § 2520(a) ("[A]ny person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person . . . which engaged in that violation such relief as may be appropriate."). The Wiretap Act defines "intercept" as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4). Thus, in order to state a claim under the Wiretap Act, a plaintiff must show that the defendant "(1) intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication (5) using a device." *Schwartz v. ADP, Inc.*, No. 2:21-CV-283-SPC-MRM, 2021 WL 3172029, at *3 (M.D. Fla. July 26, 2021) (quoting *Hamilton Grp. Funding, Inc. v. Basel*, 311 F. Supp. 3d 1307, 1314 (S.D. Fla. 2018)); *see O'Brien v. O'Brien*, 899 So. 2d 1133, 1135-36 (Fla. 5th DCA 2005) (affirming that the Florida Security Communications Act mirrors the Federal Wiretap Act).

The Court emphasizes again that it is bound by the four corners of the complaint, and therefore cannot consider matters outside of or unattached to the complaint without converting the motion into a motion for summary judgment. *See Trustmark Ins. Co. v. USLU, Inc.*, 299 F.3d 1265, 1267 (11th Cir. 2002). The Court may nevertheless consider an extrinsic document if the document is central to a claim in the complaint and its authenticity is unchallenged. *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1053 n.12 (11th Cir. 2015). Here, Perez asks the Court to consider the letter she sent to the Miami-Dade State Attorney's Office, asking for the office to correct its close-out memorandum. *See* ECF No. [88-1]. In the letter, Perez indicates that "no camera was installed

inside of the bedroom . . . , rather the camera . . . was installed outside the bedroom as part of a security system installed in the residence in 2021 and upgraded in 2022," and that the Hadleys were aware of the camera, and had access to the security system. *Id.* at 7. Although Plaintiff does not explicitly object to the Court's consideration of this letter, the Court finds that the letter is not central to Plaintiff's claims. Indeed, the letter offers no more than objections and arguments on factual issues like those raised in Plaintiff's Motion. Perez's factual issues are not ripe for review at this juncture. Taking the facts alleged in the Amended Complaint as true, Plaintiff has adequately alleged her Federal Wiretap Act and Florida Security of Communications Act claims.[11]

## I.   Counts VIII, IX, and X – False Imprisonment

Count VIII alleges Perez conspired with Sig 9 to unlawfully Baker Act Plaintiff. A claim for false imprisonment under Florida law requires, "(1) an unlawful detention and deprivation of liberty against the plaintiff's will; (2) an unreasonable detention which is not warranted by the circumstances and (3) an intentional detention." *Coipel v. Carpenter*, Civil Action No. 16-20458-Civ-Scola, 2017 WL 3432299, at *4 (S.D. Fla. Aug. 9, 2017) (citation omitted).

### i.   Count VIII - Perez

Perez asserts Plaintiff's false imprisonment claim fails because the Amended Complaint concedes that Perez was acting in good faith and that the detention was lawful. ECF No. [88] at 11. Plaintiff responds that the Amended Complaint contains no facts that Perez acted in good faith

---

[11] In her Reply, Perez challenges for the first time the sufficiency of Plaintiff's allegations and claims that they are entirely speculative and conclusory. *See* ECF No. [165] at 7-8. However, "arguments raised for the first time in a reply brief are not properly before a reviewing court." *Herring v. Sec'y, Dep't of Corrections*, 397 F.3d 1338, 1342 (11th Cir. 2005); *see also Lovett v. Ray*, 327 F.3d 1181, 1183 (11th Cir. 2003) ("Because he raises that argument for the first time in his reply brief, it is not properly before us."); *F.T.C. v. IAB Mktg. Assocs., LP*, 972 F. Supp. 2d 1307, 1311 (S.D. Fla. 2013) ("[T]hese arguments are forfeited because they were raised for the first time in a reply brief."); *Foley v. Wells Fargo Bank, N.A.*, 849 F. Supp. 2d 1345, 1349 (S.D. Fla. 2012) ("Because it is improper for Defendant to raise this new argument in its Reply brief, the argument will not be considered.").

and explains in detail that there was no probable cause to involuntarily commit Plaintiff. ECF No.

[152] at 15.

Pursuant to Florida's involuntary examination statute, Fla. Stat. § 394.463:

(1)  Criteria.--A person may be taken to a receiving facility for involuntary examination if there is reason to believe that the person has a mental illness and because of his or her mental illness:

(a) 1. The person has refused voluntary examination after conscientious explanation and disclosure of the purpose of the examination; or

2. The person is unable to determine for himself or herself whether examination is necessary; and

(b) 1. Without care or treatment, the person is likely to suffer from neglect or refuse to care for himself or herself; such neglect or refusal poses a real and present threat of substantial harm to his or her well-being; and it is not apparent that such harm may be avoided through the help of willing, able, and responsible family members or friends or the provision of other services; or

2. There is a substantial likelihood that without care or treatment the person will cause serious bodily harm to himself or herself or others in the near future, as evidenced by recent behavior.

Fla. Stat. § 394.463(1).

