UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 25-cv-22162-BLOOM/Louis

DEMOREE HADLEY,

    Plaintiff,

v.

DESIREE PEREZ, ROC NATION, ICONIC CREATIVE, LLC,
DANIEL BOBER, NATALIE ANDERSON, SIG 9, LLC, JAMES FONDO,
STEVEN CADY, JESSICA CADY, SOUTH BROWARD HOSPITAL DISTRICT,
ODYSSEY BEHAVIORAL HEALTHCARE,
LIFE SKILLS SOUTH FLORIDA OUTPATIENT, LLC,
BROWARD COUNTY SHERIFF'S OFFICE, JOHN DOE, #1,
JOHN DOE, #2, and RACHEL BERNSTEIN,

    Defendants.
_____/

## ORDER ON MOTION TO DISMISS

**THIS CAUSE** is before the Court upon Defendants Broward County Sheriff's Office ("BSO"), Jordan Denis ("Denis"), and Joseph Reyes' ("Reyes") Motion to Dismiss Plaintiff's Amended Complaint [DE49] ("Motion"), ECF No. [241]. Plaintiff Demoree Hadley ("Hadley") filed a Response in Opposition ("Response"), ECF No. [246]. Defendants filed a Reply in Support ("Reply"), ECF No. [250]. The Court has reviewed the Motion, the supporting and opposing submissions, the record, and is otherwise fully advised. For the reasons that follow, Defendants' Motion is granted.

### I. BACKGROUND

Plaintiff filed a 25-Count Amended Complaint against numerous Defendants. *See* ECF No. [49]. In Count VII, Plaintiff alleges Officers Reyes and Denis violated 42 U.S.C § 1983 as a result of their unlawful detention of her. *Id*. at 77-78. In Count XI, Plaintiff alleges BSO falsely imprisoned her. *Id*. at 80-81.

Case No. 25-cv-22162-BLOOM/Louis

Plaintiff alleges that Co-Defendant Desiree Perez conspired with Co-Defendant Dr. Daniel Bober, and Co-Defendants Steven Cady, Jessica Cady, and James Fondo, each private investigators (collectively "Sig 9"), to unlawfully commit Plaintiff to a mental health facility under Florida's Baker Act. ECF No. [49] ¶¶ 220-223. Sig 9 called the Plaintiff, pretending to be a property owner who wanted to hire Plaintiff's landscaping company. *Id*. ¶ 224. Sig 9 placed a tracker on Plaintiff's car to follow her movements as she travelled toward a marina in Dania Beach for the "business meeting" with Sig 9. *Id*. ¶¶ 225, 226. When Plaintiff got close to the marina, "James Fondo, a former police officer, conspired with a sergeant from the Broward County Sheriff's Office ("BSO") to have police officers respond to the side of road near the marina to force a Baker Act upon [Plaintiff]." *Id*. ¶ 226.

BSO Officers Denis and Reyes arrived at approximately 5:40 p.m. *Id*. ¶ 227. Thereafter, James Fondo "told Officers Reyes and Denis that Dr. Bober, who was waiting at the meeting spot in the marina, was going to Baker Act [the Plaintiff]." *Id*. ¶ 228. James Fondo "insinuated to the officers that their sergeant. . . directed them to stand by to ensure that [Plaintiff] went with the Sig 9 investigators." *Id*. ¶ 232. When the Plaintiff arrived at the marina, she was confronted by Sig 9, Dr. Bober, and the BSO Officers Reyes and Denis. *Id*. ¶ 234. At that time, Steven Cady and Dr. Bober told the Plaintiff, "the police were present to make sure she did not leave" and that they "just want to evaluate her." *Id*. ¶¶ 235, 236.

Plaintiff told Dr. Bober that she was seeing Dr. Berrio for grief counseling, who would confirm that she was "totally fine". *Id*. ¶ 237. Plaintiff asked Dr. Bober and Steven Cady whether she was being detained, to which they responded, "for now you're being detained, yes". *Id*. ¶ 238. Plaintiff informed Officers Reyes and Denis that she "never met Dr. Bober, that he was not her doctor, and that her mother conspired with Dr. Bober to falsely Baker Act her." *Id*. ¶ 240. Plaintiff asked

Officers Reyes and Denis to speak to Dr. Berrio, but they instead directed her to Dr. Bober. *Id*. ¶¶ 241, 242. Plaintiff repeatedly asked to leave, but Officers Reyes and Denis told her she could not "because she was being Baker Acted." *Id*. ¶ 251. Officers Reyes and Denis refused Plaintiff's request to call their lieutenant and informed Plaintiff that it did not matter whether she knew Dr. Bober, because Dr. Bober is a doctor. *Id*. ¶¶ 254, 255, 256.

