**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:25-cv-22162-BB

DESIREE PEREZ, *et al.*,

      Plaintiffs,

v.

JAVON HADLEY,

      Defendant.

_____ /

## REPORT AND RECOMMENDATIONS

**THIS CAUSE** is before the Court on Consolidated Defendant Javon Hadley's ("Defendant Hadley") Motion to Dismiss Desiree Perez, Olga Zayas, Miladys Garcia Gonzalez, and Denisse Milagros Gonzalez Escribano's, (collectively, "Consolidated Plaintiffs") Amended Complaint. (ECF No. 227). This matter has been referred to the undersigned by the Honorable Beth Bloom, United States District Judge, for a report and recommendations, pursuant to 28 U.S.C. § 636 and Local Magistrate Judge Rule 1. (ECF No. 235). Based upon the Parties' briefing on the Motion, being otherwise fully advised in the premises, and as set forth below, the undersigned respectfully **RECOMMENDS** that Defendant's Motion (ECF No. 227) be **GRANTED**, in part, and **DENIED**, in part.

## I.   BACKGROUND

The following facts are alleged in the Amended Complaint and are assumed to be true.

Desiree Perez, (individually, "Plaintiff Perez"), Olga Zayas, Miladys Garcia Gonzalez, and Denisse Milagros Gonzalez Escribano allege that Defendant Javon Hadley has since at least July 2021 verbally, physically, mentally, and emotionally abused his partner and now wife, Demoree

Hadley; that he has isolated Demoree from her family; that he has manipulated, threatened, and otherwise coerced Demoree into providing him with means by which to surveil herself and her family members; and that he has done so pursuant to a scheme to extort and defame Plaintiff Perez.

Demoree Hadley is Plaintiff Perez's daughter. Demoree and Javon (collectively, "the Hadleys") resided, together with Olga Zayas and Epifanio "Julio" Gonzalez, Plaintiff Perez's father and Demoree's grandfather, at a Miami address hereinafter referred to as the "Family Home." (ECF No. 198 ¶ 3). Miladys Garcia Gonzalez is regularly present in the Family Home, where she acts as caregiver for Julio. (*Id.*). Plaintiff Perez claims to own the Family Home, as well as "Minita's Home," where her mother, Demoree's grandmother, lives.

In June 2021, at Demoree's request, and to assist in Julio's ongoing care for dementia, Plaintiff Perez hired a professional security consultant to install a high-end surveillance system in the Family Home's common areas. In early 2022, Demoree requested, and Plaintiff Perez purchased, the addition of state-of-the-art security cameras with audio and color capabilities to Family Home's interior and exterior common areas. These additional cameras were accessible via an app that provided remote access. Plaintiff Perez installed the same video surveillance system at Minita's Home. (*Id.* ¶¶ 26–27).

Plaintiff Perez granted Demoree Hadley access to the security system and cameras, "solely to monitor Julio and Minita" for their benefit. (*Id.* ¶ 28). While Plaintiff granted Demoree access, Demoree was not authorized to share passwords to the security systems, to transmit or share video or audio footage therefrom, or to grant access to anybody else. (*Id.*). Javon Hadley knew that he had not been authorized to access the security systems but demanded that Demoree secretly provide him with access to the systems, without Plaintiff Perez's consent.

2

Javon Hadley allegedly sought to obtain access to the security systems through intimidation, threats, and verbal abuse directed at Demoree. On April 10, 2022, when Demoree visited Minita's Home to check on her health, Javon sent Demoree "a series of threatening texts" demanding that Demoree provide him with access to Minita's Home's security system so that he could confirm Demoree was indeed at that location. (*Id.* ¶ 35). Demoree provided him with login credentials to the security system, but Defendant Hadley was "[u]nable to access the cameras" at Minita's Home. (*Id.*).

In late July 2023, Plaintiff Perez learned that Javon Hadley had been accessing the surveillance systems she procured for the Family Home. Javon Hadley allegedly used the security systems to monitor Demoree Hadley, Plaintiff Perez, and other Family Home residents, including by eavesdropping on their private conversations, tracking their location, and watching Desiree when she visited her father. (*Id.* ¶ 31). On or before August 2, 2023, Plaintiff Perez changed the login credentials to the security system to cut off the Hadleys' access. That same day, Javon complained to Demoree that they could no longer view Plaintiffs' location.

Consolidated Plaintiffs allege that Defendant Hadley physically, mentally, and emotionally abused Demoree Hadley in the Family Home, which Consolidated Plaintiffs claim impacted them as a nuisance and even inflicted severe emotional distress on them. On several occasions, the Hadleys' cohabitants in the Family Home reported Javon Hadley's conduct to state law enforcement. (*id.* ¶¶ 46, 72, 80).

During an altercation in which Consolidated Plaintiffs Olga and Miladys overheard raised voices coming from the Hadleys' shared bedroom, followed by a slapping noise and the sound of Demoree Hadley crying and asking Defendant Hadley not to hurt her, Olga and Miladys allegedly observed that the left side of Demoree's face was red as if it had been struck. Olga armed herself

3

with a weapon and reentered the shared bedroom. (*Id.*). Miladys left the house to call the police; Desiree called Demoree's phone and, when Javon answered it, attempted to calm him down. (*Id.* ¶¶ 46–47). Demoree allegedly lied to the police regarding the incident, who made no arrest.

On January 16, 2022, security cameras at the Family Home captured video of Defendant Hadley approaching Demoree, punching her in the head, grabbing her by the arm, and pushing her through a door into the Family Home. (*Id.* ¶¶ 73–75). Another altercation allegedly took place on September 11, 2023. The Family Home's security system captured audio of Javon Hadley screaming at Demoree, demanding that she reduce her "percentage" in the lawn service business they operate together. During the exchange, the audio recording captures "the sound of a drawer opening," followed by "a loud thumping noise, resembling a gun being slammed onto a surface," whereupon Hadley asked Demoree if she would agree to reduce her stake in the business to five percent. Demoree is recorded pleading with Defendant Hadley to stop before the sound of slapping could be heard. (*Id.* ¶¶ 77–78).

In December 2023, Plaintiff Perez reported Defendant Hadley to law enforcement. Hadley was arrested for punching Demoree Hadley in January 2022. After the Miami-Dade State Attorney's Office declined to prosecute Javon Hadley, Consolidated Plaintiffs asked the Miami-Dade Police Department to re-arrest him for the September 11, 2023 incident in which Hadley allegedly threatened Demoree to reduce her percentage in the lawn service business. Hadley was re-arrested for that incident in April 2024.

Demoree Hadley allegedly suffered severe emotional distress as a consequence of this abuse. *See* (*id.* ¶¶ 85–87). Consolidated Plaintiffs allegedly suffered severe emotional distress as well, as a result of Defendant Hadley's using the Family Home "to terrorize, humiliate, and

degrade D.H.," and "instill[] fear and horror to everyone else who resided in the family home." *See* (*id.* ¶¶ 93–100).

Plaintiff Perez alleges particularized distress. The Amended Complaint states that, following his April 2024 arrest, Javon Hadley commenced a defamatory and extortionate social media smear campaign against Plaintiff Perez and resolved to sue her to make her "pay up." (*Id.* at 47). Javon Hadley allegedly recruited others to post defamatory falsehoods about Plaintiff Perez, her employer, and Plaintiffs' counsel with the goal of extorting a large settlement from her. Days before Plaintiff Perez changed the login credentials to the Family Home's security system, that system was allegedly "improperly accessed," and Plaintiff Perez was recorded having a "private conversation with her stepsister discussing work, her sadness about her isolation" from Demoree, and her concern for Demoree's safety. Plaintiff Perez alleges that Javon Hadley obtained the video and assisted in its being uploaded to the internet for extortionate purposes. (*Id.* ¶ 109).

