UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 25-cv-22162-BLOOM/LOUIS
Consolidated Case No. 25-cv-21607-BB

DEMOREE HADLEY,

Plaintiff,

v.

DESIREE PEREZ, et al.,

Defendants.

_____/

**PLAINTIFF DEMOREE HADLEY'S MEMORANDUM REGARDING PRIVILEGE
ISSUES DURING HER DEPOSITION TESTIMONY**

Plaintiff Demoree Hadley respectfully submits this memorandum concerning the limited privilege objections asserted during her May 4, 2026 deposition. The issues are narrow. They concern two categories of questioning: first, whether attorney-client privilege and work-product protection apply to communications and interactions between Ms. Hadley and her counsel during counsel's collection, review, selection, and production of documents; and second, whether those protections apply to communications among Ms. Hadley, her counsel, and consulting experts retained by counsel to assist in preparing this case.

The objections were not intended to block legitimate factual discovery. Counsel repeatedly permitted questioning about the underlying facts, the documents themselves, the photographs themselves, the iCloud accounts at issue, Ms. Hadley's personal knowledge, and what Ms. Hadley knew independent of counsel. The objections arose only when defense counsel's questions shifted from facts to privileged communications, counsel's document-selection process, counsel's litigation strategy, or communications with consulting experts retained by counsel.

I. LEGAL STANDARD

Federal privilege law applies because this case includes federal claims. Fed. R. Evid. 501. The attorney-client privilege protects confidential communications between a client and counsel made for the purpose of obtaining or providing legal advice. Upjohn Co. v. United States, 449 U.S. 383, 389–90 (1981). The privilege protects both legal advice from attorney to client and information from client to attorney that enables counsel to give informed advice. Upjohn, 449 U.S. at 390.

The work-product doctrine separately protects materials prepared in anticipation of litigation by or for a party or its representative, including counsel, consultants, and agents. Fed. R. Civ. P. 26(b)(3)(A). Opinion work product—counsel's mental impressions, legal theories, strategy, and evaluation of evidence—receives heightened protection. Fed. R. Civ. P. 26(b)(3)(B); *Hickman v. Taylor*, 329 U.S. 495, 510–11 (1947); *Upjohn,* 449 U.S. at 399–402. Rule 30(c)(2) permits counsel to instruct a witness not to answer when necessary to preserve a privilege.

Consulting expert discovery is also restricted. Rule 26(b)(4)(D) provides that a party ordinarily may not discover facts known or opinions held by an expert retained or specially employed in anticipation of litigation or to prepare for trial who is not expected to testify. Such discovery is permitted only under Rule 35(b) or upon a showing of exceptional circumstances making it impracticable for the party to obtain facts or opinions on the same subject by other means. Fed. R. Civ. P. 26(b)(4)(D). The work-product doctrine also extends to materials and communications involving nonlawyer agents retained to assist counsel.

II.     DOCUMENT-PRODUCTION     COMMUNICATIONS     AND     COUNSEL'S
SELECTION OF EVIDENCE ARE PROTECTED.

The first category of disputed questioning concerned what Ms. Hadley gave her lawyer, how she gave it to counsel, and what counsel's team considered relevant or supportive of her claims. That questioning implicated attorney-client communications and work product.

For example, defense counsel asked Ms. Hadley: "What else do you have that you've given to your lawyer that proves that your iCloud account has been hacked from 2017 to 2024?" Exhibit A, May 4, 2026 Deposition of Demoree Hadley, 378:19–25. Counsel objected and instructed Ms. Hadley not to answer the portion of the question asking what she "gave" counsel. Counsel also clarified that defense counsel could ask Ms. Hadley what she had, as opposed to what she gave to counsel. Id. That distinction matters. A question asking what evidence exists or what Ms. Hadley personally knows seeks facts. A question asking what she selected, discussed, transmitted, or reviewed with counsel in order to prove a claim risks disclosing counsel's mental impressions, counsel's evaluation of the evidence, and counsel's intended proof.

That same issue arose when defense counsel questioned Ms. Hadley about photographs that had already been produced. Counsel permitted extensive questioning about the photographs themselves. But when defense counsel asked whether Ms. Hadley provided the photographs to counsel physically, electronically, by email, by thumb drive, or in another format, counsel objected. Exhibit A, 459:14–460:13; 461:20–462:23. In isolation, the mechanics of document transmission may appear harmless. In this case, however, the question was not asked in a vacuum. It followed questioning about photographs counsel had produced and intended to use in support of Ms. Hadley's claims. Asking which photographs were physically brought to counsel, discussed during

meetings, placed in folders, or separately handled by counsel risks revealing which documents counsel considered important and how counsel prepared the case.

