**IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 25-cv-22162-BLOOM/LOUIS
Consolidated Case No. 25-cv-21607-BB

DEMOREE HADLEY,

Plaintiff,

v.

DESIREE PEREZ, et al.,

Defendants.

_________________________________/

DESIREE PEREZ, OLGA ZAYAS, MILADYS GARCIA GONZALEZ, and DENISE MILAGROS GONZALEZ ESCRIBANO,

Consolidated Plaintiffs,

v.

JAVON HADLEY,

Defendant.

_________________________________/

**PLAINTIFF'S STATEMENT OF MATERIAL FACTS IN OPPOSITION TO DESIREE PEREZ'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Local Rule 56.1(a)(2) and (b)(2), Plaintiff Demoree Hadley ("Demoree") responds to Defendant Desiree Perez's Statement of Material Facts, ECF No. [560] ("Def. SMF"), and sets forth Additional Facts.[1]

[1] Demoree objects that paragraphs resting on the Perez, Zayas, Rivera, and Anderson declarations (ECF Nos. [559-1], [555-1] to [555-3]) recount hearsay from persons employed by, financially dependent on, or represented by counsel paid by Perez. Perez 162:6-8; Perez Declaration, ECF No. [559-1], ¶ 81.

# INDEX OF CITATIONS

| ECF No. | Documents Previously Filed on Record |
|---|---|
| [552-1] | Deposition of Daniel Bober, M.D. (Apr. 30, 2026) |
| [552-2] | Perez–Bober text messages (Bates “BOBERGT”) |
| [552-4] | BSO body-worn camera footage (Bober Dep. Ex. 3) |
| [553-1] | Deposition of Demoree Hadley, Vol. I |
| [553-2, 553-3] | Deposition of Demoree Hadley Vol. II |
| [554] (sealed) | Deposition of Dr. Luz Berrio, Vol. II (June 19, 2026) |
| [563-1] | Deposition of Desiree Perez (Apr. 28, 2026) |
| [546-3] | Continued Deposition of Desiree Perez (Aug. 28, 2026) |
| [559-1] | Declaration of Desiree Perez, ECF No. |
| [242] | Omnibus Order on Motions to Dismiss |

| Exhibit | Documents Filed as Attachments to this Statement of Material Fact |
|---|---|
| Ex. A | State Attorney’s Office Close-Out Memorandum (Sept. 15, 2024) |
| Ex. B | Schwartz–State Attorney emails (Feb. 1, 2024), DH-435-442 |
| Ex. C | BSO body-worn camera clip – Fondo, D.H. 539 (conventionally filed) |
| Ex. D | Marchman Act court file, D.H. 1577-1633 |
| Ex. E | Dr. Berrio’s notes of Mar. 27, 2024 (ECF No. 554, Berrio Dep. Ex. 12) |
| Ex. F | Baker Act certificate and intake records, D.H. 525-533 |
| Ex. G | Labcorp hair drug screen (Apr. 2024), D.H. 535 |
| Ex. H | Declaration of Demoree Hadley |
| Ex. I | Dr. Berrio letter (May 10, 2024), D.H. 1576 |
| Ex. J | Phone records of Mar. 27, 2024 ruse call, D.H. 537-538 |

**RESPONSES TO DEFENDANT'S STATEMENT OF MATERIAL FACTS**

1. Disputed. Demoree, who was present, testified she was the aggressor and that Javon "flinched" defensively and "did not hit" her. Hadley Depo I, ECF No. [553-1], 169:1-174:22; (Ex. H) Hadley Declaration ¶¶ 30-31.

2. Disputed as to state of mind; a jury may infer the contrary from Perez's conduct. Additional Facts ¶¶ 134-151, 158-162.

3. Disputed. The video has no audio, and no assault occurred. Perez Depo I, ECF No. [563-1], 125:6-7; (Ex. H) Hadley Declaration ¶¶ 32-33.

4. Undisputed that Gonzalez called; disputed as to content. Perez was in Manhattan and witnessed nothing. Perez Depo I, ECF No. [563-1], 103:22-104:5; (Ex. H) Hadley Declaration ¶ 34.

5. Disputed. Javon did not touch Demoree, officers found no injury, and the State Attorney found she "consistently maintained . . . under oath, that nothing physical occurred." Hadley Depo I, ECF No. [553-1], 196:13-20, 202:12-20; (Ex. A) SAO Closeout Memo at 4; (Ex. H) Hadley Declaration ¶ 34.

6. Undisputed that Perez's voice is on the recording; disputed that she was "defusing." The recording is an unlawful interception. (Ex. A) SAO Closeout Memo at 5; Additional Facts ¶¶ 169-173.

7. Disputed. Demoree did not write that message; Perez had access to her phone and iCloud. Hadley Depo I, ECF No. [553-1], 237:23-238:25, 241:7-23.

8. Disputed. Demoree was lured by a false report that her uncle was dying; Perez struck her and said she would have her "committed"; Pinecrest police found she "did not meet criteria" and helped her leave. Hadley Depo I, ECF No. [553-1], 135:22-141:25; (Ex. H) Hadley Declaration ¶¶ 40-41.

9. Undisputed. Hadley Depo I, ECF No. [553-1], 273:22-24.

10. Disputed. Perez neither saw nor spoke to Demoree after December 30, 2023. Perez Depo I, ECF No. [563-1], 189:6-12; (Ex. H) Hadley Declaration ¶¶ 39, 43-46.