"To be liable in an action for false imprisonment, one must have personally and actively

participated therein, directly or by indirect procurement." *Johnson v. Weiner*, 19 So. 2d 699, 701

(Fla. 1944). Therefore, a detention pursuant to § 394.463 "is not unlawful nor unreasonable unless

Plaintiff sufficiently alleges facts demonstrating a lack of probable cause for the involuntary

examination of Plaintiff." *Cruz v. Carroll*, CASE NO. 19-61160-CIV-DIMITROULEAS, 2019

WL 10058780, at *5 (S.D. Fla. Sept. 12, 2019). Indeed, "[a]ny person who acts in good faith in

compliance with the provisions of this part shall be immune from civil or criminal liability for his

or her actions." Fla. Stat. § 394.459(10).

"Probable cause to have instituted the prior judicial proceeding is defined as a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense charged." *Bell v. Anderson*, 414 So. 2d 550, 551 (Fla. 1st DCA 1982). In *Cruz*, the court concluded that the plaintiff failed to allege probable cause to support his false imprisonment claim, where the complaint alleged that the plaintiff "had already been placed on suicide watch" and that the defendant "examined [him] and determined that he was suffering from a mental illness and rendered him fit to be involuntarily committed." 2019 WL 10058780, at *4.

Despite Perez's claims to the contrary, similar facts are not alleged here. Rather, the Amended Complaint alleges that at the time Perez had Plaintiff unlawfully committed, Plaintiff had not spoken to Perez or any other family member since at least December 2023. Therefore, "any information [Perez] and other family members supposedly provided to Dr. Bober was stale, in addition to being false." ECF No. [49] at ¶ 247 n.12. Further, although the Amended Complaint includes a screenshot of Bober's intake form where he attested to having "personally examined" Plaintiff, Plaintiff also alleges that she had never met Bober, and he had "no factual basis to initiate a Baker Act because he had never evaluated [Plaintiff] beforehand. At that point, he had not even seen her in person." *Id.* at ¶¶ 228-30, 240, 243-46, 255-57. The singular allegation that Perez had an intervention for Plaintiff and threatened to Baker Act her months before Plaintiff's actual commitment is insufficient to establish probable cause. Perez makes no other serious challenge to Plaintiff's false imprisonment claim and concedes that the Amended Complaint is premised on Perez's "alleged role in initiating the proceedings that led to Plaintiff's purportedly involuntary examination or treatment." ECF No. [88] at 12. Thus, taking the facts as alleged in the Amended Complaint as true, Plaintiff adequately alleges a claim for false imprisonment against Perez.

### ii. Counts IX and X – Sig 9, Fondo, Steven Cady, and Jessica Cady

Sig 9 asserts that it was statutorily permitted to transport Plaintiff to Memorial Hospital, and that Plaintiff's allegations show that Sig 9 escorted Plaintiff to the hospital in a safe and dignified manner. ECF No. [128] at 8-9. Plaintiff responds that Plaintiff's "choice" to go with Sig 9 was not voluntary, and Sig 9 was not an "authorized" mobile crisis response service. ECF No. [175] at 17-18.

Sig 9 relies on Section 394.462(1)(f) of the Florida Statutes, which states:

When a member of a mental health overlay program or a mobile crisis response service is a professional authorized to initiate an involuntary examination pursuant to s. 394.463 or s. 397.675 and that professional evaluates a person and determines that transportation to a receiving facility is needed, the service, at its discretion, may transport the person to the facility or may call on the law enforcement agency or other transportation arrangement best suited to the needs of the patient.

Further, § 394.462(2)(b) states that "[a] company that transports a patient pursuant to this subsection is considered an independent contractor and is solely liable for the safe and dignified transportation of the patient." Sig 9 contends the Amended Complaint alleges that Sig 9 falls squarely within these definitions, and does not allege anything regarding unsafe or undignified transportation by Sig 9. ECF No. [128] at 9.

However, the Amended Complaint alleges that one of the Sig 9 investigators called Plaintiff, pretending to be a property owner who wanted to hire the Hadleys, placed a GPS tracker on Plaintiff's car to follow her movements, and brought her to a marina in Dania Beach for a "business meeting." ECF No. [49] at ¶¶ 224-26. The Amended Complaint further alleges that Sig 9 officers told Plaintiff they were part of a "mobile crisis unit" from Memorial Hospital that worked with Bober. *Id.* at ¶ 239. The Amended Complaint salleges that Steven Cady coached the officers into forcing Plaintiff to be transported by Sig 9, that the officers told Plaintiff that if she did not go with Sig 9, she would be transported in handcuffs and her dog would be placed in a shelter, and

that Jessica Cady "escorted/forced [Plaintiff] into the truck." ¶¶ 260-70. Sig 9's conclusory reliance on § 394.462 is unpersuasive. More significant, Sig 9 presents no argument on how § 394.462 precludes Plaintiff's false imprisonment claim. Therefore, Sig 9's Motion is denied.