Ultimately, at the urging of Steven Cady, Officers Reyes and Denis told the Plaintiff that if she did not go with Sig 9, then the Officers would transport her in handcuffs. *Id*. ¶¶ 261-266. Officers Reyes and Denis then "forced [Plaintiff]. . . to go with three complete strangers in a dark gray truck with no hospital, police, or mental health insignia on it." *Id*. ¶ 269. Officers Reyes and Denis never identified any of the individuals on scene to confirm they belonged to a "mobile crisis unit" nor did they contact dispatch or the hospital to confirm the existence of a "mobile crisis unit". *Id*. ¶¶ 271, 272.

Defendants now move to dismiss Count VII, contending that Officers Reyes and Denis are entitled to qualified immunity and seek to dismiss Count XI for failure to state a claim. ECF No. [241]. Plaintiff responds that the Defendants' Motion "relies on a distorted reading of the facts and law." ECF No. [246] at 2. Moreover, Plaintiff's "well pleaded allegations. . . show that BSO [officers] lacked even arguable probable cause to detain [Plaintiff]." *Id*.

## II. LEGAL STANDARD

### A. Motion to Dismiss

A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard

"demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Additionally, a complaint may not rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. If the facts satisfy the elements of the claims asserted, a defendant's motion to dismiss must be denied. *Id.* at 556.

When reviewing a motion to dismiss, a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. See *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp.*, LLC, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009) ("On a motion to dismiss, the complaint is construed in the light most favorable to the non-moving party, and all facts alleged by the non-moving party are accepted as true."). A court considering a Rule 12(b) motion is generally limited to the facts contained in the complaint and attached exhibits, including documents referred to in the complaint that are central to the claim. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009). While the court is required to accept as true all allegations contained in the complaint, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

### B. Qualified Immunity

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Kingsland v. City of Miami*, 382 F.3d 1220, 1231 (11th Cir. 2004) (quoting *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002)); see also *Storck v. City of Coral Springs*, 354 F.3d 1307, 1313 (11th Cir. 2003)."The purpose of this immunity is to allow government officials to carry out their discretionary duties without the

fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law," *Wood v. Kesler*, 323 F.3d 872, 877 (11th Cir. 2003) (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)). The qualified immunity doctrine accordingly represents "a balance between the need for a remedy to protect citizens' rights and the need for government officials to perform their duties without the fear of constant, baseless litigation." Kingsland, 382 F.3d at 1231 (citation omitted). Accordingly, "[q]ualified immunity is, as the term implies, qualified. It is not absolute." Id. at 1233.

"Generally speaking, it is proper to grant a motion to dismiss on qualified immunity grounds when the 'complaint fails to allege the violation of a clearly established constitutional right.'" *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019) (quoting *St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)). To prevail on a motion to dismiss based on qualified immunity, "the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly unconstitutional acts took place." *Storck*, 354 F.3d at 1314 (citing *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991)).

"A government official acts within his discretionary authority if his actions were (1) undertaken pursuant to the performance of his duties; and (2) within the scope of his authority." *Mikko v. City of Atlanta, Ga.*, 857 F.3d 1136, 1144 (11th Cir. 2017) (citing *Lenz v. Winburn*, 51 F.3d 1540, 1545 (11th Cir. 1995)). "In applying each prong of this test, [courts] look to the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1266 (11th Cir. 2004). "In other words, 'a court must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related

to, the outer perimeter of an official's discretionary duties.'" *Mikko*, 857 F.3d at 1144 (quoting *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998)). "Once the public official has established that he was acting within the scope of his discretionary authority, the burden shifts to the plaintiff to establish that qualified immunity does not apply." *Storck*, 354 F.3d at 1314 (citing *Lee*, 284 F.3d at 1194).

The United States Supreme Court has outlined a two-part test to determine whether a plaintiff meets its burden on rebutting a qualified immunity defense: (1) "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"; and (2) if a constitutional right would have been violated under the plaintiff's version of the facts, the court must then determine "whether the right was clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Moreover, courts "may consider these two prongs in either order; an official is entitled to qualified immunity if the plaintiff fails to establish either." *Piazza v. Jefferson Cty., Ala.*, 923 F.3d 947, 951 (11th Cir. 2019) (citing *Jacoby v. Baldwin Cty.*, 835 F.3d 1338, 1344 (11th Cir. 2016)).