## II.   PROCEDURAL HISTORY

Consolidated Plaintiffs first filed this action in Case Number 1:25-cv-21607-BB, in early April 2025. *See Desiree Perez, et al. v. Javon Hadley*, 1:25-cv-21607-BB, (ECF No. 1) (S.D. Fla. Apr. 8, 2025). In July 2025, the Court consolidated Plaintiffs' case with the instant litigation. *See Perez v. Hadley*, 1:25-cv-21607, (ECF No. 25 July 1, 2025). Post-consolidation, Consolidated Plaintiffs filed a Motion for Leave to Amend their initial complaint, (ECF No. 170), which Motion was granted, (ECF No. 197).

Consolidated Plaintiffs promptly filed their Amended Complaint on August 6, 2025. (ECF No. 198). The Amended Complaint asserts seven Counts under federal and state law: Violation of the Federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (*id.* at 35–37) (Count I); Violation of the Stored Communications Act, 18 U.S.C. § 2701 (*id.* at 37–38) (Count II); Violation of the

Federal Wiretap Act, 18 U.S.C. § 2511 (the "FWA"), (*id.* at 38–39) (Count III); Violation of the Florida Security of Communications Act, section 934.10, Florida Statutes, (*id.* at 39–40) (Count IV); Invasion of Privacy under a theory of Intrusion Upon Seclusion, (*id.* at 40–42) (Count V); Private Nuisance under Florida law, (*id.* at 42–43) (Count VI); and Intentional Infliction of Emotional Distress under Florida law, (*id.* at 43) (Count VII). Plaintiffs seek a judgment and award of statutory damages, compensatory damages, punitive damages, reasonable attorney's fees and costs, and any further relief as the Court deems just and proper. (*Id.* at 45).

Defendant Hadley timely filed the present Motion to Dismiss on August 25, 2025. (ECF No. 227). The Motion contends, with respect to each Count asserted, that the Amended Complaint fails to state a claim upon which relief can be granted. The Motion attacks Counts I–II and III–V, respectively, in tandem, and levies discrete arguments for dismissal of Counts VI and VII. Further, and pursuant to its argument that the Amended Complaint requires dismissal under Federal Rule of Civil Procedure 12(b)(6), the Motion asserts that the Amended Complaint contains at least five intentional misrepresentations of fact, an assertion supported by photographs and screenshots disputing the Amended Complaint's allegations of fact. Consolidated Plaintiffs filed a Response in opposition to the Motion, (ECF No. 233), to which Defendant Hadley filed a Reply, (ECF No. 238).

The undersigned recommends that the Motion to Dismiss be **DENIED** as to Counts I–II, which encompass Defendant Hadley's alleged unauthorized access of Plaintiff Perez's security systems, and Count III–V, which encompass Defendant Hadley's allegedly wrongful use of the same. The undersigned recommends that the Motion be **GRANTED** as to Counts VI and VII, which respectively assert tort claims of private nuisance arising from Defendant Hadley's domestic

conduct, and intentional infliction of emotional distress arising from the Amended Complaint's allegations as a whole.

### III.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a claim for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead facts sufficient to state a claim that is "plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The Court's consideration is limited to the allegations in the complaint. *See GSW, Inc. v. Long Cnty.*, 999 F.2d 1508, 1510 (11th Cir. 1993).  All factual allegations are accepted as true and all reasonable inferences are drawn in the plaintiff's favor.  *See Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010); *see also Roberts v. Fla. Power & Light Co.*, 146 F.3d 1305, 1307 (11th Cir. 1998).

Although a plaintiff need not provide "detailed factual allegations," a complaint must provide "more than labels and conclusions."  *Twombly*, 550 U.S. at 555.  "[A] formulaic recitation of the elements of a cause of action will not do."  *Id.*  Rule 12(b)(6) does not allow dismissal of a complaint because the court anticipates "actual proof of those facts is improbable," but the "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1296 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 545).

### IV.   DISCUSSION

As a preliminary matter, the undersigned recommends that the Court decline to take judicial notice of, or otherwise rely upon, the factual material embedded in Defendant Hadley's Motion. *See* (ECF No. 227 at 3–11 & n.4). In general, a court is limited to reviewing what factual

matter is within the four corners of the complaint on a motion to dismiss. *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1329 n.7 (11th Cir. 2006). "When assessing the sufficiency of a complaint on a motion to dismiss, a district court has some 'discretion' to decide whether to consider 'matters outside of the pleadings.'" *Jackson v. City of Atlanta, Ga.*, 97 F.4th 1343, 1350 (11th Cir. 2024) (citing *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (a district court "*may* consider a document attached to a motion to dismiss without converting the motion into one for summary judgment") (emphasis added)). Discretion to consider factual matter outside of the operative complaint is triggered where "the attached material [is] '(1) central to the plaintiff's claim' and (2) 'the authenticity of the document is not challenged.'" *Id.* (quotation omitted).

Almost half of the Motion to Dismiss is dedicated to introducing factual matter extrinsic to the complaint. *See* (ECF No. 227 at 3–11). In some instances, as in the Motion's exposition of "Misrepresentation Nos. 1 and 2," Defendant Hadley contests factual allegations in reliance upon public records. (*Id.* at 3–4). In others, as in the Motion's exposition of "Misrepresentation Nos. 3 and 4," Defendant Hadley simply argues that the Amended Complaint's factual allegations should be construed against Consolidated Plaintiffs. (*Id.* at 4–5) (Misrepresentation No. 3; affixing a screenshot of the Hadleys' text messages and arguing that "[n]othing about Javon's request for access was even remotely threatening"); (*id.* at 6–7) (affixing officer bodycam footage following alleged physical abuse, arguing that, "when the police arrived, Demoree's face was perfectly fine"). In no instance does Defendant Hadley explain why the materials attached to the Motion's opening section are central to Plaintiffs' claims. *See* (*id.* at 3 n.4). The undersigned does not conclude that the extrinsic materials speak for their own centrality to the case, such that the Court should deviate from the general rule and consider those materials at the pleading stage. If Defendant Hadley's assertion is that the Amended Complaint's factual allegations are infirm

8

because belied by credible factual information in Defendant Hadley's possession, then Defendant Hadley may revive that assertion at the appropriate time and via the proper procedural vehicle. In the Court's present posture, however, the undersigned recommends that Defendant Hadley's invitation to consider the factual counter-allegations and materials embedded in the Motion to Dismiss be denied.

### A.    Defendant Hadley's Challenge to Counts I and II

Counts I and II of the Amended Complaint assert that Defendant Hadley knowingly and intentionally accessed, without authorization, the state-of-the-art security systems Plaintiff Perez purchased for the Family Home and Minita's Home, in violation of the Computer Fraud and Abuse Act and the Storage Communications Act.

### 1.    Applicable Law

The Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA") operates primarily as a criminal statute. *See Clarity Servs., Inc. v. Barney*, 698 F. Supp. 2d 1309, 1313 (M.D. Fla. 2010). The CFAA provides a narrow right of action against any person who suffers damage or loss from certain violations of its provisions. *Tracfone Wireless, Inc. v. Simply Wireless, Inc.*, 275 F. Supp. 3d 1332, 1339 (S.D. Fla. 2017).

> Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief. A civil action for a violation of this section may be brought only if the conduct involves 1 of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i). Damages for a violation involving only conduct described in subsection (c)(4)(A)(i)(I) are limited to economic damages. No action may be brought under this subsection unless such action is begun within 2 years of the date of the act complained of or the date of the discovery of the damage. No action may be brought under this subsection for the negligent design or manufacture of computer hardware, computer software, or firmware.