The law recognizes this concern. The work-product doctrine may protect an attorney's selection and compilation of documents when disclosure would reveal counsel's mental impressions or litigation strategy. In *Sporck v. Peil*, 759 F.2d 312, 316 (3d Cir. 1985), the Third Circuit held that counsel's selection and compilation of documents in preparation for deposition may constitute opinion work product because it can reveal counsel's evaluation of the case, intended lines of proof, and strategy. The doctrine exists to prevent one side from obtaining an unfair roadmap of opposing counsel's thought process.

Plaintiff recognizes that courts in this Circuit have applied the "selection and compilation" doctrine narrowly. See, e.g., *Hunter's Ridge Golf Co. v. Georgia-Pacific Corp.*, 233 F.R.D. 678, 681 (M.D. Fla. 2006); *Jackson v. Geometrica, Inc.*, No. 3:04-cv-640-J-20MCR, 2006 WL 510059, at *2–3 (M.D. Fla. Mar. 2, 2006); *In re Seroquel Prods. Liab. Litig.*, No. 6:06-md-1769-Orl-22DAB, 2008 WL 215707, at *5 (M.D. Fla. Jan. 24, 2008). Under that narrower approach, the party asserting the doctrine should show a real, non-speculative risk that the requested disclosure would reveal counsel's thoughts. *In re Trasylol Prods. Liab. Litig.*, No. 08-MD-1928, 2009 WL 936597, at *4 (S.D. Fla. Apr. 7, 2009).

That standard is satisfied here. Defense counsel did not merely ask whether documents existed. Counsel asked what Ms. Hadley gave her lawyer to prove the iCloud hacking claim, how certain photographs were transmitted to counsel, whether items were provided during meetings, and whether counsel's team had other documents. Those questions, especially in the context of already-produced litigation exhibits, would tend to disclose what counsel considered important,

what counsel had selected for proof, what counsel had discussed with Ms. Hadley, and what evidence counsel intended to emphasize.

The objection was therefore proper. Plaintiff does not contend that underlying facts are privileged. Nor does Plaintiff contend that documents lose discoverability merely because they were given to counsel. But the adverse party is not entitled to ask Ms. Hadley to identify the subset of documents she selected for counsel, discussed with counsel, provided to counsel during preparation meetings, or understood counsel to have selected as proof of a particular claim. That crosses the line from factual discovery into attorney-client communications and opinion work product.

III. THE OBJECTIONS WERE LIMITED AND DID NOT PREVENT FACTUAL DISCOVERY.

The deposition transcript confirms that counsel attempted to preserve privilege without preventing defense counsel from asking proper factual questions. When defense counsel asked what "exists in the world" to support Ms. Hadley's claim, counsel allowed Ms. Hadley to answer. Exhibit A, 379:8–16. When defense counsel questioned Ms. Hadley about the iCloud accounts, her access, the email addresses associated with the accounts, and why she changed or wiped an account, counsel permitted answers. Exhibit A, 373:3–376:25. When defense counsel asked about the content of photographs, videos, and other evidence, counsel generally allowed the questioning.

The objections arose when the questions called for communications with counsel, litigation preparation, or counsel's document-handling process. For example, Ms. Hadley testified that she provided relevant materials to counsel and that "how the rest of this . . . transpired is privileged communication." Exhibit A, 539:16–540:9. She also testified that she did not remember whether she gave certain clips to counsel on her phone and noted that it occurred during a meeting with counsel. Exhibit A, 552:13–22. Those answers illustrate the narrow privilege issue: defense

counsel can ask what Ms. Hadley knows, what she has, whether she preserved originals, what she deleted, and what facts support her claims. But counsel may object when the question asks about privileged meetings, communications, or counsel's preparation process.

This distinction is especially important given the litigation history. Ms. Hadley has faced repeated efforts by Defendant Perez and aligned parties to gain tactical advantage, including proceedings arising from the Baker Act, the Marchman Act, a dispute over a vehicle, and motions seeking sanctions against Ms. Hadley and her counsel, as well as the removal of her counsel. In that context, Plaintiff's counsel reasonably guarded against questions designed to reveal counsel's strategy, document selection, and communications with Ms. Hadley under the guise of asking about production mechanics.