11. Disputed. Anderson is Perez's employee, not Demoree's friend; Demoree did not see her in 2024. Hadley Depo I, ECF No. [553-1], 245:15-247:22, 250:13-20; Perez Declaration, ECF No. [559-1], ¶ 81. Hearsay.

12. Disputed. (Ex. H) Hadley Declaration ¶¶ 39, 43-46, 76.

13. Disputed. Demoree did not send those messages; Perez had access to her phone and iCloud. Hadley Depo I, ECF No. [553-1], 240:4-241:23, 244:18-245:14; (Ex. H) Hadley Declaration ¶¶ 38, 47.

14. Disputed. Perez had no contact with Demoree after December 30, 2023. Perez Depo I, ECF No. [563-1], 189:6-12; (Ex. H) Hadley Declaration ¶¶ 39, 46.

15. Disputed as to characterization; Perez's counsel's stated "game plan" was an "involuntary temporary commitment." (Ex. B) Schwartz Emails at DH-438; Bober Deposition, ECF No. [552-1], 9:5-23.

16. Undisputed that Robert Trinkler introduced them in October 2023. Bober Deposition, ECF No. [552-1], 9:5-23.

17. Undisputed; immaterial. Bober Deposition, ECF No. [552-1], 11:2-12:11.

18. Disputed as to the cited exhibits, which Demoree did not author. Hadley Depo I, ECF No. [553-1], 237:23-245:14; (Ex. H) Hadley Declaration ¶ 38.

19. Undisputed that Javon Hadley was arrested on December 30, 2023, after a 911 call by Perez that the State Attorney found "false"; no charge was pursued. (EX. A) SAO Closeout Memo at 3, 10; (Ex. H) Hadley Declaration ¶ 48.

20. Undisputed that Demoree ceased communicating with Perez on December 30, 2023; disputed as to Perez's "belief." (Ex. H) Hadley Declaration ¶ 39.

21. Disputed. Demoree expressed no mental-health concern to Denisse Gonzalez. (Ex. H) Hadley Declaration ¶¶ 8, 85-86. Hearsay.

22. Disputed as to characterization. (Ex. H) Hadley Declaration ¶ 65.

23. Disputed. Hadley Depo I, ECF No. [553-1], 251:15-253:2; (Ex. H) Hadley Declaration ¶¶ 68-71, 75. Zayas is represented by counsel Perez pays. Perez Depo I, ECF No. [563-1], 162:6-8. Hearsay.

24. Disputed. Demoree never told anyone that story. Hadley Depo I, ECF No. [553-1], 252:20-253:2. Hearsay.

25. Disputed. (Ex. H) Hadley Declaration ¶¶ 73, 75; Berrio Depo II, ECF No. [554], 358:9-360:6. Hearsay.

26. Disputed. Demoree never said that. Hadley Depo I, ECF No. [553-1], 252:16-19.

27. Disputed. Hadley Depo I, ECF No. [553-1], 251:15-22.

28. Disputed. Demoree never showed Zayas the video, which she posted publicly on Instagram. Hadley Depo I, ECF No. [553-1], 251:23-252:6.

29. Disputed. Demoree was not with Zayas on March 24, 2024. (Ex. H) Hadley Declaration ¶ 73.

30. Disputed. Hadley Depo I, ECF No. [553-1], 252:13-15; (Ex. H) Hadley Declaration ¶ 72.

31. Disputed; hearsay within hearsay. Rivera had not seen Demoree in over six months. Hadley Depo II, ECF No. [553-2, 553-3], 350:13-16; (Ex. H) Hadley Declaration ¶¶ 79, 82.

32. Undisputed that Perez sent the text; disputed that it was true. (Ex. H) Hadley Declaration ¶¶ 39, 43-46.

33. Disputed. Demoree cut off contact with Hernandez years earlier and sent her no voice notes. Hadley Depo I, ECF No. [553-1], 253:3-254:2; (Ex. H) Hadley Declaration ¶¶ 87-93, 96-97.

34. Disputed. (Ex. H) Hadley Declaration ¶¶ 87-93, 96-97, 105. Hearsay.

35. Disputed. No one ever told Perez they saw Demoree use drugs or alcohol, Perez Depo I, ECF No. [563-1], 55:5-18; Dr. Berrio never had a substance concern, Berrio Depo II, ECF No. [554], 356:17-360:16, 364:14-365:12; Zayas and Gonzalez told the State Attorney under oath that Demoree "does not do drugs or drink," (EX. A) SAO Closeout Memo at 10; her urine and hair screens were negative. Bober Deposition, ECF No. [552-1], 132:5-13; (Ex. G) Labcorp Drug Screen.

36. Undisputed that Hernandez said so; immaterial hearsay. ECF No. [559-16] at DP_0257436.

37. Disputed. ¶ 35 supra; (Ex. H) Hadley Declaration ¶¶ 4, 100.

38. Disputed. Hadley Depo I, ECF No. [553-1], 254:16-255:13; (Ex. H) Hadley Declaration ¶¶ 92, 96, 104.

39. Disputed. Hadley Depo I, ECF No. [553-1], 254:16-255:13; (Ex. H) Hadley Declaration ¶¶ 92, 96.

40. Disputed. (Ex. H) Hadley Declaration ¶¶ 92, 96, 105.

41. Disputed. Perez's "impression" is not evidence; Demoree never insinuated sexual abuse of her sister. (Ex. H) Hadley Declaration ¶¶ 96, 105.