### J.  Counts XIX, XXII, and XXIV – Intentional Infliction of Emotional Distress

To state a claim for intentional infliction of emotional distress ("IIED"), Plaintiff must allege that "(1) the defendant's conduct was intentional or reckless; (2) the conduct was outrageous, beyond all bounds of decency, and odious and utterly intolerable in a civilized community; (3) the conduct caused emotional distress; and (4) the emotional distress was severe." *Moore v. Pederson*, 806 F.3d 1036, 1053 (11th Cir. 2015). Under Florida law, "[w]hether conduct is sufficiently 'outrageous' to state a claim for IIED is a question of law for the Court to decide." *Garcia v. Carnival Corp.*, 838 F. Supp. 2d 1334, 1339 (S.D. Fla. 2012) (citing *Medina v. United Christian Evangelistic Ass'n*, No. 08-22111-CV-Cooke, 2009 WL 653857, at *4 (S.D. Fla. Mar. 9, 2009)); *see Liberty Mut. Ins. Co. v. Steadman*, 968 So. 2d 592, 595 (Fla. 2d DCA 2007) ("Whether conduct is outrageous enough to support a claim of [IIED] is a question of law, not a question of fact.") (citing *Gandy v. Trans World Comput. Tech. Grp.*, 787 So. 2d 116, 119 (Fla. 2d DCA 2001)). Counts XIX, XII, and XXIV assert claims for IIED against Perez, Bober, Fondo, Steven Cady, Jessica Cady, Iconic, Bernstein, and CTS Research, respectively. The Court addresses each in turn.

#### i.  Count XIX – Perez, Bober, Fondo, Steven Cady, Jessica Cady)

Each Defendant argues that Plaintiff fails to allege that their behavior was sufficiently outrageous. ECF No. [88] at 10-11; ECF No. [128] at 12-14; ECF No. [187] at 15-19. Bober also raises that in Count XIX, Plaintiff does not distinguish between the actions of each Defendant. ECF No. [187] at 17-18. Plaintiff responds that the Court can and should consider the collective actions of Defendants, which show that their actions were outrageous. ECF No. [152] at 13-14;

ECF No. [175] at 19; ECF No. [222] at 19-20. Plaintiff further asserts that "[s]ince a psychotherapist was involved in the nefarious acts, [Plaintiff's] IIED claim deserves a heightened level of protection." ECF No. [175] at 19; *see also* ECF No. [222] at 20.

The Court finds that there are two flaws with Count XIX. First, the Amended Complaint fails to distinguish the actions by each Defendant. A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often referred to as "shotgun pleadings." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015). In *Weiland*, the Eleventh Circuit identified four common types of shotgun pleadings, including a complaint that asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* at 1321-23. "[T]he unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323. Here, Plaintiff alleges that "Defendants know that forcing [Plaintiff] into an unmarked grey pick-up truck with no insignia on it, and taking her to a hospital to be evaluated by a doctor she never met, who was being paid by her mother, was outrageous and went beyond all bounds of decency." ECF No. [49] at ¶ 542. Plaintiff fails to detail how each Defendant acted outrageously and caused her emotional distress. Her blanket assertion that Defendant's collectively caused Plaintiff IIED is insufficient, even on a motion to dismiss.

Second, the Amended Complaint does not satisfy the stringent standard that Defendants' conduct be outrageous. "While there is no exhaustive or concrete list of what constitutes 'outrageous conduct,' Florida common law has evolved an extremely high standard." *Merrick v.*

*Radisson Hotels Int'l, Inc.*, No. 8:06–cv–01591–T–24TGW., 2007 WL 1576361, at *4 (M.D. Fla. May 30, 2007) (citing *Golden v. Complete Holdings, Inc.*, 818 F. Supp. 1495, 1499 (M.D. Fla. 1993)). "[C]ourts uphold claims of intentional infliction of emotional distress only in 'extremely rare circumstances.'" *Triana v. Diaz*, 12-21309-CIV, 2014 WL 5319800, at *7 (S.D. Fla. Oct. 16, 2014). As Defendants raise, "even claims of intentional infliction of emotional distress based on false accusations of criminal activity and false arrest fail because such conduct, as a matter of law, is not sufficiently outrageous." *Cortez v. Home Depot U.S.A., Inc.*, Case No. 12–cv–14177–KMM, 2013 WL 12077478, at *4 (S.D. Fla. Jan. 31, 2013) (citing *Valdes v. GAB Robins, N. Am., Inc.*, 924 So. 2d 862 (Fla. 3d DCA 2006)).