"[O]nly Supreme Court cases, Eleventh Circuit caselaw, and [Florida] Supreme Court caselaw can 'clearly establish' law in this circuit." *Thomas ex rel. Thomas v. Roberts*, 323 F.3d 950, 955 (11th Cir. 2003) (citing *Hamilton By & Through Hamilton v. Cannon*, 80 F.3d 1525, 1532 n.1 (11th Cir. 1996)). The essence of this inquiry is the "public official's objective reasonableness, regardless of his underlying intent or motivation." *Kingsland*, 382 F.3d at 1231-32 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982); *Lee*, 284 F.3d at 1195). "To be clearly established, the contours of an asserted constitutional right 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Jones v. Cannon*, 174 F.3d 1271, 1282 (11th Cir. 1999) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "[I]n the light of pre-

existing law, the unlawfulness must be apparent." *Anderson*, 483 U.S. at 640. "Qualified immunity 'gives ample room for mistaken judgments' but does not protect 'the plainly incompetent or those who knowingly violate the law.'" *Kingsland*, 382 F.3d at 1231-32 (quoting *Malley v. Briggs*, 475 U.S. 335, 343 (1986)).

Nonetheless, "[t]he Supreme Court and [the Eleventh Circuit] have stated that a plaintiff cannot strip a § 1983 defendant of his qualified immunity by citing to general rules or abstract rights." *Jones*, 174 F.3d at 1282 (citing *Anderson*, 483 U.S. at 639); *see Walker v. Schwalbe*, 112 F.3d 1127, 1132 (11th Cir. 1997) ("Plaintiffs may not discharge their burden [of showing that a right is clearly established] by referring to general rules and abstract rights."). "Qualified immunity focuses on the actual, specific details of concrete cases." *Walker*, 112 F.3d at 1132.

Additionally, "[b]ecause § 1983 'requires proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation,' each defendant is entitled to an independent qualified-immunity analysis as it relates to his or her actions and omissions." *Alcocer v. Mills*, 906 F.3d 944, 951 (11th Cir. 2018) (quoting *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986) (per curiam)). Thus, in conducting a § 1983 analysis, courts must "evaluate a given defendant's qualified-immunity claim, considering only the actions and omissions in which that particular defendant engaged." *Id.* Here, the same operative facts apply to both Reyes and Denis who were privy to the same information and worked the scene together. As such, both Defendants are subject to the same analysis.

### III. DISCUSSION

#### A. Count VII – Violation of 42 U.S.C § 1983

In Count VII of the Amended Complaint, Plaintiff alleges Officers Reyes and Denis violated her "Fourth Amendment right not to be seized or imprisoned without probable cause." ECF No. [49] at 77. "The Fourth Amendment protects people from unreasonable searches and seizures."

7

*Roberts v. Spielman*, 643 F.3d 899, 905 (11th Cir. 2011) (citing U.S. Const. amend. IV). "For Fourth Amendment purposes, a seizure occurs when an officer, 'by means of physical force or show of authority, has in some way restrained the liberty of a citizen....'" *Id.* (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n. 16 (1968)). "[I]t is well established that an arrest without probable cause is an unreasonable seizure that violates the Fourth Amendment." *Grider v. City of Auburn*, 618 F.3d 1240, 1256 (11th Cir. 2010). "An officer thus has qualified immunity against Fourth Amendment unreasonable seizure claims, including for seizures for involuntary mental health examination, so long as that officer had "arguable probable cause" to make the seizure." *Watkins v. Bigwood*, No. 18-63035-CIV, 2022 WL 877772, at *6 (S.D. Fla. Feb. 24, 2022) (citing *May v. City of Nahunta, Georgia*, 846 F.3d 1320, 1328 (11th Cir. 2017) ("To be entitled to qualified immunity from a Fourth Amendment claim, an officer need not have actual probable cause, but only arguable probable cause—that is, the facts and circumstances must be such that the officer reasonably could have believed that probable cause existed.") (alteration and internal quotation marks omitted)).