18 U.S.C. § 1030(g).

A civil plaintiff under the CFAA must allege that she (1) suffered damages or loss, (2) by reason of a substantive violation of this section, (3) where the conduct involved one of the five "operatively substantial effect" subfactors set forth in subsection (a)(5)(B)(i)(I)–(V). *See Flagstone Island Gardens, L.L.C. v. Ser*, No. 11-21865-CIV, 2011 WL 13223685, at *3 (S.D. Fla. Sept. 13, 2011). Here, Consolidated Plaintiffs must allege that Defendant Hadley "intentionally accessed a protected computer without authorization, and as a result of such conduct, caused damage and loss." *Tracfone Wireless, Inc.*, 275 F. Supp. 3d at 1339 (quoting 10 U.S.C. § 1030(a)(5)(C)).

The Stored Communications Act ("SCA") creates a civil cause of action against anyone who "(1) intentionally accesses without authorization a facility through which an electronic communication service is provided; or (2) intentionally exceeds an authorization to access that facility if through that access the person thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system." *Hadley v. Perez*, No. 1:25-cv-22162, 2025 WL 2851642, at *15 (S.D. Fla. Oct. 8, 2025) (quotations and internal marks omitted); 18 U.S.C. §§ 2701(a), 2707(a).

Defendant Hadley argues for dismissal of Counts I and II in tandem. The Parties dispute (1) whether the Amended Complaint adequately alleges that Defendant Hadley accessed certain of Plaintiff Perez's security cameras, and (2) whether the Amended Complaint adequately alleges that Defendant Hadley lacked authorization to do so.

### 2. Allegations

Consolidated Plaintiffs' allegations with respect to Counts I and II are virtually identical. As pertinent here, the Amended Complaint alleges that Plaintiff Perez procured security systems, including cameras, to monitor the Family Home and Minita's Home in the interest of those

10

residences' occupants' safety. (ECF No. 198 ¶¶ 23–28). Defendant Hadley was not authorized and knew that he was not authorized to access the security cameras associated with the security system Plaintiff Perez procured. (*Id.* ¶¶ 29–30, 35, 40). The Amended Complaint alleges that he did in fact access the security systems by obtaining the necessary login credentials from Demoree Hadley, who "[a]t no point was . . . authorized to use or share passwords, transmit, or share video or audio footage, nor was she authorized to grant access to anyone else." (*Id.* ¶ 28); *see* (*id.* ¶¶ 29–31). Plaintiff Perez learned "that Hadley was accessing the surveillance system at the Residences" in July 2023 and cut off access "to protect her family's privacy." (*Id.* ¶ 40). The Amended Complaint alleges that, as a result of Defendant Hadley's access, Plaintiff Perez suffered damages exceeding $5,000 in the form of "time, money, and resources" spent "to investigate the intrusion, assess the damage—including the deletion and alteration of data caused by Hadley's unauthorized access—and to restore her systems to their secure and original state." (*Id.* ¶¶ 100, 117).

### 3.      Access

Defendant Hadley first argues that the Amended Complaint concedes that he failed to access security cameras at Minita's Home, and that this much of Consolidated Plaintiffs' claim therefore fails as a matter of law. (ECF No. 227 at 13–15). Consolidated Plaintiffs respond that the Amended Complaint "sets forth in great detail Defendant's maniacal efforts to access security cameras at Minita's house between April 10-11, 2023," and "details that, as a result of Defendant's repeated threats, [Demoree Hadley] was compelled to gain access to the passwords for the cameras in Minita's home under false pretenses and send the username and password to Defendant[.]" (ECF No. 233 at 5) (citing (ECF No. 198 ¶¶ 33–35)).

What Consolidated Plaintiffs do not argue, however, is that the Amended Complaint alleged that Defendant Hadley in fact accessed the cameras in Minita's Home. Indeed, the

Amended Complaint acknowledges that he "became enraged," because the passwords Demoree Hadley provided to him apparently did not work. (ECF No. 198 ¶ 33). Indeed, Plaintiff Perez intimated to Demoree that Minita's Home's security system was accessible by its own, distinct login credentials, and that Demoree therefore could not have shared access thereto. (*Id.* ¶ 36). While the CFAA expressly prohibits attempted violations, *see* 18 U.S.C. § 1030(b) ("Whoever conspires to commit or attempts to commit an offense under subsection (a) of this section shall be punished as provided in subsection (c) of this section."),[1] Count I plainly travels on a theory of *access*, not attempt. (ECF No. 198 ¶¶ 114–16) (alleging knowing and intentional access). As does Count II. (*Id.* ¶¶ 123–24) (same). Rendering a plausible claim requires that Consolidated Plaintiffs allege facts giving rise to a reasonable inference that Defendant Hadley accessed the surveillance cameras in Minita's Home. To the extent Counts I and II are predicated on Hadley's access of devices at Minita's Home, the Amended Complaint fails to allege facts that plausibly support that cause of action.

### 4.      Authorization

Counts I and II primarily allege CFAA and SCA violations occurring at the Family Home, not at Minita's Home. Defendant argues that Counts I and II must be dismissed because the Amended Complaint fails to show that Hadley "was not authorized to access . . . the Family Home's audio and video surveillance systems." (ECF No. 227 at 13). "In order to plead a CFAA violation, the [complaint] must allege facts that would create a plausible claim that the Defendants' actions were not properly authorized." *Sargeant*, 2018 WL 3031841, at *8. Defendant Hadley states that the Amended Complaint acknowledges "that Demoree asked for the system to be installed . . . and had unfettered access to the cameras," and argues that given Demoree's "close

---

[1] It is unclear, and unbriefed, whether the CFAA confers a private right of action to sue for attempted violations.

relationship and shared physical space" with Defendant Hadley, "it was entirely foreseeable—if not expected—that Demoree might share camera access or footage with Javon." (ECF No. 227 at 14). Defendant Hadley adds that the Amended Complaint is deficient because (a) it "is silent as to whether [Plaintiffs] ever directly instructed Demoree not to share the camera access or footage with Javon," and (b) Plaintiffs otherwise "fail to allege any restrictions, warnings, or limitations placed on Demoree's access, nor any conditions barring her from sharing footage with household members." (*Id.*) (concluding that, "[a]ssuming arguendo that Javon looked at the footage, he did not violate the CFAA or SCA because, according to the complaint, Demoree gave him access").

Consolidated Plaintiffs respond that Hadley's argument as to authorization is not properly addressed in a Motion to Dismiss. (ECF No. 233 at 6) ("Authorization . . . is a *factual* matter that is not appropriate to be decided on a motion to dismiss in a case like this where the FAC asserts facts establishing that the Defendant lacked authorization.") (citing *Ecometry Corp. v. Profit Ctr. Software, Inc.*, No. 06-80083-CIV, 2006 WL 8435441, at *2 (S.D. Fla. Jul. 13, 2006) ("[T]he question of whether [the defendant] accessed [the plaintiff's] computers without authorization or in excess of authorized access is a factual determination not appropriate for resolution on a motion to dismiss")). Indeed, anticipating the issue, Defendant Hadley advanced in his Motion to Dismiss a number of cases disposing of CFAA and SCA claims, some at the pleading stage. *See* (ECF No. 227 at 15) (citing *Sargeant*, 2018 WL 3031841, at *7; *Abu v. Dickson*, 107 F.4th 508, 517 (6th Cir. 2024)) (additional citations omitted). Consolidated Plaintiffs respond that *Sargeant* is distinguishable in that dismissal of the plaintiff's CFAA claim there was predicated on the plaintiff's failure to address "who had dominion or control over the server at issue" or "the existence of a third party" with authority to permit the defendants' access. (ECF No. 233 at 7) (citation omitted). Indeed, Consolidated Plaintiffs maintain that their pleading is in lockstep with

13

*Sargeant*'s guidance. *See* 2018 WL 3031841, at *8 (identifying, as "one way" to allege unauthorized access, that a plaintiff "identify the universe of people who properly could authorize access, then plead facts demonstrating that none granted authorization to the Defendants").