IV. COMMUNICATIONS WITH CONSULTING EXPERTS RETAINED BY COUNSEL ARE PROTECTED.

The second category of disputed questioning concerned experts retained by counsel or working with counsel's team. Defense counsel repeatedly asked whether Ms. Hadley had an expert, whether an expert would testify, whether she had spoken to an expert about iCloud images, whether experts had documents, whether experts accessed her iCloud account, and whether experts agreed with her conclusions. Exhibit A, 594:6–597:8; 600:15–23; 601:15–24; 607:21–25; 612:16–613:9.

The governing rule is straightforward. Rule 26(b)(4)(D) protects facts known and opinions held by consulting experts retained or specially employed in anticipation of litigation or to prepare for trial and not expected to testify. Fed. R. Civ. P. 26(b)(4)(D). Discovery into such experts is permitted only under Rule 35(b) or upon a showing of exceptional circumstances. Id. Defendant made no such showing during the deposition.

The protection also applies because the communications at issue occurred through counsel and counsel's team. Ms. Hadley made clear that she did not have expert conversations outside counsel's presence, except for interactions with Apple/Genius Bar personnel. Exhibit A, 596:2–24; 612:24–613:9. She distinguished those Apple/Genius Bar interactions from communications with counsel and counsel-retained experts. Id. She further testified that some information came from Apple/Genius Bar personnel and some came from conversations with her attorney and experts hired by the attorney's team. Exhibit A, 597:1–8.

That testimony does not waive privilege. A party may testify to facts she learned from nonprivileged sources without opening the door to privileged communications with counsel or consulting experts. Nor does a party waive protection over consulting experts merely because counsel retained technical assistance to evaluate an iCloud-related claim. Defendant remains free to conduct her own forensic investigation, retain her own experts, serve proper discovery, and test any disclosed trial opinions under Rule 26(a)(2) and Rule 26(b)(4)(A) if Plaintiff designates a testifying expert. But absent disclosure of a testifying expert or exceptional circumstances, Defendant cannot use Ms. Hadley's deposition to discover counsel's consulting experts' opinions, documents, communications, or investigative work.

V. ANY TESTIFYING EXPERT DISCLOSURES WILL BE GOVERNED BY RULE 26.

To the extent Defendant argues that the identity or opinions of a testifying expert are not privileged, that argument is premature and does not justify the deposition questions at issue. Rule 26(a)(2) governs expert disclosures. If Plaintiff designates a testifying expert, Plaintiff will comply with the applicable disclosure obligations and deadlines. Until then, defense counsel may not force Ms. Hadley to reveal whether counsel has consulted particular experts, what those experts

reviewed, whether those experts agree with her, what documents those experts possess, or what communications occurred with counsel.

The deposition questions did not merely ask for disclosed testifying expert information. They sought protected communications and trial-preparation information. Counsel properly instructed Ms. Hadley not to answer those questions to preserve privilege and work-product protection.

VI. CONCLUSION

Plaintiff's privilege assertions should be upheld. Plaintiff does not seek to shield facts. Plaintiff seeks only to protect attorney-client communications, counsel's mental impressions, counsel's selection and compilation of evidence, and communications with consulting experts retained by counsel in anticipation of litigation. Defense counsel remains free to ask Ms. Hadley about her personal knowledge, underlying facts, documents in her possession, and nonprivileged communications with third parties. But Defendant is not entitled to discover what Ms. Hadley gave counsel to prove her claims, how counsel and client handled selected litigation materials, what counsel's team considered important, or what counsel's consulting experts reviewed, concluded, or discussed with Ms. Hadley and counsel.

For these reasons, the Court should sustain Plaintiff's privilege objections and deny any request to compel further deposition testimony on these topics absent a specific showing that the question seeks nonprivileged factual information and does not intrude upon attorney-client communications, opinion work product, or consulting expert protections.

Respectfully submitted,

Hilton Napoleon Esq., FBN 17593
2525 Ponce de Leon Blvd., Suite 300
Coral Gables, Florida 33134
Telephone: 305-510-7106

hilton@napoleonfirm.com
assistant@napoleonfirm.com

*Counsel for Demoree Hadley*

**By: /s/ *Hilton Napoleon, II***
Hilton Napoleon, II

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 3rd day of June 2026, undersigned counsel filed the foregoing document with the Clerk of the Court for the United States District Court, Southern District of Florida, by using the CM/ECF system, which electronically served all parties of record.

By: /s/ *Hilton Napoleon, II*
Hilton Napoleon, II