42. Disputed. Demoree never saw Anderson in person in March 2024 and had no speakerphone call; her only contact with Anderson on March 26 was a message Demoree sent telling Anderson to stop contacting her therapist. Hadley Depo I, ECF No. [553-1], 249:17-251:1; (Ex. H) Hadley Declaration ¶¶ 106, 108-109. Anderson told Dr. Bober the conversation was "over the phone." Bober Deposition, ECF No. [552-1], 31:18-25.

43. Disputed. Demoree "[n]ever in [her] life" told anyone she was considering suicide by pills. Hadley Depo I, ECF No. [553-1], 251:2-10; (Ex. H) Hadley Declaration ¶¶ 5, 98-99. Asked who told Dr. Bober that Demoree overdosed, Perez answered, "Overdosed. Never heard." Perez Depo I, ECF No. [563-1], 200:16-23, 205:6-9, 206:14-20.

44. Disputed. Demoree saw Dr. Berrio on January 18, 2024 and spoke and texted with her on March 26-27, 2024. Hadley Depo I, ECF No. [553-1], 261:11-262:20; Hadley Depo II, ECF No. [553-2, 553-3], 351:2-17.

45. Undisputed that Perez reviewed the FTI image in March 2024; disputed as to lawfulness. Additional Facts ¶¶ 163-168.

46. Disputed. Demoree never wrote about being "dead inside," (Ex. H) Hadley Declaration ¶ 53; Perez used the data to procure the Baker and Marchman Acts. Perez Depo I, ECF No. [563-1], 200:2-11, 215:8-11.

47. Disputed. Perez's "learning" was hearsay from her paid household, contradicted by Demoree and Dr. Berrio. Hadley Depo I, ECF No. [553-1], 250:13-256:25; Berrio Depo II, ECF No. [554], 353:12-355:19; (Ex. I) Dr. Berrio Letter; (Ex. H) Hadley Declaration ¶¶ 8, 105.

48. Disputed. ¶¶ 35, 42-43 supra. Perez's stated objective was "deprogramming" and "separation." Berrio Depo II, ECF No. [554], 265:9-271:15.

49. Disputed. ¶¶ 42-43 supra. Perez's "decision" was to tell Dr. Bober "Yes" when he asked, "Do you want me to do this tomorrow?" Perez-Bober Texts, ECF No. [552-2], BOBERGT000009.

50. Undisputed that Perez texted Dr. Bober at 5:47 p.m.; disputed that the report was true, ¶¶ 42-43 supra, or that she merely "raised concerns": Dr. Bober asked, "Do you want me to do this tomorrow?" and Perez answered, "Yes." Perez-Bober Texts, ECF No. [552-2], BOBERGT000007-09.

51. Disputed as to sequence. Dr. Bober requested collateral contacts only after Perez had set the 5:00 p.m. meeting and sent Demoree's ID and insurance card for hospital registration.

Perez-Bober Texts, ECF No. [552-2], BOBERGT000017-20; Bober Deposition, ECF No. [552-1], 25:1-7.

52. Undisputed that Perez sent names; disputed that any "independent" verification resulted. Dr. Bober never asked Perez when she last saw or spoke to Demoree, Bober Deposition, ECF No. [552-1], 41:10-19, and "struck out on most of those people." Perez-Bober Texts, ECF No. [552-2], BOBERGT000022-23.

53. Undisputed that Perez listed those names; Anderson's number was supplied only after Dr. Bober said he had "enough." Perez-Bober Texts, ECF No. [552-2], BOBERGT000023-24, 26.

54. Disputed. ¶¶ 42-43 supra. Anderson told Dr. Bober the conversation was by phone and did not say where. Bober Deposition, ECF No. [552-1], 31:18-25. Hearsay.

55. Undisputed that Dr. Bober so testified; disputed that Rivera's report was true. Hadley Depo II, ECF No. [553-2, 553-3], 350:13-16; (Ex. H) Hadley Declaration ¶ 82.

56. Disputed. Hadley Depo II, ECF No. [553-2, 553-3], 350:13-21; (Ex. H) Hadley Declaration ¶¶ 79, 82. Dr. Bober never met Rivera and did not ask where her "observations" occurred. Bober Deposition, ECF No. [552-1], 33:19-36:2.

57. Disputed. (Ex. H) Hadley Declaration ¶ 82; Hadley Depo II, ECF No. [553-2, 553-3], 350:13-21; Bober Deposition, ECF No. [552-1], 35:4-5.

58. Disputed. Demoree had no contact with Hernandez. Hadley Depo I, ECF No. [553-1], 253:16-254:2; (Ex. H) Hadley Declaration ¶¶ 87, 96. Perez had told Dr. Bober "Yes" the night before. Perez-Bober Texts, ECF No. [552-2], BOBERGT000009.

59. Disputed. Perez-Bober Texts, ECF No. [552-2], BOBERGT000009; Additional Facts ¶¶ 138-147.

60. Disputed as to "Sig 9 arranged." The plan "was orchestrated or created between . . . Ms. Perez and Sig 9," who "coordinated with . . . Ms. Perez" the location; the ruse came from "Desiree and members of Sig 9." Bober Deposition, ECF No. [552-1], 85:14-16, 86:16-25, 89:2-15, 171:11-172:3. Perez: "We had to go buy a phone, prep all with referral names so she's not suspicious etc." Perez-Bober Texts, ECF No. [552-2], BOBERGT000016.