Aside from Plaintiff's generalized assertions in Count XIX, the alleged conduct does not "go beyond all bounds of decency." Plaintiff argues that the collective actions of Defendants can be considered to evaluate the sufficiency of an IIED claim, citing to *Nims v. Harrison*, 768 So. 2d 1198 (Fla. 1st DCA 2000). However, in *Nims*, the court considered the actions of two defendants who "participated in the planning, editing, writing, printing, copying, and distribution of a newsletter/publication" that threatened to "kill the plaintiff, and to rape the plaintiff's children[.]" 768 So. 2d at 1999, 1201. The court in *Nims* made no decision on, nor was there any mention of, "collective actions" of the defendants. Here, however, Plaintiff cites to unrelated actions of each Defendant in her Responses to the Motions, in hopes that some theory of outrageousness will string together. For example, in her Response to Perez's Motion, Plaintiff references a plethora of Perez's wrongdoings that have little to no relation to Bober, Fondo, Steven Cady, or Jessica Cady. *See* ECF No. [152] at 13-14. Accordingly, Defendants' Motions, ECF No. [88], [128], [222], are granted.[12]

---

[12] Plaintiff's reliance on *Gracey v. Eaker*, 837 So. 2d 348, 352 (Fla. 2002), is likewise misplaced, as the Florida Supreme Court in *Gracey* dealt with a claim for breach of fiduciary duty against a couple's

### ii.  Count XXII – Iconic and Bernstein

Count XXII involves the Nike Academy "training" Iconic required Plaintiff to attend, which Plaintiff asserts was actually covert mental health evaluations conducted by Bernstein. ECF No. [49] at ¶¶ 564-68. Iconic and Bernstein raise similar arguments to those discussed above. Bernstein asserts that Plaintiff claims that Perez engaged Bernstein to provide Plaintiff with therapy under the false pretense that Plaintiff was doing so as part of a Nike Academy training required by Iconic. ECF No. [87] at 15-16. Bernstein claims this conduct is understandable and far from outrageous under Florida law. *Id.* at 16-17. Iconic states that the only allegations pertaining to Iconic are that Iconic required Plaintiff to attend meetings with the Nike Academy, and that Iconic conspired with Perez to have Plaintiff submit to a psychological evaluation. ECF No. [89] at 16. Iconic and Bernstein contend that these allegations do not rise to the level of "outrageousness" required under Florida law. ECF No. [87] at 20; ECF No. [89] at 16.

Plaintiff, in her Responses, relies again on *Nims* and *Gracey*, which, for the reasons discussed above, the Court finds unpersuasive. *See* ECF No. [155] at 8-9; ECF No. [156] at 14. In her Response to Bernstein's Motion, Plaintiff contends that Bernstein's misuse of her professional license and breach of her duties as a mental health provider go beyond mere negligence or poor judgment, and instead demonstrate a deliberate and calculated attempt to emotionally and psychologically hurt Plaintiff. ECF No. [155] at 9. In her Response to Iconic's Motion, Plaintiff asserts that Iconic increased Plaintiff's salary to entice Plaintiff, required Plaintiff to attend a Nike Academy training, created a fake website showing Bernstein's affiliation with the Nike Academy, and retaliated by firing Plaintiff without any explanation in January 2024. ECF No. [156] at 14-15.

---

psychotherapist, and the application of the impact rule.

The allegations contained in the Amended Complaint are not sufficiently "outrageous" to support an IIED claim. At the outset, the Court notes that Plaintiff provides nothing more than conclusory blanket statements that courts have allowed claims like Plaintiff's to proceed and fails to provide any case law to support her assertions. Nevertheless, as Iconic and Bernstein raise, and this Court has recognized, it is not "enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort." *Gallogly v. Rodriguez*, 970 So. 2d 470, 471-72 (Fla. 2d DCA 2007) (quotation omitted). "In other words, even purposeful conduct that one knows is going to hurt another is not outrageous enough to support a claim." *Deauville Hotel Mgmt., LLC v. Ward*, 219 So. 3d 949, 955 (Fla. 3d DCA 2017).

The Amended Complaint does not allege the same level of conduct courts have found to be outrageous. *See, e.g.*, *Thomas v. Hosp. Bd. of Dirs. Of Lee Cnty.*, 41 So. 3d 246, 254 (Fla. 2d DCA 2010) (allegations that "[a] hospital and its employees negligently rendered medical care, resulting in the death of the decedent" and, "[s]ubsequent to the death, the hospital and its employees then engaged in a purported cover-up and notified the family that the decedent died from natural causes despite knowing that such information was false" found to be outrageous); *Urquiola v. Linen Supermarket, Inc.*, No. 94-14-CIV-ORL-19, 1995 WL 266582, at *4 (M.D. Fla. Mar. 23, 1995) (Numerous incidents of kissing, groping, attempted rape, and use of sexually explicit, demeaning, and vulgar language found to be outrageous). Accordingly, Iconic and Bernstein's Motions are granted as to Count XXII.

### iii. Count XXIV – CTS Research

In Count XXIV, Plaintiff alleges that CTS caused Plaintiff emotional distress through its surveillance actions, i.e., "follow[ing] [Plaintiff] and [Javon] 24 hours a day, seven days a week,

including in cars at extremely close distances while armed with firearms." ECF No. [49] at ¶ 579. CTS contends that Plaintiff's allegations do not satisfy the outrageousness standard. ECF No. [86] at 9-10. Plaintiff responds that CTS engaged in an unprecedented amount of surveillance on two ordinary, unknown individuals at the behest of Perez. ECF No. [157] at 7. Further, Plaintiff asserts that CTS investigators employed aggressive and unsafe surveillance tactics, and caused Plaintiff months of unrelenting psychological trauma, lost business opportunities, required psychological treatment for PTSD symptoms, insomnia, gastrointestinal issues, and migraines. *Id.* at 8.