Officers Reyes and Denis contend they are entitled to qualified immunity because the officers had "probable cause, or at least arguable probable cause, to believe that Plaintiff needed to be Baker Acted and transported to a mental facility based on [Dr. Bober's] determination. ECF No. [241] at 6. As to probable cause, Defendants contend Plaintiff's involuntary examination under the Baker Act was properly initiated by Dr. Bober's Certificate of Professional Initiating Involuntary Examination ("Certificate").  The Defendants argue that §394.462 requires law enforcement officers to "take the person named in the certificate and deliver him or her to the appropriate, or nearest, facility. . . for involuntary examination." ECF No. [241] at 5 (citing Fla. Stat. § 394.463). Moreover, Defendants claim the Certificate was facially valid and, to the extent Dr. Bober did not

8

complete an evaluation, it was unknown to Officers Reyes and Denis at the time. *Id*. at 6. Defendants assert that because Plaintiff was held longer than 72 hours, arguable probable existed to believe she met the criteria for an involuntary examination. *Id*. In support, Defendants cite to *Bright v. City of Tampa*, in which the Court found that an individual held for fourteen days instead of the seventy-two hours required by the Baker Act was anecdotal evidence of arguable probable cause. No. 8:16-CV-1035-T-17MAP, 2017 WL 5248450, at *3 (M.D. Fla. May 17, 2017), aff'd sub nom. *Bright v. Thomas*, 754 F. App'x 783 (11th Cir. 2018).

Plaintiff responds that the Certificate was "bogus" and asserts that Dr. Bober admitted he had not conducted an evaluation. ECF No. [246] at 13. Moreover, Plaintiff avers Dr. Bober never gave the Certificate to Officer Reyes or Officer Denis. *Id*. at 14. Plaintiff claims Officers Reyes and Denis knew Dr. Bober did not complete an evaluation because she repeatedly told them she had never met the doctor. *Id*. Plaintiff disputes that she was held for longer than seventy-two hours under the Baker Act, claiming that her subsequent commitment to LifeSkills was related to her mother's petition under Florida's Marchman Act. *Id*. at 18. As such, Plaintiff maintains no arguable probable cause exists for her unlawful seizure in violation of the Fourth Amendment. *Id*. at 6.

"Whether an officer possesses probable cause or arguable probable cause depends on the elements of the alleged crime and the operative fact pattern." *Bright*, 754 F. App'x 783, 786 (citing *Skop v. City of Atlanta*, 485 F.3d 1130, 1137–38 (11th Cir. 2007). Under Florida's Baker Act, "A person may be taken to a receiving facility for involuntary examination if there is reason to believe that the person has a mental illness and because of his or her mental illness. . .[t]here is a substantial likelihood that without care or treatment the person will cause serious bodily harm to himself or herself or others in the near future, as evidenced by recent behavior." Fla. Stat. Moreover,

> A law enforcement officer shall take a person who appears to meet the criteria for involuntary examination into custody and deliver the person or have him or her delivered to an appropriate, or the nearest, facility within the designated receiving system pursuant to s. 394.462 for examination. A law enforcement officer transporting a person pursuant to this subparagraph shall restrain the person in the least restrictive manner available and appropriate under the circumstances.

Fla. Stat. § 394.463(2)(a)(2)

As such, Plaintiff's "factual allegations must demonstrate that reasonable officers - possessing the same knowledge as the defendants - could not have believed [Plaintiff] appeared to meet the criteria for an involuntary examination. *Bright*, 754 F. App'x 783, 786 (citing *Scarbrough v. Myles*, 245 F.3d 1299, 1301 (11th Cir. 2001)).

Turning to the facts alleged, in considering a motion to dismiss, the court is generally limited to facts contained in the complaint and attached exhibits. *See Thaeter v. Palm Beach Cnty. Sheriff's Off.*, 449 F.3d at 1352. However, pursuant to the incorporation by reference doctrine, "a district court may consider evidence attached to a motion to dismiss without converting the motion into a motion for summary judgment 'if the document is (1) central to the plaintiff's claim; and (2) undisputed, meaning that its authenticity is not challenged.'" *Swinford v. Santos*, 121 F. 4th 179, 187 (11th Cir. 2024) (quoting *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024)). Here, Plaintiff requested and was granted to leave to file Officers Reyes and Denis' body-worn camera ("BWC") footage as "part of her Motion to Dismiss". ECF Nos. [282], [284]. The footage, ECF No. [289], captures the near entirety of the incident from the vantage point of Officers Reyes and Denis and its authenticity is not challenged.