Defendant Hadley argues that "[s]everal courts have granted dismissal or summary judgment based on a plaintiff's failure to present sufficient facts to prove *unauthorized* access to data," (ECF No. 227 at 15), but primarily advances cases decided at the summary judgment stage. *E.g.*, *Abu*, 107 F.4th at 517; *Sartori v. Schrodt*, 424 F. Supp. 3d 1121, 1135 (N.D. Fla. 2019); *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1137 (9th Cir. 2009). The Sixth Circuit's decision in *Royal Truck & Trailer Sales & Serv., Inc. v. Kraft* is distinguishable from the present case because, in *Royal Truck*, the plaintiff conceded that the defendants had authorization to access company information through their company email accounts; the plaintiff's claim was that the defendants exceeded their authorized access by misusing information they were authorized to access. *See* 974 F.3d 756, 759–60 (6th Cir. 2020).  This, the Amended Complaint does not do: the Amended Complaint clearly alleges that Defendant Hadley's access was not authorized at any point. *See, e.g.*, (ECF No. 198 ¶¶ 28, 29); (*id.* ¶¶ 114, 122).

In the absence of such a concession, Defendant Hadley's assertions of apparent or implied authorization raise questions of fact ill-suited for resolution on a motion to dismiss. The issues in resolving this concededly fact-driven dispute at the pleading stage, *see* (ECF No. 233 at 8), should be plain. *See Cavic v. Grand Bahama Dev. Co., Ltd.*, 701 F.2d 879, 887 n.4 (11th Cir. 1983) (applying Florida law) ("The fact of agency, and the boundaries of an agent's authority are determinable as questions of fact by the jury, as is the issue of apparent authority.") (internal citations omitted); *US Iron FLA, LLC v. GMA Garnett (USA) Corp.*, 660 F. Supp. 3d 1212, 1221 (N.D. Fla. 2023) (granting, in part, a plaintiff's motion for partial summary judgment).

Moreover, Consolidated Plaintiffs argue that, even assuming Demoree Hadley possessed actual or apparent authority to share access, the Amended Complaint's factual allegations, taken as true, undermine Defendant Hadley's position that his procural of access from Demoree Hadley was valid. (ECF No. 233 at 8) (maintaining that "[t]he [Amended Complaint] pleads that only through coercion did Hadley gain 'unauthorized access' from [Demoree Hadley,] 'utilizing threats of physical abuse, intimidation, and abandonment'" to force Demoree into sharing access with Defendant Hadley). (*Id.*) (citing (ECF No. 198 ¶ 34)). Plaintiffs argue that the Amended Complaint "repeatedly alleges that Plaintiff Perez owned and controlled the security systems; that [Demoree Hadley] was not authorized to provide access to Defendant; and that Defendant was not authorized to access the systems, let alone stalk and surveil Plaintiffs." (ECF No. 233 at 7) (citing (ECF No. 198 ¶¶ 28, 40, 113–114)). For instance, Consolidated Plaintiffs explicitly allege that Demoree Hadley was "at no point . . . authorized to use or share passwords, transmit, or share video or audio footage, nor was she authorized to grant access to anyone else." (*Id.* ¶ 28). The Amended Complaint further alleges circumstantial factual matter supporting a reasonable inference that Defendant Hadley knew he lacked authorization—for example, the Amended Complaint alleges that Defendant Hadley sought to obtain access via coercion.[2] (*Id.* ¶ 34). In the Court's present posture, taking Consolidated Plaintiffs' well-pleaded factual allegations as true and construing factual ambiguities in the light most favorable to them, the Court can reasonably infer that Defendant Hadley lacked authorization to access the security cameras in the Family Home. Accordingly, the undersigned recommends that Defendant Hadley's Motion to Dismiss be denied as to Counts I and II of the Amended Complaint.

---

[2] The undersigned expresses no opinion on the tenability of a Consolidated Plaintiffs' apparent claim that coercion vitiates an otherwise authorized exchange. The issue has not been squarely briefed and is not central to the present Motion.

### B.       Defendant Hadley's Challenge to Counts III, IV, and V

Defendant Hadley argues that Counts III through V of the Amended Complaint "must be dismissed because Plaintiffs lacked a reasonable expectation of privacy in the Family Home." (ECF No. 227 at 15). Counts III, IV, and V assert violations of the Federal Wiretap Act, 18 U.S.C. § 2511, Florida's Stored Communications Act, Fla. Stat. § 934.03, and Invasion of Privacy via Intrusion Upon Seclusion under Florida common law. Defendant Hadley's argument for dismissal of Counts III through V proceeds primarily under the FWA but attacks the three factually similar Counts together. The Motion to Dismiss further argues that dismissal is warranted because Consolidated Plaintiffs consented to any of the above violations through implied consent. (ECF No. 227 at 16) (citations omitted).

### 1.       The Federal Wiretap Act, 18 U.S.C. § 2511

The Federal Wiretap Act creates a private cause of action against a person who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(a); 18 U.S.C. § 2520(a) ("[A]ny person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person . . . which engaged in that violation such relief as may be appropriate."). The Wiretap Act defines the term "intercept" as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4). To state a claim under the Wiretap Act, a plaintiff must show that the defendant "(1) intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication (5) using a device."

*Hadley*, 2025 WL 2851643, at *17 (cleaned up) (quoting *Schwartz v. ADP, Inc.*, No. 21-CV-283, 2021 WL 3172029, at *3 (M.D. Fla. Jul. 26, 2021)).

Under 18 U.S.C. § 2511(2)(d), "[i]t shall not be unlawful . . . for a person not acting under color of law to intercept a[n] electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception[.]" *See W.W. v. Orlando Health, Inc.*, No. 24-cv-1068, 2025 WL 722892, at *6 (M.D. Fla. Mar. 6, 2025) (citing *Ramos v. Delphi Behav. Health Grp., LLC*, No. 21-11218, 2022 WL 1415856, at *1 (11th Cir. May 4, 2022) ("[I]t is lawful for an individual to intercept a communication if he is a party to it.")).

### 2. The Florida Security of Communications Act, Fla. Stat. § 934.03

The Florida Security of Communications Act ("FSCA") is modeled after and in substance tracks the Federal Wiretap Act. *O'Brien v. O'Brien*, 899 So. 2d 1133, 1135–36 (Fla. 5th DCA 2005). The FSCA creates civil liability for anyone who "intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept any wire, oral, or electronic communication." *Goldstein v. Luxottica of Am., Inc.*, No. 21-80546-CIV, 2021 WL 4093295, at *1 (S.D. Fla. Aug. 23, 2021) (quoting Fla. Stat. § 934 .03(1)(a)). "No liability exists unless there is a reasonable expectation of privacy in the underlying communication." *Goldstein*, 2021 WL 4093295, at *2 (citing *Ford v. City of Boynton Beach*, 4D19-3664, 2021 WL 3376966, at *3 (Fla. 4th DCA Aug. 4, 2021)); *but see Langlois v. State*, 392 So. 3d 599, 600–01 (Kilbane, J., concurring) (arguing that certain categories of communications may not be qualified by "reasonable expectation of privacy" language) (internal citations omitted). "[A]ll three defined communications remain subject to the consent requirement." *Langlois*, 392 So. 3d at 601 (citing Fla. Stat., § 934.03(2)(d) ("It is lawful . . . for a person to intercept a wire, oral, or electronic

17

communication when all of the parties to the communication have given prior consent to such interception.")).