61. Disputed. "Q. Did you hire Sig 9? A. Yes." Perez Depo I, ECF No. [563-1], 210:9-10; id. at 211:13-19 ("$2,000 something"); Bober Deposition, ECF No. [552-1], 77:1-7.

62. Undisputed; Dr. Bober calls Sig 9 "my team" and has used them over 100 times. Bober Deposition, ECF No. [552-1], 160:1, 161:25-162:5.

63. Undisputed that Dr. Bober so testified; disputed that the ruse here was his rather than Perez's and Sig 9's. ¶ 60 supra.

64. Disputed. ¶ 60 supra; Perez-Bober Texts, ECF No. [552-2], BOBERGT000013-15 ("Will move her to 230"; "5pm she will be there, demoree for sure").

65. Disputed as to materiality. Perez never consulted Dr. Berrio about a Baker Act, Berrio Depo II, ECF No. [554], 369:18-370:7, and never told Dr. Bober that Demoree had a therapist, Bober Deposition, ECF No. [552-1], 17:5-18:8; her later texts to Dr. Berrio sought "deprogramming" and "separation." Berrio Depo II, ECF No. [554], 265:9-271:15.

66. Undisputed that Perez was not physically present; she directed events by text. Perez-Bober Texts, ECF No. [552-2], BOBERGT000013-28; Bober Deposition, ECF No. [552-1], 104:20-105:7.

67. Disputed. Sig 9 told deputies and Demoree they were Memorial's "mobile crisis unit," which does not exist, Bober Deposition, ECF No. [552-1], 52:12-55:19, 149:11-20; before Demoree arrived, Fondo told deputies that Dr. Bober "was going to Baker Act" her. Bober Deposition, ECF No. [552-1], 106:13-16; (EX. C) BSO BWC - Fondo.

68. Undisputed that Sig 9 transported Demoree after she was told the alternative was handcuffs and a police car. Hadley Depo II, ECF No. [553-2, 553-3], 352:7-24; Bober Deposition, ECF No. [552-1], 150:5-14.

69. Disputed. ¶ 67 supra.

70. Undisputed that Perez paid Sig 9; disputed that she had "never . . . done business with them"—she hired them. Perez Depo I, ECF No. [563-1], 210:9-15.

71. Undisputed; a fee "if there was treatment rendered" was discussed. Bober Deposition, ECF No. [552-1], 44:23-45:13.

72. Undisputed that Dr. Bober so testified; he sometimes collected Sig 9's fee and was in business discussions with them. Bober Deposition, ECF No. [552-1], 161:11-162:5, 166:9-167:5.

73. Disputed. Fondo told deputies Dr. Bober "was going to Baker Act" Demoree before she arrived, Bober Deposition, ECF No. [552-1], 106:13-16; (EX. C) BSO BWC - Fondo, and

Dr. Bober had asked Perez the night before, "Do you want me to do this tomorrow?" Perez-Bober Texts, ECF No. [552-2], BOBERGT000009.

74. Disputed. ¶¶ 50, 60, 73 supra; Hadley Depo II, ECF No. [553-2, 553-3], 349:4-350:24 ("Your mother wanted me to Baker Act you").

75. Undisputed.

76. Undisputed.

77. Undisputed that Dr. Bober is not a salaried employee; he holds a contract with Memorial. Bober Deposition, ECF No. [552-1], 59:2-11.

78. Undisputed.

79. Disputed. Dr. Bober's team claimed to be Memorial's "mobile crisis unit," the marina was chosen so that he "would be her treating physician" at Memorial, and he consulted "our hospital attorney" about the hold. Bober Deposition, ECF No. [552-1], 52:21-53:4, 91:1-23, 176:10-25; Perez-Bober Texts, ECF No. [552-2], BOBERGT000028.

80. Undisputed that Dr. Bober so testified; immaterial. ¶ 79 supra.

81. Undisputed that Dr. Bober so testified; disputed as a legal conclusion. ¶ 79 supra.

82. Undisputed that Dr. Bober so opines; disputed that Perez acted in good faith. Additional Facts ¶¶ 134-151, 158-162.

83. Disputed as to materiality; Dr. Berrio also testified the Baker Act was not "justified" and that deciding to Baker Act a person before meeting her is not proper protocol. Berrio Depo II, ECF No. [554], 370:18-372:13, 399:3-12, 435:12-436:2.

84. Undisputed that Dr. Bober spoke to Dr. Berrio after saying "[f]or now, you're being detained." Bober Deposition, ECF No. [552-1], 179:10-184:12.

85. Disputed. Dr. Berrio told Dr. Bober she "never [had] concerns over self harm or suicide," that there was "no history" of substance abuse or threats of harm, and that she did not believe Demoree was suicidal. Berrio Depo II, ECF No. [554], 375:10-18, 380:6-9, 401:23-402:18; Dr. Berrio's notes, ECF No. [554-12]; Bober Deposition, ECF No. [552-1], 74:14-17.

86. Disputed. Dr. Bober's "other sources" were two calls with persons he had never met, who sent him nothing. Bober Deposition, ECF No. [552-1], 35:6-36:2.

87. Disputed as to characterization; Dr. Berrio told Dr. Bober there was no basis and that the call was his. Berrio Depo II, ECF No. [554], 375:10-18; Bober Deposition, ECF No. [552-1], 118:4-12.