The Court finds Count XXIV similarly fails to satisfy the outrageous standard. Whether or not alleged conduct is outrageous is an objective standard; "the subjective response of the person suffering emotional distress does not control." *Mathews v. United Parcel Serv., Inc.*, Case No. 8:22-cv-01801-TPB-SPF, 2024 WL 756158, at *2. For the reasons outlined above, Count XXIV does not rise to the level of outrageousness courts have typically recognized, nor does Plaintiff provide any caselaw to show otherwise. Accordingly, CTS's Motion is granted as to Count XXIV. *Comparelli v. Bolivarian Rep. of Venezuela*, 655 F. Supp. 3d 1169, 1194 (11th Cir. 2023) ("A district court may dismiss a case with prejudice after a plaintiff has been afforded the opportunity to amend their initial complaint." (citing *Eiber Radiology, Inc. v. Toshiba Am. Med. Sys., Inc.*, 673 F. App'x 925, 930 (11th Cir. 2016))).

### K. Counts XX and XXI – Fraudulent Misrepresentation/Inducement

To state a claim for fraud in the inducement, a party must allege a "(1) misrepresentation of a material fact, (2) by someone who knew or should have known of the statement's falsity, (3) with intent that the representation would induce another to rely and act on it, and (4) injury suffered in justifiable reliance on the representation." *Florida Evergreen Foliage v. E.I. Dupont Nemours & Co.*, 336 F. Supp. 2d 1239, 1284 (S.D. Fla. 2004). "[A] plaintiff must establish that the defendant made a deliberate and knowing misrepresentation designed to cause, and actually causing

detrimental reliance by the plaintiff." *First Interstate Dev. Corp. v. Ablanedo*, 511 So. 2d 536, 539

(Fla. 1987).

In addition, a party must comply with Rule 9(b)'s heightened pleading requirements.

Rule 9(b) is satisfied if the complaint sets forth "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud."

*Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (quoting *Brooks v. Blue Cross*

*& Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997)).

"Rule 9(b) requires that Plaintiff[] 'specifically alleg[e] more than the vague and

conclusory statement that they were induced by the misrepresentation' to withstand a motion to

dismiss for failure to state a claim." *Jackson v. Anheuser-Busch InBev SA/NV, LLC*, Case No. 20-

cv-23392-BLOOM/Louis, 2021 WL 3666312, at *7 (S.D. Fla. Aug. 18, 2021) (quoting *Hillcrest*

*Pac. Corp. v. Yamamura*, 727 So. 2d 1053, 1057 (Fla. 3d DCA 1995)).

### i.   Count XX – Iconic

Iconic argues that Plaintiff fails to plausibly allege that she relied on Iconic's purported

misrepresentation, as the Amended Complaint concedes that Plaintiff attended the Nike Academy

Zoom meeting because she was required to as part of her employment, not because of Iconic's

representation. ECF No. [89] at 9. Further, Iconic asserts that Plaintiff fails to comply with the

requirements set forth in Rule 9(b) and does not plead that Iconic knew of the statement's falsity.

*Id.* Plaintiff responds that whether the meeting was part of her employment is irrelevant, but

Iconic's deception is what was dispositive. ECF No. [156] at 11. Plaintiff further contends that

even if Plaintiff became suspicious during the training, that does not foreclose her from seeking

relief. *Id.* Plaintiff also asserts that Florida law requires only that a defendant make a false

statement. *Id.* at 12. Iconic replies that the Amended Complaint contains no allegations that Iconic was aware that the meetings with Bernstein were mental health evaluations. ECF No. [166] at 5.

At the outset, the Court must determine whether Rule 9(b), or a relaxed pleading standard, governs Plaintiff's claims stated "upon information and belief." Generally, allegations of fraud based upon information and belief do not satisfy Rule 9(b)'s heightened standard of pleading. *Hekker v. Ideon Grp., Inc.*, No. 95–681–Civ–J–16, 1996 WL 578335, at *4 (M.D. Fla. Aug. 19, 1996) (citing *Leisure Founders, Inc. v. CUC Int'l, Inc.*, 833 F. Supp. 1562, 1574 (S.D. Fla. 1993)). "However, where the subject matter of the fraud is uniquely within the adverse party's knowledge or control, allegations of fraud based upon information and belief may be acceptable." *Id.* (citing *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989)). In that case, "allegations made upon information and belief must be accompanied by a statement of the facts on which the belief is founded." *In re Palm Beach Fin. Partners, L.P.*, 488 B.R. 758, 767 (S.D. Fla. 2013) (internal quotation omitted); *see Patagonia, Inc. v. Worn Out, LLC*, Case No. 22-cv-23858-BLOOM/Otazo-Reyes, 2023 WL 3172530, at *8 (S.D. Fla. May 1, 2023) ("the Eleventh Circuit also recognized that the Rule 9(b) heightened pleading standard 'may be applied less stringently . . . when specific factual information [about the fraud] is peculiarly within the defendant's knowledge or control, . . . provided that [the plaintiff] accompan[ies] [her] legal theory with factual allegations that make [her] theoretically viable claim plausible.'" (quoting *Hill v. Morehouse Med. Assocs., Inc.*, No. 02-14429, 2003 WL 22019936, at *3 (11th Cir. Aug. 15, 2003))).