In the footage, Officer Denis speaks to James Fondo on the side of the road. Fondo informs him he is waiting for a car to pass by being driven by a "mentally unstable person". ECF No. [289] D.H. 539 (0:29 – 0:39). Thereafter, Fondo informs Officer Denis that Dr. Bober is seeking to do an evaluation on the Plaintiff pursuant to the Baker Act. *Id.* (0:40 – 1:29). Officer Reyes arrives

and after a short inaudible discussion, Officers Reyes and Denis head to the marina where Dr. Bober is waiting. *Id*. (2:19 – 4:20). At the marina, Officer Reyes' BWC shows Plaintiff with Jessica Cady and James Fondo behind her and Dr. Bober and Steven Cady leaning on a police car in front of her. ECF No. [289] D.H. 524 (0:27). After Plaintiff steps away to make a phone call to her doctor, Officer Reyes asks Steven Cady who they are. Cady responds that they are "a mobile crisis team working with Dr. Bober from Hollywood Memorial Hospital." *Id*. (1:35 – 1:45). Plaintiff returns and requests that Officer Reyes speak to her doctor on the phone. Officer Reyes instructs her to give the phone to Dr. Bober. *Id*. (2:04 – 2:21). After Dr. Bober gets off the phone with Plaintiff's doctor, Officer Reyes asks him, "what's the word, sir?" *Id.* (8:45 – 8:50). Dr. Bober responds, "We're going to take her." He goes on to explain that he has three different collateral sources of information that Plaintiff has been acting psychotic and threatened to overdose the day prior. *Id*. (8:50 – 9:13). Ultimately, Plaintiff elects to be transported to the hospital by Sig 9, rather than by Officers Reyes and Denis. ECF No. [289] D.H. 523 (13:07 – 13:26).

"Arguable probable cause exists. . . in light of the information the officer possessed." *Durruthy v. Pastor*, 351 F.3d 1080, 1089 (11th Cir. 2003) (quoting *Montoute v. Carr,* 114 F.3d 181, 184 (11th Cir.1997)). "It is well established that police officers may generally rely on eyewitness accounts and victim statements to establish probable cause." *Bright*, 754 F. App'x 783, 787 (citing *Rankin v. Evans*, 133 F.3d 1425, 1441 (11th Cir. 1998). Here, Defendants Reyes and Denis relied on information provided from Sig 9, and critically, Dr. Bober. Specifically, Dr. Bober's statement that he possessed information that Plaintiff had been acting psychotic and threatened to overdose. Moreover, this information was provided to the Officers after Dr. Bober concluded his call with Plaintiff's personal doctor, Dr. Berrio. Though Plaintiff argues Officers Reyes and Denis knew Dr. Bober failed to complete an evaluation because she "repeatedly told them she's never met Dr.

Bober", such an inference does not demonstrate that reasonable officers, possessing the same knowledge as the defendants, could not have believed Plaintiff appeared to meet the criteria for involuntary examination. As such, Defendants' Motion is granted as to Count VII.

### B. Count XI – False Arrest/Imprisonment

In Count XI, Plaintiff asserts a claim of false arrest and false imprisonment against BSO for intentionally restraining her under circumstances that were unreasonable and unwarranted. ECF No. [49] at 80. BSO argues that Plaintiff was "lawfully detained by law enforcement". ECF No. [241] at 7. Plaintiff responds that the BSO Deputies lacked probable cause to seize Plaintiff. ECF No. [246] at 19.

"[U]nder Florida law, false arrest and false imprisonment are nearly indistinguishable where, as here, they are applied to a police officer's arrest and detention of a suspect." *Willingham v. City of Orlando*, 929 So.2d 43, 49–50 (5th DCA 2006). False arrest or imprisonment is "the unlawful restraint of a person against that person's will." *Willingham v. City of Orlando*, 929 So. 2d 43, 48 (5th DCA 2006). "Probable cause is an affirmative defense" to false arrest and imprisonment claims. *See Gomez v. Lozano*, 839 F. Supp. 2d 1309, 1317 (S.D. Fla. 2012) (citations omitted). The existence of probable cause bars a false imprisonment claim because it negates the element that the detention was "unlawful" or conducted "without legal authority". *Senko v. Jackson*, 603 F. Supp. 3d 1299, 1314 (S.D. Fla. 2022), aff'd, No. 22-11877, 2023 WL 2518367 (11th Cir. Mar. 15, 2023). As evidenced in the BWC footage, Officers Reyes and Denis had facts and circumstances within their knowledge sufficient to form a reasonable belief that Plaintiff appeared to meet the criteria for involuntary examination. As such, Defendants' Motion is granted as to Count XI.

### IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion**, ECF No. [241]**, is **GRANTED**;

2. **Count VII** and **Count XI** are **DISMISSED WITH PREJUDICE**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on January 15, 2026.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:

counsel of record