### 3. Intrusion Upon Seclusion

Florida recognizes four theories of recovery under a common law invasion of privacy claim: (1) publication of private facts; (2) intrusion upon seclusion; (3) placing facts in a false light; and (4) appropriation. *Napier v. Fowler*, No. 09-60684-CIV, 2009 WL 10699620, at *10 (S.D. Fla. Dec. 1, 2009) (citing *Guin v. City of Riviera Beach*, 388 So. 2d 604 (Fla. 4th DCA 1980)); *see also Hammer v. Sorensen*, 824 F. App'x 689, 695 (11th Cir. 2020).  Florida District Courts of Appeal have relied upon the Second Restatement of Torts's definition of intrusion upon seclusion in analyzing that theory of recovery. *See Hammer*, 824 F. App'x at 695 (citations omitted). Per the Restatement, "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." Restatement (Second) of Torts § 652B (1977). Florida law construes the phrase "highly offensive to a reasonable person" as equivalent to the "outrageousness" standard under Florida's tort of intentional infliction of emotional distress. *See Stoddard v. Wohlfahrt*, 573 So. 2d 1060, 1062 (Fla. 5th DCA 1991). A plaintiff pursuing a claim of intrusion upon seclusion must "show an intrusion into a private place and not merely a private activity." *Hammer*, 824 F. App'x at 695 (citing *Allstate Ins. Co. v. Ginsberg*, 863 So. 2d 156, 161 n.3, 162 (Fla. 2003)).

The Amended Complaint alleges that "Hadley used [Plaintiff Perez's] security systems to terrorize and monitor D.H., Desiree, and other family members, including, but not limited to, eavesdropping on private conversations, tracking their whereabouts, and observing Desiree during her visits to her father." (ECF No. 198 ¶ 31). The Amended Complaint sets forth an exchange

18

between Defendant Hadley and his mother in April 2024, after Defendant Hadley had been arrested for the September 11, 2023 incident, in which Hadley intimated that Plaintiff Perez would need to "settle quick," before unspecified information was made public. (*Id.* at 47 ¶ 106). The Amended Complaint alleges that Defendant Hadley intended to extort Plaintiff Perez into a settlement payout, including through a "defamatory social media smear campaign." (*Id.* ¶ 108). Finally, the Amended Complaint alleges that on or about July 30, 2023, "the security system in the Family Home was improperly accessed and Desiree was . . . recorded having a private conversation with her stepsister," which was later "uploaded to the internet." (*Id.* ¶ 109). Consolidated Plaintiffs allege on information and belief that it was Defendant Hadley who "obtained this video, stored this video, and assisted in the video being uploaded to the internet[.]" (*Id.*).

### i.        *Reasonable Expectation of Privacy*

Defendant Hadley's first argument runs as follows. For one's communications to be protected from interception, one "must have exhibited an actual expectation of privacy," and "the expectation must be one that society is prepared to recognize as 'reasonable.'" (ECF No. 227 at 15–16) (citing *Katz v. United States*, 389 U.S. 347, 361 (1967); *United States v. McKinnon*, 985 F.2d 525, 527 (11th Cir. 1993)). Consolidated Plaintiffs did not exhibit an expectation of privacy in their unspecified communications because cameras "were knowingly installed, visible, and functional at all relevant times" in the Family Home's common areas. (ECF No. 227 at 16) ("Plaintiffs' knowledge of and acquiescence to this surveillance—combined with their voluntary presence and conduct in these monitored spaces—constitutes a lack of privacy expectation."). As Defendant Hadley sees it, Plaintiffs needed to allege "steps [they] took to prevent the security system from capturing their movements or conversations" for a reasonable expectation of privacy to have arisen. (*Id.*).

Consolidated Plaintiffs respond that a reasonable expectation of privacy existed in the communications allegedly intercepted because, at the time of interception, "Plaintiffs were inside a private residence, discussing personal matters and had no idea Defendant was intercepting and listening to their conversations and tracking their movements." (ECF No. 233 at 10). Plaintiffs emphasize that the communications were made at the Family Home because the home "is the quintessential private space where privacy expectations are at their zenith." (*Id.* at 9).

Whether a reasonable expectation of privacy exists under a given set of circumstances depends upon one's subjective expectation of privacy as well as whether society is prepared to recognize this expectation as reasonable. *United States v. McKinnon*, 954 F.2d 525, 527 (11th Cir. 1993); *State v. Inciarrano*, 473 So. 2d 1272, 1275 (Fla. 1985) (citation omitted). "The State's interest in protecting the well-being, tranquility, and privacy of the home is certainly of the highest order in a free and civilized society." *Hentz v. State*, 62 So. 3d 1184, 1191–92 (Fla. 4th DCA 2011) (finding that oral communication's being made in a citizen's home "justif[ies] an expectation that such communication is not subject to interception") (quoting *Carey v. Brown*, 447 U.S. 455, 471 (1980)). All else being equal, it is well-settled that a reasonable expectation of privacy exists within the curtilage of a residence. *See Jackman v. Cebrink-Swartz*, 334 So. 3d 653, 657 (Fla. 2nd DCA 2021) (noting that "there is a reasonable expectation of privacy within the curtilage of a residence"); *see also id.* (finding trial court erred in denying motion for preliminary injunction in intrusion upon seclusion case where neighbor "erect[ed] a camera to see over [plaintiff homeowners'] privacy fence to [] surveil and record" activities in plaintiff's backyard), *rev. denied*, No. SC21-913, 2021 WL 4340567 (Fla. 2021).

I find the Second District Court of Appeals' decision in *Jackman* instructive in my analysis of Count V of the Amended Complaint. There, as here, an intrusion upon seclusion claim arose

20

from the unauthorized surveillance of privately owned residential property. *See id.* (collecting cases); (ECF No. 198 ¶¶ 31, 109, 142). In *Jackman*, the plaintiffs manifested a reasonable subjective expectation of privacy in their backyard by erecting privacy fences; here, Consolidated Plaintiffs allege that Defendant Hadley knew he was not authorized to access the security cameras in the Family Home, (ECF No. 198 ¶ 29). Defendant's Motion, to the extent it is predicated on the argument that Plaintiffs failed to plead a reasonable expectation of privacy in the Family Home, should be denied.

Defendant Hadley maintains that "Plaintiffs do not dispute that they knew cameras were in the common areas . . . . they were knowingly installed, visible, and functional at all relevant times." (*Id.*). From this undisputed fact, the Motion reasons that "Plaintiffs' knowledge of and acquiescence to this surveillance—combined with their voluntary presence and conduct in these monitored spaces—constitutes a lack of privacy expectation." (*Id.*). The Motion advances no authority in support of this proposition, and the undersigned recommends that the Court reject the Motion's argument, with regard to Counts III–V, on that basis. The Court has already impressed upon the Parties that "a litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point." *See Hadley*, 2025 WL 2851643, at *25 n.13 (quoting *Melford v. Kahane & Assocs.*, 371 F. Supp. 3d 1116, 1126 n.4 (S.D. Fla. 2019)) (internal quotations and citation omitted); *Starks v. City of Miami Gardens*, No. 23-cv-23851, 2024 WL 2721883, at *4 (S.D. Fla. May 28, 2024) (Bloom, J.) (same).

ii.     Consent

Defendant Hadley also argues that Consolidated Plaintiffs consented to Hadley's listening to their conversations inside the Family Home. (ECF No. 227 at 16). Per the Motion to Dismiss,

"obtaining *express consent* to record a conversation is only one method to obtain proper consent . . . . [U]nder the wiretapping statute, consent may be *implied* from the circumstances surrounding a communication or interaction." (*Id.*) (citations omitted). Defendant Hadley argues that Demoree Hadley consented to his accessing the security cameras, even if Consolidated Plaintiffs did not give such consent.