88. Disputed. Demoree spoke and texted with Dr. Berrio on March 26 and 27, 2024. Hadley Depo II, ECF No. [553-2, 553-3], 351:2-17.

89. Disputed as to characterization; Dr. Berrio's later texts do not endorse the Baker Act, which she testified was not justified. Berrio Depo II, ECF No. [554], 264:20-271:15, 399:3-12.

90. Disputed. Dr. Bober said "[f]or now, you're being detained" before any examination and had not examined her within 48 hours. Bober Deposition, ECF No. [552-1], 183:6-184:12, 186:4-25; Berrio Depo II, ECF No. [554], 381:18-382:11.

91. Disputed. Dr. Berrio observed no incoherence, hallucination, or danger, and found Demoree's insight, judgment, thought process, perception, speech, and mood appropriate. Berrio Depo II, ECF No. [554], 383:20-386:11. Dr. Bober's certificate recites a "hx of psychosis per family"; there is none. (Ex. F) Baker Act Certificate at D.H. 525; (Ex. I) Dr. Berrio Letter.

92. Disputed. ¶¶ 50, 60, 73-74 supra. Dr. Bober could identify no statutory authority for a roadside examination of a stranger. Bober Deposition, ECF No. [552-1], 110:13-112:1, 119:4-10.

93. Disputed. ¶ 92 supra; Bober Deposition, ECF No. [552-1], 38:24-39:16 (what changed was "Ms. Perez's concerns that continued to crescendo").

94. Undisputed that Dr. Bober so testified; disputed as to any inference of independence. ¶¶ 50, 73 supra.

95. Undisputed that Dr. Bober so testified; immaterial. He released Demoree after 38 hours. Bober Deposition, ECF No. [552-1], 129:8-12.

96. Disputed. Additional Facts ¶¶ 134-151, 158-162.

97. Disputed. Dr. Karfis told Demoree she did not believe Demoree had any diagnosis and was recording "exactly what's on the Marchman order" over Demoree's disagreement. Hadley Depo II, ECF No. [553-2, 553-3], 358:15-25. Toxicology was negative, Bober Deposition, ECF No. [552-1], 132:5-13, and Dr. Berrio has never observed psychosis, hallucination, or delusion in Demoree. Berrio Depo II, ECF No. [554], 341:17-342:2; (Ex. I) Dr. Berrio Letter; (Ex. H) Hadley Declaration ¶ 8.

98. Disputed. Demoree did not abandon the phone; she left belongings at the home where she had lived for five years, continued to visit, and tried to retrieve them. (Ex. H) Hadley Declaration ¶¶ 11, 51-52; Perez Depo I, ECF No. [563-1], 214:24-215:7, 220:14-221:5.

99. Undisputed.

100. Undisputed as to Apple's default settings; immaterial.

101. Undisputed as to Apple's default settings; immaterial.

102. Undisputed.

103. Undisputed.

104. Undisputed.

105. Undisputed that on February 27-28, 2024, the phone, in New York, logged into Demoree's iCloud account and downloaded data "that had not been previously synced to the device." ECF No. [561] at 19. Disputed that the phone was "broken." Perez Depo II, ECF No. [546-3], 19:23-25.

106. Undisputed. Demoree's account showed access from Perez's Roc Nation office in New York. Hadley Depo II, ECF No. [553-2, 553-3], 377:7-378:8; (Ex. H) Hadley Declaration ¶ 54.

107. Undisputed.

108. Disputed. Perez personally opened the phone, "hit the password thing," used the "hint" ("Madre"—her birthday), and "took all those pictures" from an "evidence" folder. Perez Depo I, ECF No. [563-1], 214:4-215:7. Her counsel instructed her not to answer who possessed the phone or authorized the extraction. Perez Depo II, ECF No. [546-3], 16:20-17:20, 39:24-41:21.

109. Disputed. ¶ 108 supra; Perez Depo I, ECF No. [563-1], 231:3-8 (her lawyers hired Conti, Crowley, and CTS Research).

110. Disputed. ¶¶ 105, 108 supra.

111. Disputed as to materiality; Perez used the data to procure the Baker Act and Marchman Act and supplied it to the State Attorney. Perez Declaration, ECF No. [559-1], ¶¶ 41-42, 92-93; Perez Depo I, ECF No. [563-1], 200:2-11, 215:8-11.

112. Disputed as to characterization. The March 1 texts report preliminary carrier calls; Demoree later obtained Find My iPhone and iCloud records showing access from Perez's New York office. Hadley Depo II, ECF No. [553-2, 553-3], 374:18-378:8; (Ex. H) Hadley Declaration ¶ 54.

113. Disputed. ¶ 112 supra.

114. Disputed. Demoree's interrogatory answer also identifies $40,000 in lost contracts, $900 in hospital bills, and $6,000 in Marchman Act and guardianship legal fees, Hadley Depo II,

ECF No. [553-2, 553-3], 359:19-366:9; she also paid to replace the compromised device and account. Hadley Depo II, ECF No. [553-2, 553-3], 372:1-19; (Ex. H) Hadley Declaration ¶ 112.

115. Disputed. ¶ 114 supra; (Ex. H) Hadley Declaration ¶ 112.

116. Undisputed that cameras were installed to monitor Demoree's grandfather; disputed that any was installed in her bedroom, bathroom, or closet with her consent. (Ex. H) Hadley Declaration ¶¶ 16-21.