Here, the Amended Complaint asserts that the owners of Iconic sent Plaintiff a last-minute text, stating that "she needed to attend a meeting with the Nike Academy the following day[.]" ECF No. [49] at ¶ 158. Further, Plaintiff alleges that the owners of Iconic required Plaintiff to attend two more "training" sessions with Bernstein. *Id.* at ¶ 173. Aside from these two allegations,

the rest of Plaintiff's assertions pertaining to Iconic's knowledge of the Nike Academy "trainings" are pled upon information and belief. For example, Plaintiff asserts that upon information and belief, "[Perez] stepped in and helped resolve Iconic's financial problems – with strings attached, *i.e.*[,] controlling [Plaintiff]," *id.* at ¶ 153, that "[Perez] conspired with . . . the owners of Iconic, to have [Plaintiff] undergo a mental health evaluation with [Bernstein]," *id.* at ¶ 168, and that Perez, or the owners of Iconic, asked someone to create the fraudulent website showing Bernstein as Rachel Thomas, *id.* at ¶ 171. Plaintiff provides no factual detail to support her speculations, nor does Plaintiff contend that this information is exclusively in the control of Iconic. *See Patagonia, Inc.*, 2023 WL 3172530, at *8. Therefore, the Court need not take these allegations as true, and Plaintiff must plead her claims with the specificity required by Rule 9(b).

Upon consideration of the Amended Complaint, the Court finds that Plaintiff has failed to adequately allege that Iconic knew or should have known that the Nike Academy training sessions were a ruse. *See, e.g.*, *Arnold v. McFall*, 839 F. Supp. 2d 1281, 1289 (S.D. Fla. 2011) (dismissing fraud claim and finding that plaintiff failed to allege any facts showing that the defendant "knew the statements in the E-mail were false, made the misrepresentations without knowledge of their truth or falsity, or should have known the representations were false."). To state a claim for fraudulent misrepresentation, Plaintiff must have justifiably relied upon a false statement made by Iconic. The Amended Complaint is devoid of any assertions that *Iconic* made a misrepresentation to Plaintiff. Accordingly, Iconic's Motion is granted as to Count XX. *Camparelli*, 655 F. Supp. 3d at 1194.

### ii.  Count XXI – Bernstein

Bernstein contends that Plaintiff fails to allege that she detrimentally relied on any purported misrepresentation made by Bernstein, because Plaintiff attended the Nike Academy training sessions for work, and not because of any representation made by Bernstein. ECF No. [87]

at 16. Bernstein asserts this is further supported because the Amended Complaint alleges that even when Plaintiff became suspicious of Bernstein, she continued to attend the sessions. *Id.* Plaintiff responds that this contention is both factually and legally flawed, because having a conversation with someone who is claiming to be someone that they are not, is detrimental in and of itself. ECF No. [155] at 7.

The Amended Complaint alleges that when Plaintiff logged onto the Zoom "training" session, only Rachel "Thomas" signed onto the Zoom. ECF No. [49] at ¶ 160. Rachel "Thomas" identified herself as a representative from the Nike Academy, but then proceeded to ask Plaintiff questions that were unrelated to work and gave Plaintiff a quasi-psychological evaluation without Plaintiff's approval or consent. *Id.* at ¶¶ 162-63, 167. Plaintiff further alleges that the owners of Iconic required Plaintiff to attend two more "training" sessions. *Id.* at ¶ 173. The Amended Complaint does not, however, allege that Plaintiff attended these "training" sessions because of Bernstein's representation that she was a representative from the Nike Academy. Rather, Plaintiff clearly alleges that she attended because she was required to by work, and, nevertheless, was suspicious of Bernstein and the sessions.

Plaintiff's argument to the contrary misconstrues what is required to state a claim for fraudulent misrepresentation. Under Florida law, a plaintiff must plead an injury resulting from acting in justifiable reliance on the fraudulent representation. *Persaud v. Bank of Am., N.A.*, No. 14–21819–CIV, 2014 WL 4260853, at *12 (S.D. Fla. Aug. 28, 2014) (quoting *Odyssey Marine Exploration, Inc. v. Unidentified, Shipwrecked Vessel or Vessels*, 512 F. App'x 890, 894 (11th Cir. 2013)). The Amended Complaint fails to allege any detrimental reliance. Therefore, Bernstein's Motion is granted as to Count XXI.