Consolidated Plaintiffs respond that Hadley's consent-based argument "inappropriately raises disputed factual matters—e.g., [Hadley] claims that he had indirect authorization while the [Amended Complaint] unequivocally asserts he obtained his unauthorized access through [coercion]." (ECF No. 233 at 10). Plaintiffs further argue that the consent defense, at most, relates only to Count III under the Federal Wiretap Act, (*id.* at 10–11); the FWA permits "one-party consent," whereas the FSCA requires that consent, express or implied, come from every party to an intercepted conversation. *See Ramos*, 2022 WL 1415856, at *1 ("One key difference between the federal and Florida acts is that, under Florida law, the prior consent of all parties is required for the recording to be legal."); Fla. Stat. § 934.03(2)(d); *State v. Tsavaris*, 394 So. 2d 418, 423 (Fla. 1981). *Cf.* (ECF No. 198 ¶ 28).

Plaintiffs are correct that Defendant Hadley's consent-based argument poses questions of fact not properly resolved by the Court at the Motion to Dismiss stage. *See Bacinello v. Admiral Marine Surveyors LLC*, 338 So. 3d 326, 330 (Fla. 3rd DCA 2022) (holding that whether parties consented to the surreptitious recording of their telephone communications presented an issue of fact). Under the Federal Wiretap Act, it is likewise "the task of the trier of fact to determine the scope of the consent and to decide whether and to what extend [an] interception exceeded that consent." *Stalley v. ADS All. Data Sys., Inc.*, 296 F.R.D. 670, 685 (M.D. Fla. Nov. 25, 2013) (quoting *Watkins v. L.M. Berry & Co.*, 704 F.2d 577, 582 (11th Cir. 1983)); *see also Watkins*, 704

22

F.2d at 582 ("Consent under [the FWA] is not to be cavalierly implied."); *United States v. Mitchell*, No. 11-cr-248, 2013 WL 3808152, at *11 n.15 (M.D. Fla. Jul. 22, 2013) (observing on distinguishable facts that, in *Watkins*, "the Eleventh Circuit cautioned against routinely implying consent to interception from the surrounding circumstances for purposes of the Wiretap Act. Title III expresses a strong purpose to protect individual privacy by strictly limiting the occasions on which interception may lawfully take place.") (citation omitted).

Defendant Hadley's one-party consent argument is contingent on a finding that Demoree Hadley consented to her husband's accessing the security cameras at the Family Home and using them to listen in on private conversations and monitor Demoree's and the other Family Home residents' movements. *See* (ECF No. 198 ¶¶ 31, 109). Defendant Hadley's consent argument under the FSCA is even more demanding: he must make a fact-based showing that Demoree *and* the Consolidated Plaintiffs consented to his alleged surveillance of them. Fla. Stat. § 934.03(2)(d); *see Bacinello*, 338 So. 3d at 330. As discussed above in reference to Counts I and II, both the validity of Demoree Hadley's authority to furnish Defendant Hadley with such access and permit such use, and the permissible scope of any consent validly given, present issues of fact improperly reserved at this early stage of the litigation. *See Boswell v. Fisher*, No. 05-80781-CIV, 2006 WL 8433669, at *7 (S.D. Fla. Apr. 24, 2006) (citing *In re Pharmatrak Inc.*, 329 F.3d 9 (1st Cir. 2003)). Under the circumstances present here, and in the Court's current posture, the undersigned recommends that Defendant Hadley's consent-based argument be rejected, and that the Motion to Dismiss be denied as to Counts III and IV of the Amended Complaint.

### C.      Defendant Hadley's Challenge to Count VI

"[T]he law of private nuisance is bottomed on the fundamental rule that every person should so use his own property as not to injure that of another . . . and that 'Anything which annoys

or disturbs one in the free use, possession, or enjoyment of his property, or which renders its ordinary use or occupation physically uncomfortable, is a 'nuisance' and may be restrained.'" *Baum v. Coronado Condo. Ass'n, Inc.*, 376 So. 2d 914, 915–16 (Fla. 3rd DCA 1979) (quoting *Jones v. Trawick*, 75 So. 2d 785, 787 (Fla. 1954)). "Mere disturbance and annoyance as such do not in themselves necessarily give rise to an invasion of a legal right." *Salcedo v. Hanna*, 936 F.3d 1162, 1171 (11th Cir. 2019) (quoting *A & P Food Stores, Inc. v. Kornstein*, 121 So. 2d 701, 703 (Fla. 3rd DCA 1960)); *but see Shaw v. Calles*, 412 So. 3d 152, 154 (Fla. 3rd DCA 2025) (citing *Exxon Corp., U.S.A. v. Dunn*, 474 So. 2d 1269, 1274 (Fla. 1st DCA 1985) (noting that a plaintiff may recover damages "not only for physical injuries but also for annoyance, discomfort, and inconvenience")). Yet, "mere noise may be so great at certain times and under certain circumstances as to amount to an actionable nuisance and entitle the party subjected to it to the preventative remedy of the court of equity[.]" *Bartlett v. Moats*, 160 So. 477, 479 (1935) (quoting *Gilbough v. W. Side Amusement Co.*, 64 N. J. Eq. 27, 28 (1902)).

The Amended Complaint alleges that Defendant Hadley effected a private nuisance in the Family Home by consistently "terrorizing" Consolidated Plaintiffs through his abuse of Demoree Hadley. *See, e.g.*, (ECF No. 198 ¶ 46–48). The Amended Complaint further alleges that "[f]amily members regularly overheard verbal tirades and witnessed Hadley denying [Demoree] entry into their shared bedroom as a form of punishment." (*Id.* ¶ 52). Consolidated Plaintiffs claim they suffered "overwhelming" distress, fear, and anxiety as a result of witnessing Defendant's conduct and worrying for Demoree Hadley's welfare. (*Id.* ¶¶ 93–100).

Defendant Hadley argues that the Amended Complaint's claim of Private Nuisance under Florida law must fail because, while "[n]oise can obviously be a nuisance in certain circumstances," "no Florida case has ever found that an argument between a husband and wife (or

24

relatives) creates a private nuisance to other individuals living in the *same home*." (ECF No. 227 at 18) (emphasis in original) (adding that, "[i]f that were the case, every home in America, at some point in time, would be considered a private nuisance"). Defendant Hadley further argues that Plaintiff Perez was not physically present for the alleged incidents between Defendant Hadley and Demoree and therefore cannot proceed under a claim of private nuisance. (*Id.*) ("Watching a video or hearing about a yelling match from New York City is insufficient to bring a [private nuisance] claim.").