117. Undisputed that Demoree requested cameras in common areas and the exterior; disputed that she consented to any camera in her private spaces or any Blink camera. Hadley Depo II, ECF No. [553-2, 553-3], 400:13-21, 405:12-406:8; (Ex. H) Hadley Declaration ¶¶ 17-22.

118. Disputed as to characterization; the May 15, 2023 texts concern cameras for her grandfather's bedroom and bathroom. (Ex. H) Hadley Declaration ¶¶ 22-23.

119. Undisputed that the system included a hidden Blink camera with audio; disputed as to its location and power source. Perez Depo I, ECF No. [563-1], 95:13-96:4; Hadley Depo II, ECF No. [553-2, 553-3], 393:14-397:13; (Ex. H) Hadley Declaration ¶¶ 18-20, 25.

120. Disputed. (Ex. H) Hadley Declaration ¶¶ 25-26. The still image from the recording depicts the interior of the bathroom closet, which has an opening at the top shelf. Hadley Depo II, ECF No. [553-2, 553-3], 393:14-395:4, 401:3-10.

121. Disputed. Perez "authorize[d]" the Blink camera that recorded the September 11, 2023 argument inside the bedroom, downloaded the audio from her own Blink app, and later had the camera "moved." Perez Depo I, ECF No. [563-1], 92:21-24, 94:13-95:9, 103:7-11; (Ex. H) Hadley Declaration ¶ 27.

122. Disputed. ¶ 121 supra.

123. Disputed. The camera captured "[e]very single word" inside the room, Perez Depo I, ECF No. [563-1], 100:19-101:9; the State Attorney found the recording illegal. (EX. A) SAO Closeout Memo at 5.

124. Disputed as to characterization. The bedroom and bathroom are one suite separated by a sliding door that never locked and was kept open. Hadley Depo I, ECF No. [553-1], 207:3-208:13; Hadley Depo II, ECF No. [553-2, 553-3], 410:4-15.

125. Undisputed that the hidden camera was concealed so it would not be found. Hadley Depo II, ECF No. [553-2, 553-3], 396:15-397:13.

126. Undisputed; immaterial.

127. Undisputed; the suitcase devices are not the basis of Counts XVII-XVIII, and those allegations were struck. Hadley Depo II, ECF No. [553-2, 553-3], 412:16-413:2; Omnibus Order at 50 n.14.

128. Undisputed; immaterial. ¶ 127 supra.

129. Undisputed; immaterial. ¶ 127 supra.

130. Undisputed; immaterial. ¶ 127 supra.

131. Undisputed; immaterial. ¶ 127 supra.

132. Undisputed; immaterial. ¶ 127 supra.

133. Undisputed; immaterial.

## ADDITIONAL FACTS

134. In October 2023 guardianship attorney Robert Trinkler introduced Perez to Dr. Bober; they communicated by phone, text, and email for five months. Bober Deposition, ECF No. [552-1], 9:5-23, 12:4-11.

135. Dr. Bober repeatedly told Perez there was "nothing [he] could do" because "it was only her word." Bober Deposition, ECF No. [552-1], 13:15-14:2.

136. On February 1, 2024, after the Assistant State Attorney told Perez's attorney that "without the victim, we cannot meet the elements" for charges against Javon Hadley, the attorney wrote that he wanted "the game plan to include some type of involuntary temporary commitment," and asked the prosecutor to delay the arraignment while "Desiree and I are looking into consulting with a brainwashing expert." (Ex. B) Schwartz Emails at DH-436-441; Perez Depo I, ECF No. [563-1], 186:17-188:16.

137. Perez consulted three "brainwashing expert[s]" between February 1 and March 27, 2024. Perez Depo II, ECF No. [546-3], 43:11-44:5.

138. On March 26, 2024 at 5:47 p.m., Dr. Bober asked Perez, "Do you want me to do this tomorrow?" Perez answered, "Yes, She will hurt herself." Dr. Bober had never met or spoken to Demoree and had spoken to no collateral source. Perez-Bober Texts, ECF No. [552-2], BOBERGT000009; Bober Deposition, ECF No. [552-1], 23:3-5, 25:1-7, 38:9-22.

139. That evening Perez told Dr. Bober she would "get PI to go watch her house," that the PI would "tell [her] where he is and she," provided Demoree's address, and wrote, "let me call DA, perhaps they can assist getting her out of the house." Perez-Bober Texts, ECF No. [552-2], BOBERGT000009-11.

140. On March 27, Perez reported "PI outside, she's inside," then "She's coming out, she's going to my dads house," explained that Zayas had "told her she needed help with setting up an account," and proposed times ("Will move her to 230"). Perez-Bober Texts, ECF No. [552-2], BOBERGT000012-14.

141. Dr. Bober asked for "the exact street address at that location . . . [t]o see what police department services that location"; Perez responded, "The PI has worked at that station for 30 yrs and is retired, so he has contacts." Perez-Bober Texts, ECF No. [552-2], BOBERGT000015.

142. At 2:01 p.m. Perez wrote: "They are speaking to her as we speak. . . . We had to go buy a phone, prep all with referral names so she's not suspicious etc." Dr. Bober replied, "Got it. You're on it." Perez-Bober Texts, ECF No. [552-2], BOBERGT000016.