## L.  Count XXIII – Negligence

CTS argues that Plaintiff's negligent hiring claim fails because Plaintiff does not allege that CTS had actual or constructive notice of its investigators' unfitness. ECF No. [86] at 5-6. Plaintiff concedes that the Amended Complaint does not assert a claim for negligent hiring, but contends that the factual allegations in the Amended Complaint support a claim for negligent retention and negligent supervision. ECF No. [157] at 4. CTS replies that Eleventh Circuit precedent forbids Plaintiff from seeking to amend her complaint through her Response. ECF No. [168] at 6.

The Court agrees. The Eleventh Circuit has repeatedly "held that plaintiffs cannot amend their complaint through a response to a motion to dismiss." *Burgess v. Religious Tech. Ctr., Inc.*, 600 F. App'x. 657, 665 (11th Cir. 2015) (citing *Rosenberg v. Gould*, 554 F.3d 962, 967 (11th Cir. 2009)); *see also Tsavaris v. Pfizer, Inc.*, Case No. 1:15-cv-21826-KMM, 2016 WL 375008, at *3 (S.D. Fla. Feb. 1, 2016) ("A plaintiff, though, cannot amend the complaint in a response to a motion to dismiss, for a court's review on dismissal is limited to the four corners of the complaint." (citing *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002))); *Newton v. Duke Energy Fla., LLC*, 895 F.3d 1270, 1277-78 (11th Cir. 2018) (reaffirming the rule that a request for leave to amend is not properly raised if embedded in a memorandum in opposition to a motion to dismiss).

Plaintiff provides no legal authority that would support a deviation from this precedent. As the master of her complaint, it is Plaintiff's responsibility to allege her claims – the Court cannot retroactively scan the complaint to see if any claim exists. The Court declines to further delay this case and afford Plaintiff "another bite at the apple where [s]he declined 'to follow the well-trodden procedural path toward amendment.'" *Lanier v. City of Miami*, Civil Action No. 23-22510-Civ-Scola, 2024 WL 81385, at *7 (S.D. Fla. Jan. 5, 2024) (quoting *Eiber Radiology, Inc. v. Toshiba*

*Am. Med. Sys., Inc.*, 673 F. App'x 925, 930 (11th Cir. 2016)). Accordingly, CTS's Motion is granted and Count XXIII is dismissed with prejudice. *See Comparelli v. Bolivarian Rep. of Venezuela*, 655 F. Supp. 3d 1169, 1194 (11th Cir. 2023) ("A district court may dismiss a case with prejudice after a plaintiff has been afforded the opportunity to amend their initial complaint." (citing *Eiber Radiology, Inc. v. Toshiba Am. Med. Sys., Inc.*, 673 F. App'x 925, 930 (11th Cir. 2016))).

### M. Count XXV – Malicious Prosecution

To state a claim for malicious prosecution, a plaintiff must allege:

> (1) The commencement or continuance of an original criminal or civil judicial proceeding. (2) Its legal causation by the present defendant against plaintiff who was defendant in the original proceeding. (3) Its bona fide termination in favor of the present plaintiff. (4) The absence of probable cause for such proceeding. (5) The presence of malice therein. (6) Damage conforming to legal standards resulting to plaintiff. If any one of these elements is lacking, the result is fatal to the action.

*Burns v. GCC Beverages, Inc.*, 502 So. 2d 1217, 1218 (Fla. 1986) (quoting *Buchanan v. Miami Herald Publishing Co.,* 230 So. 2d 9, 11 n. 3 (Fla.1969) (on rehearing)). "The failure of a plaintiff to establish any one of these six elements is fatal to a claim of malicious prosecution." *Alamo Rent-A-Car, Inc. v. Mancusi*, 632 So. 2d 1352, 1355 (Fla. 1994).

Perez claims that Plaintiff fails to establish at least three elements, namely, that there was a bona fide termination in Plaintiff's favor, that there was an absence of probable cause, and that Perez acted with malice. ECF No. [88] at 13-14. Plaintiff responds that she "vehemently disagrees that the proceedings did not terminate in [Plaintiff's] favor," and that "[a]ll the proceedings terminated in [Plaintiff's] favor." ECF No. [152] at 15-16.

The Court finds that the Amended Complaint fails to allege that there was a bona fide termination in her favor. Indeed, the Amended Complaint does not contain any facts as to when or how Plaintiff was eventually released from Life Skills. *See* ECF No. [49]. At most, Plaintiff alleges

that other doctors began to notice that Plaintiff "did not belong" at Life Skills, and that Plaintiff tested negative for drugs. *Id.* at ¶¶ 316, 320-21. However, these allegations are inadequate to establish a malicious prosecution claim. *See Cruz*, 2019 WL 10058780, at *3 (S.D. Fla. Sept. 12, 2019). Accordingly, Count XXV is dismissed.