Consolidated Plaintiffs respond that the Amended Complaint adequately pleads that Defendant Hadley effected "an unreasonable interference with the use and enjoyment of land," by alleging facts that Hadley "had constant 'angry outbursts,'" "continuously physically and verbally abus[ed]" Demoree Hadley in Consolidated Plaintiffs' presence, and on at least two occasions screamed at Consolidated Plaintiffs Zayas, Gonzalez, and Perez. (ECF No. 233 at 13–14) (citing (ECF No. 198 ¶¶ 43, 46–47)); *see Nitram Chems., Inc. v. Parker*, 200 So. 2d 220, 231 (Fla. 2nd DCA 1979). Consolidated Plaintiffs advance the case of *Baum v. Coronado Condominium Association*, 376 So. 2d 914 (Fla. 3rd DCA 1979), to support the proposition that communal residents of the same facility can assert claims for private nuisance against each other. (*Id.* at 13). There, owners of a unit in a 25-story apartment building brought suit to enjoin noises emanating from an uninsulated terrazzo corridor with the lobby above their apartment unit. *Baum*, 376 So. 2d at 916–17. Plaintiffs further rely on *Baum* to counter Defendant Hadley's assertion that noise, in a domestic setting, does not a nuisance make. (ECF No. 233 at 13).

*Baum* rests on a distinguishable set of facts to those present here. The nuisance claim in *Baum* was tethered to the defendant condominium's duties to the unit owners, Florida's law of constructive eviction, and the defendant's promise that "the lobby floor would be soundproofed[.]"

*See Baum*, 376 So. 2d at 916–19 (finding, "that the noise was real, and sufficient to have such effect on a reasonable person, was recognized by the developer and by the condominium association, as evidenced by their actions for alleviation of the problem"). More importantly, *Baum* involved two cohabitants bringing a nuisance suit predicated on an extrinsic interference with the use and enjoyment of their condominium unit. Here, by contrast, the Amended Complaint asserts private nuisance arising from a purely domestic setting. *See, e.g.*, (ECF No. 198 ¶¶ 41–46). In other words, as Defendant Hadley argues, the present case contemplates a nuisance by one member of a household against his cohabitants. Consolidated Plaintiffs have not advanced a case supporting the proposition that cohabitants of a single home can assert claims for private nuisance against each other. *See* (ECF No. 198 ¶¶ 4, 154) (alleging that Hadley engaged in conduct constituting a private nuisance while residing in the Family Home).

Consolidated Plaintiffs are right that private nuisance claims predicated on noise are permitted in certain circumstances, and Defendant Hadley does not argue otherwise. *See Baum*, 376 So. 2d at 916 (citing *Bartlett*, 160 So. at 479). However, Defendant Hadley's argument that a purely or primarily intra-household course of conduct does not give rise to a nuisance claim as between that household's constituent members is persuasive. *Cf. Burnett v. Rushton*, 52 So. 2d 645, 646 (Fla. 1951) (upholding imposition of injunction and award of damages in case arising from *inter*-household nuisance consisting of unreasonable noise and verbal abuse). Accordingly, the undersigned recommends that the Motion to Dismiss be granted with respect to Count VI of the Amended Complaint.

### D.    Defendant Hadley's Challenge to Count VII

To sufficiently plead a claim for intentional infliction of emotional distress ("IIED"), Consolidated Plaintiff must allege that "(1) the defendant's conduct was intentional or reckless;

26

(2) the conduct was outrageous, beyond all bounds of decency, and odious and utterly intolerable in a civilized community; (3) the conducted caused emotional distress; and (4) the emotional distress was severe." *Cooper v. Empower U, Inc.*, 603 F. Supp. 3d 1317, 1321 (S.D. Fla. 2022) (quoting *Moore v. Pederson*, 806 F.3d 1036, 1053 (11th Cir. 2015)). Under Florida law, whether conduct is "outrageous" for purposes of an IIED claim presents a question of law for the Court to decide. *Id.* (quotations and citations omitted).

Defendant Hadley argues that Consolidated Plaintiffs' claim of Intentional Infliction of Emotional Distress must fail because "Florida law does not allow individuals to bring IIED claims for conduct directed toward someone else." (ECF No. 227 at 18–19) (citing *Habelow v. Travelers Ins. Co.*, 389 So.2d 218, 220 (Fla. 5th DCA 1980) (noting that, "[i]n all cases we have found in Florida recognizing the tort of [IIED], the Plaintiff was the recipient of insult or abuse[.]")) (additional citation omitted). Defendant Hadley acknowledges "immediate family members who are present during outrageous conduct" may bring IIED claims," *see* (*id.* at 19) (citing *M.M. v. M.P.S.*, 556 So. 2d 1140, 1141 (Fla. 3d DCA 1989)); as distinguished from immediate family members who are *not* present to witness the conduct—those family members cannot bring IIED claims. Thus, Hadley argues, Consolidated Plaintiff Perez may not bring an IIED claim, because she was not present during the incidents alleged to form the basis for Count VII; and the remainder of the Consolidated Plaintiffs are barred from bringing an IIED claim because they are not Demoree Hadley's immediate family.

Consolidated Plaintiffs frame almost the entirety of the Amended Complaint's factual narrative as contributing to an IIED claim. (ECF No. 198 ¶¶ 162–66); (ECF No. 233 at 15–17). State court precedent distinguishes between IIED claims predicated on emotional distress caused (a) as a result of conduct directed at another, on the one hand, and (b) as a result of conduct targeted

27

at the claimant, on the other. The analysis below evaluates the sufficiency of Consolidated Plaintiffs' allegations in turn, according to the category under which their IIED allegations fall.

> i.   *Allegations Premised on Emotional Distress to Consolidated Plaintiffs, Caused by Defendant Hadley's Treatment of Demoree Hadley*

Insofar as Consolidated Plaintiffs' claim is predicated on emotional distress caused by Defendant Hadley's treatment of Demoree Hadley, the analysis begins as follows. Under Florida law, "in order to state a claim for IIED based on [one's] own emotional distress, a plaintiff must be present when the alleged extreme and outrageous conduct[] is directed toward a third party." *Johns Hopkins All Child's Hosp., Inc. v. Kowalski*, No. 2D2024-0382, ___ So. 3d ___, 2025 WL 3019111, at *12 (Fla. 2nd DCA Oct. 29, 2025) (quoting *Buchanan v. Miami-Dade Cnty.*, 400 So. 3d 684, 686 (Fla. 3d DCA 2024)); *id.* (citing *M.M. v. M.P.S.*, 556 So. 2d 1140, 1141 (Fla. 3d DCA 1989) (quotation omitted). The Amended Complaint seeks relief under a theory of IIED for emotional distress suffered by Consolidated Plaintiffs themselves, in substantial part, as a consequence of Defendant Hadley's alleged verbal and physical abuse of Demoree Hadley. (ECF No. 198 ¶¶ 165–66).

The Amended Complaint acknowledges that Plaintiff Perez was not present to witness Defendant Hadley's alleged abusive conduct towards Demoree Hadley in person. (*Id.* ¶¶ 31, 45, 80, 93). Accordingly, under Florida law, and taking the Amended Complaint's allegations as true, Plaintiff Perez may not pursue an IIED claim for emotional distress predicated upon Defendant Hadley's alleged abuse of Demoree Hadley. *See Kowalski*, 2025 WL 3019111, at *12; *M.M.*, 556 So. 2d at 1140–41 (dismissing IIED claim where plaintiffs-appellants "were not present when the alleged mistreatment of their daughter took place," and therefore "[could] not claim emotional distress for her injurious or offensive treatment") (citations omitted).