143. Demoree's phone records show a three-minute call at 2:41 p.m. on March 27, 2024 with the number used by the purported landscaping customer. (Ex. J) Ruse Call ; (Ex. H) Hadley Declaration ¶ 111.

144. Perez set the time ("5pm she will be there, demoree for sure") and sent Demoree's ID and insurance card; Dr. Bober said, "Show her ID so they can check her in through registration." Perez-Bober Texts, ECF No. [552-2], BOBERGT000017-20; Bober Deposition, ECF No. [552-1], 46:12-16.

145. Only after the 5:00 p.m. plan and registration were arranged did Dr. Bober ask, "is there anyone that she's had contact with the last few days that I can talk to." Perez-Bober Texts, ECF No. [552-2], BOBERGT000018.

146. Dr. Bober later reported: "Kind of struck out on most of those people"; "[t]he rest of them had not really had any direct contact with her for awhile." Perez-Bober Texts, ECF No. [552-2], BOBERGT000022-23. Perez supplied Anderson's number only after Dr. Bober said, "I have enough right now." Id. at BOBERGT000023-24, 26.

147. Perez asked, "You will take her phone correct?"; sent a "No visitor list" of Javon Hadley and his family; asked, "Can u turn her phone off So he can't know where she is?"; and asked, "Doc 72 hours is Monday? At 5pm?" and "What? Weekends count?" Perez-Bober Texts, ECF No. [552-2], BOBERGT000018, 26-28.

148. Perez hired and paid Sig 9. Perez Depo I, ECF No. [563-1], 210:9-15, 211:13-19; Bober Deposition, ECF No. [552-1], 77:1-7.

149. Dr. Bober testified the plan "was orchestrated or created between . . . Ms. Perez and Sig 9"; that the landscaping ruse came from "Desiree and members of Sig 9"; that Sig 9 "coordinated with . . . Ms. Perez" the location; and that the ruse "was the point." Bober Deposition, ECF No. [552-1], 85:14-16, 86:16-25, 89:2-15, 171:11-172:3, 174:19-175:12.

150. Demoree was told to come to the marina for a landscaping contract; "that was false." Bober Deposition, ECF No. [552-1], 178:5-21.

151. Perez swears she "affirmatively told Dr. Bober that [she] had not spoken to Demoree in three months"; Dr. Bober testified that she did not tell him, that he never asked, and that he

assumed Perez "was having some form of direct communication with Ms. Hadley." Perez Declaration, ECF No. [559-1], ¶ 97; Bober Deposition, ECF No. [552-1], 41:10-19.

The seizure.

152. Before Demoree arrived, Fondo told BSO deputies that Dr. Bober "was going to Baker Act" her, described her as "mentally unstable," said a GPS tracker was on her car, and explained that he had contacted their sergeant. (EX. C) BSO BWC - Fondo; Bober Deposition, ECF No. [552-1], 106:13-16; Berrio Depo II, ECF No. [554], 393:16-395:21. Dr. Bober denies telling Fondo or Perez that he would Baker Act Demoree. Bober Deposition, ECF No. [552-1], 106:17-22.

153. Sig 9 told deputies and Demoree they were Memorial's "mobile crisis unit"; none exists. Bober Deposition, ECF No. [552-1], 52:12-55:19, 149:11-20.

154. When Demoree asked whether she was being detained, Dr. Bober said, "For now, you're being detained." He had not performed any examination and had not examined her within 48 hours. Bober Deposition, ECF No. [552-1], 183:6-184:12, 186:4-25; BSO BWC – Bober Depo, ECF No. [552-4].

155. Deputies told Demoree she was not free to leave, and she was told that if she did not go with Sig 9 she would be handcuffed and put in a police car. (EX. C) BSO BWC - Fondo; Bober Deposition, ECF No. [552-1], 150:5-14; Hadley Depo II, ECF No. [553-2, 553-3], 352:7-24.

156. Dr. Berrio told Dr. Bober by phone that there was "no history" of self-harm, suicide, or substance abuse, and recorded it contemporaneously. Berrio Depo II, ECF No. [554], 375:10-18, 401:23-402:18; Dr. Berrio's notes, ECF No. [554-12]; Bober Deposition, ECF No. [552-1], 74:14-17.

157. Dr. Bober's certificate recites a "hx of psychosis per family" and states that "[i]t is unclear if she has also been using substances." (Ex. F) Baker Act Certificate at D.H. 525. Dr. Berrio has never observed psychosis, hallucinations, or delusions in Demoree. Berrio Depo II, ECF No. [554], 341:17-342:2; (Ex. I) Dr. Berrio Letter.

Aftermath and motive.

158. Memorial's toxicology was negative, and a twelve-panel hair drug screen collected April 3, 2024 was negative; Dr. Bober released Demoree after 38 hours upon finding no

imminent risk. Bober Deposition, ECF No. [552-1], 129:8-12, 132:5-13; (Ex. G) Labcorp Drug Screen.

159. At 12:03 p.m. on March 28, 2024, Dr. Bober sent Perez the contact card of attorney Alan Levine: "Please call him ASAP." At 12:56 p.m., Levine e-filed Perez's sworn Marchman Act petition alleging that Demoree "has admitted to using these substances," "crushes the pills," and "is continually in a state of incoherence," and asking that deputies seize her "UPON HER DISCHARGE AT MEMORIAL HOSPITAL." Perez-Bober Texts, ECF No. [552-2], BOBERGT000031; (Ex. D) Marchman Act File at D.H. 1584, 1603, 1608-09.