### N.  Perez's Motion to Strike[13]

Perez requests that the Court strike the following allegations: (1) Perez's arrest in the 1990s, *see* ECF No. [49] at ¶¶ 22, 53, 55, 57, 41-60; (2) Perez acted as a confidential informant in the 1990s, *id.* at ¶¶ 22, 41, 43, n.1; (3) the suggestion of Javon's "fraudulent arrests," *id.* at ¶¶ 191, 322, 327, and 328; (4) the "listening device" that Plaintiff claims Perez planted in her bedroom, *id.* at ¶¶ 65-66; and (5) a separate lawsuit filed by Perez against Plaintiff, *id.* at ¶¶ 363-68. Plaintiff responds only to the allegations pertaining to Perez's criminal background,[14] and argues that Perez's background and history are relevant to this case to explain this highly unusual situation, and how Perez could set up Plaintiff and Javon. ECF No. [152] at 16.

Rule 12(f) of the Federal Rules of Civil Procedure provides that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  However, "[a] motion to strike will 'usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties.'" *Harty v. SRA/Palm Trails Plaza, LLC*, 755 F. Supp. 2d 1215, 1218 (S.D. Fla. 2010)

---

[13] Bober also requests that the Court strike Plaintiff's demands for attorney's fees, all accusations that Bober was "paid" by Perez, the statement that Bober should lose his medical license, and the allegation that Bober is a "rogue doctor." *See* ECF No. [187] at 19-20. Plaintiff did not respond. "Generally, a litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point. The court will not do his research for him." *Melford v. Kahane & Assocs.*, 371 F. Supp. 3d 1116, 1126 n.4 (S.D. Fla. 2019) (internal quotations and citation omitted). The Court finds Bober's Motion to be well-reasoned and supported by law. Accordingly, Bober's Motion to Strike is granted.

[14] Because Plaintiff fails to address the remainder of the relief Perez seeks, the Court finds Plaintiff has forfeited the argument. Paragraphs 191, 322, 327, 328, 65-66, and 363-68 shall be stricken from the Amended Complaint.

(citing *Story v. Sunshine Foliage World, Inc.*, 120 F. Supp. 2d 1027, 1030 (M.D. Fla. 2000)); *see Home Mgmt. Sols., Inc. v. Prescient, Inc.*, No. 07-20608-CIV, 2007 WL 2412834, at *1 (S.D. Fla. Aug. 21, 2007); *U.S. Commodity Futures Trading Comm'n v. Minto, LLC*, Case No. 15–cv–61960, 2016 WL 3944101, at *2 (S.D. Fla. May 17, 2016).

The Court finds that the allegations pertaining to Perez's criminal background and history, as well as the allegations that Perez served as a confidential informant, are immaterial, impertinent, and intended solely to harass or embarrass Perez. Most significant, those allegations are irrelevant to the claims asserted against Perez, and Plaintiff has failed to identify a compelling reason to find otherwise. *See Continental Cas. Co. v. Cura Grp., Inc.*, CASE NO. 03-61846-CIV-ALTONAGA/Turnoff, 2005 WL 8155321, at *28-*29 (S.D. Fla. Apr. 6, 2005) (striking allegations about the defendants' criminal histories, because such allegations were unrelated to the case or claims at issue). Accordingly, Perez's Motion is granted.

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. CTS's Motion to Dismiss, **ECF No. [86]**, is **GRANTED**.

2. Bernstein's Motion to Dismiss, **ECF No. [87]**, is **GRANTED**.

3. Perez's Motion to Dismiss, **ECF No. [88]**, is **GRANTED IN PART AND DENIED IN PART**.

    a.  Perez's Motion is denied as to Counts III, IV, VIII, XVI, XVII, and XVIII.

    b.  Perez's Motion to Strike is **GRANTED**.

4. Iconic's Motion to Dismiss, **ECF No. [89]**, is **GRANTED**.

5. Anderson's Motion to Dismiss, **ECF No. [91]**, is **GRANTED**.

6. ROC Nation's Motion to Dismiss, **ECF No. [93]**, is **GRANTED**.

7. Sig 9, Fondo, Steven Cady, and Jessica Cady's Motion to Dismiss, **ECF No. [128]**, is

**GRANTED IN PART AND DENIED IN PART**.

    a.  The Motion is denied as to Counts III, VI, IX, and X.

8.  The District's Motion to Dismiss, **ECF No. [149]**, is **GRANTED**.

9.  Lifeskills's Motion to Dismiss, **ECF No. [160]**, is **GRANTED**.

10. Bober's Motion to Dismiss, **ECF No. [187]**, is **GRANTED IN PART AND DENIED IN PART**.

    a.  Bober's Motion is denied as to Counts III, and V.

    b.  Bober's Motion to Strike is **GRANTED**.

11. Counts I, II, XII, XIII, XIV, XV, XIX, XX, XXI, XXII, XXIII, XXIV, and XXV, are **DISMISSED WITH PREJUDICE**. Count XVI is **DISMISSED WITH PREJUDICE** as to ROC Nation.

12. Plaintiff's Motion for Leave to File BWC Footage, **ECF No. [200]**, is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on October 8, 2025.

<br>

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:    counsel of record