28

Against this conclusion, Consolidated Plaintiffs raise *Mount v. Pulte Home Co., LLC*. (ECF No. 233 at 16); *See* No. 20-cv-2314, 2021 WL 2942655, at *3–4 & n.8 (M.D. Fla. May 25, 2021). There, the district court distinguished state authority advanced for the proposition that plaintiffs could not recover on a claim of IIED because they were not physically present at the scene of "[their] loved ones' dead bodies desecrated by floodwaters and floating up out of their burial grounds[.]" *Mount*, 2021 WL 2942655, at *4. Consolidated Plaintiffs interpret *Mount* to hold that a plaintiff need not be physically present at the scene where "the sensitive nature of the facts alleged" vitiates the general rule. The district court's holding in *Count*, however, was expressly premised upon its finding that "situations involving dead bodies" merit exceptional treatment. *Id.*, at *4; *see also id.*, at *4 n.8 ("Defendants' cases are inapplicable because they did not involve the intentional disturbance of dead bodies as alleged here."). While the well-pleaded allegations of the Amended Complaint indeed set forth a harrowing series of events, the undersigned is not persuaded that this case is so akin to *Count* that a departure from Florida courts' well-settled general rule is warranted.

The remaining Consolidated Plaintiffs are barred from bringing claims of IIED predicated on their having witnessed Defendant Hadley's alleged abuse of Demoree Hadley because they are not immediate family members of Demoree. In *M.M. v. M.P.S.*, the Third District Court of Appeals adopted the Restatement (Second) of Torts' limitation that a defendant "is subject to liability if he intentionally or recklessly causes severe emotional distress *to a member of such person's immediate family* who is present at the time." 556 So. 2d at 1140–41 (quotation omitted). Aside from Plaintiff Perez, Consolidated Plaintiffs are not members of Demoree Hadley's immediate family. Olga Zayas is the longtime significant other of Demoree's grandfather, Epifanio Julio Gonzalez; Miladys Garcia Gonzalez is the cousin of and caregiver for Demoree's grandfather; and

29

Denisse Milagros Gonzalez Escribano is Demoree's first cousin once removed. (ECF No. 198 ¶ 3). Under Florida law, these Consolidated Plaintiffs may not pursue an IIED claim predicated on Javon Hadley's alleged abuse of Demoree Hadley. *M.M.*, 556 So. 2d at 1140–41.

Accordingly, the undersigned recommends that Defendant Hadley's Motion to Dismiss be granted to the extent it seeks dismissal of so much of Count VII claim as arises from emotional distress suffered by Consolidated Plaintiffs as a consequence of witnessing Defendant Hadley's alleged abuse of Demoree Hadley.

### ii. Allegations Premised on Emotional Distress Targeted at Consolidated Plaintiffs Themselves

"[I]f the plaintiff is not present to witness the outrageous conduct, the plaintiff must have been the target of the outrageous conduct." *Kowalski*, 2025 WL 3019111, at *12 (citing *Liberty Mut. Ins. v. Steadman*, 968 So. 2d 592, 595 (Fla. 2d DCA 2007)). Consolidated Plaintiffs, chiefly Plaintiff Perez, allege that they were the targets of certain of Defendant Hadley's acts. (ECF No. 198 ¶¶ 94–98, 108).

However, Plaintiff Perez cannot rely on her allegations of a defamatory social media smear campaign, though alleged to be targeted toward her, to state an IIED claim. "[A] plaintiff cannot transform a defamation action into a claim for intentional infliction of emotional distress simply by characterizing the alleged defamatory statements as 'outrageous.'" *Fridovich v. Fridovich*, 598 So. 2d 65, 69–70 (Fla. 1992). The Amended Complaint alleges at length, but does not plead as a Count, Javon Hadley's alleged conspiracy to coordinate with his mother and with third parties to defame Plaintiff Perez. *See* (ECF No. 198 at 44–49 ¶¶ 101–08). By Consolidated Plaintiffs' own allegations, conduct undertaken pursuant to any such conspiracy would sound in a defamation claim, not an IIED claim. *See Fridovich*, 598 So. 2d at 69–70; (ECF No. 198 ¶¶ 108).

Nor may any of the Consolidated Plaintiffs premise an IIED claim on conduct that the Amended Complaint elsewhere pleads as effectuating a tort claim. *See Kowalski*, 2025 WL 3019111, at *13 ("IIED conduct must not be 'violative of any other recognized tort.' That is, the facts upon which it is based must be independent of any other alleged tort.") (quoting *Foshee v. Health Mgmt. Assocs.*, 675 So. 2d 957, 960 (Fla. 5th DCA 1996)); *see also id.* ("Where the conduct alleged to be outrageous is itself a pleaded tort, a claim of IIED cannot lie.") (citing *Boyles v. Mid-Fla. Television Corp.*, 431 So. 2d 627, 636 (Fla. 5th DCA 1983). Indeed, to the extent that Consolidated Plaintiffs, together, assert independent tort claims under Florida law, as they do by pleading Counts V (Intrusion upon Seclusion) and VI (Private Nuisance), they are unable to repackage the allegations from which those claims arise as a standalone IIED claim. *See, e.g.*, (ECF No. 198 ¶¶ 46, 47).

This leaves Plaintiff Perez's assertion that Consolidated Plaintiffs "have [] suffered extreme and severe emotional distress as a result of Hadley's subsequent, extortionate demands for cash payments from Desiree, payments he is trying mercilessly to extract by leveraging the pain and suffering he has already caused." (*Id.* ¶ 165). Like with the Amended Complaint's allegations of "defamatory social media campaigns," referenced in the same Paragraph of Count VII, *see* (*id.*), the Amended Complaint does not assert a standalone Count of extortion. Whether a tort claim could be levied for the alleged extortion or not, Count VII only conclusorily states that Defendant Hadley's alleged extortion effected emotional distress on Consolidated Plaintiffs. To state a claim for IIED, a plaintiff must allege, among other things, that "the plaintiff suffered severe emotional distress" as a result of the conduct complained of. *Gomez v. Wells Fargo Bank*, No. 13-23420-CIV, 2014 WL 11878882, at *4 (S.D. Fla. Jan. 7, 2014). Here, while Consolidated Plaintiffs claim that the alleged extortion scheme caused them emotional distress, they "fail[] to allege

factual details about how Defendant's conduct caused her emotional distress." *Kaufman v. Pfizer Pharms., Inc.*, No. 02–CV–22692, 2010 WL 9438673, at *8 (S.D. Fla. Nov. 23, 2010) (Ungaro, J.) (concluding, where the plaintiff argued but provided no factual detail supporting "substantive elements of her IIED claim," including factual allegations of causation, that "Plaintiff's IIED claim is substantively insufficient, and the Court will dismiss it"). Count VII of Consolidated Plaintiffs' Amended Complaint is accordingly due to be dismissed.

## V.      RECOMMENDATIONS

For the foregoing reasons, the undersigned respectfully **RECOMMENDS** that Defendant Javon Hadley's Motion to Dismiss, (ECF No. 227), be **GRANTED, in part,** and **DENIED, in part**. Specifically, the Motion should be **GRANTED,** with respect to Counts VI and VII of the Amended Complaint, (ECF No. 198), and **DENIED,** with respect to Counts I–V of the same. Because the undersigned concludes that amendment of Counts VI and VII would be futile in view of the analysis set forth above, the undersigned recommends that those Counts be **DISMISSED, with prejudice**. *See Sibley v. Lando*, 437 F.3d 1067, 1073 (11th Cir. 2005) (citation omitted); *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1263 (11th Cir. 2004) (citation omitted).

A party shall serve and file written objections, if any, to this Report and Recommendations with the Honorable Beth Bloom, United States District Judge, within **FOURTEEN (14) days** of being served with a copy of this Report and Recommendations. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**RESPECTFULLY  SUBMITTED** in  Chambers,  in  Miami,  Florida  this  6th  day  of

February, 2026.

 

_____

LAUREN F. LOUIS

UNITED STATES MAGISTRATE JUDGE