160. On March 29, 2024, Dr. Bober texted Perez: "The police just left with Demoree . . . I instructed them to take everything including her phone. She has nothing." Perez replied: "Perfect." Deputies handcuffed Demoree in a Memorial hallway and took her to Lifeskills, where she was held until April 9; Perez voluntarily dismissed the petition on April 5. Perez-Bober Texts, ECF No. [552-2], BOBERGT000031-32; Hadley Depo II, ECF No. [553-2, 553-3], 353:16-356:20; (Ex. D) Marchman Act File at D.H. 1577, 1633.

161. No one ever told Perez they saw Demoree use drugs or alcohol, and Zayas and Gonzalez told the State Attorney under oath that Demoree "does not do drugs or drink." Perez Depo I, ECF No. [563-1], 55:5-18; (EX. A) SAO Closeout Memo at 10.

162. Perez texted Dr. Berrio on March 27-29, 2024: "She needs to deprogram"; "Help, Doc, this will be a disaster if she comes out today"; "This is the only chance separation, period"; "She needs deprogramming." Berrio Depo II, ECF No. [554], 265:9-271:15 & Ex. 11 (ECF No. [554]). On March 26, when a relative proposed provoking Javon into hitting her "so I could finally get him put in jail," Perez responded "Haaaaaa this is insane!!!!" ECF No. [559-16] at DP_0257439-40.

Stored Communications Act.

163. Demoree lived at the family home from 2019 to October 5, 2023, continued to visit, left belongings there including an older iPhone still signed into her iCloud account, sought to retrieve her property, and was told Perez would not return her electronics. (Ex. H) Hadley Declaration ¶¶ 11, 51-54; Perez Depo I, ECF No. [563-1], 220:14-221:5.

164. Perez personally took the phone, opened it by guessing the password from its hint, and copied photographs from a folder labeled "evidence." Perez Depo I, ECF No. [563-1], 214:4-215:7.

165. Perez flew the phone to New York and gave it to her attorneys; FTI imaged it February 27-March 1, 2024, during which it powered on, joined WiFi, and downloaded iCloud data "that had not been previously synced to the device." Perez Depo I, ECF No. [563-1], 221:6-223:4; Perez Depo II, ECF No. [546-3], 20:2-3; ECF No. [561] at 19; ECF No. [555-11] ¶ 16.

166. Perez has sworn that the phone was "broken" and that she "did not access the abandoned iPhone itself." Perez Declaration, ECF No. [559-1], ¶ 43; Perez Depo II, ECF No. [546-3], 19:23-25.

167. Demoree's Find My iPhone and iCloud login records showed her account accessed from Perez's New York office; she wiped and replaced the account after her release and paid to replace the device. Hadley Depo II, ECF No. [553-2, 553-3], 372:1-19, 374:18-378:8; (Ex. H) (Ex. H) Hadley Declaration ¶¶ 54, 112.

168. Perez never returned the phone, which she says is with Homeland Security; her counsel instructed her not to answer where it is, who possessed it, or who authorized the extraction. Perez Depo I, ECF No. [563-1], 225:2-11; Perez Depo II, ECF No. [546-3], 16:20-17:20, 20:2-21:9, 39:24-41:21.

Wiretap.

169. A hidden Blink camera with audio, which Perez "authorize[d]," recorded the September 11, 2023 conversation between Demoree and Javon Hadley inside their bedroom; Perez testified it captured "[e]very single word." Perez Depo I, ECF No. [563-1], 89:10-15, 94:13-95:9, 96:24-97:18, 100:19-101:9.

170. Perez, from her Manhattan office, downloaded the recording from her Blink app, sent it to Dr. Bober, and produced it to the State Attorney; the camera was later "moved." Perez Depo I, ECF No. [563-1], 92:21-24, 103:7-11, 103:22-104:5, 198:8-14; (EX. A) SAO Closeout Memo at 5.

171. The still image from the recording depicts the inside of Demoree's bathroom closet; the bathroom adjoins the bedroom through a sliding door that never locked and was kept open. Hadley Depo II, ECF No. [553-2, 553-3], 393:14-401:10, 410:4-15.

172. Demoree authorized sixteen HikVision cameras, none a Blink camera, and never consented to any recording device in her bedroom, bathroom, or closet. Hadley Depo II, ECF No. [553-2, 553-3], 400:13-21, 405:12-406:8; (Ex. H) (Ex. H) Hadley Declaration ¶¶ 16-28.

173. The State Attorney concluded that "the camera, located outside the bedroom, captured audio from inside the Victim and Defendant's bedroom," that they "have a reasonable expectation of privacy in their bedroom," and that the recording is illegal under Fla. Stat. §§ 934.02, 934.03, and 934.06. (EX. A) SAO Closeout Memo at 5.

Dated: September 24, 2026

Respectfully submitted,

NAPOLEON LAW FIRM
2525 Ponce de Leon Blvd., Suite 300
Coral Gables, Florida 33134
Telephone: 305-510-7106
hilton@napoleonfirm.com

By: /s/ *Hilton Napoleon, II*
Hilton Napoleon, II
Florida Bar No. 17593

Counsel for Plaintiff, Demoree Hadley

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 24th day of September 2026, a true and correct copy of the foregoing was filed with the Clerk of Court through CM/ECF, which will serve all counsel of record.

By: /s/ *Hilton Napoleon, II*
Hilton Napoleon, II